```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

                            Plaintiff,           **REPORT AND
                                                 RECOMMENDATION**
        -against-
                                                 10-CR-627 (KAM)

COURTNEY DUPREE, THOMAS FOLEY,
and RODNEY WATTS,

                            Defendants.
-----------------------------------------------------------------X
```

A P P E A R A N C E S:

Loretta E. Lynch
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
    *By Evan S. Weitz*
    *Assistant United States Attorney*

Marion Bachrach
Ronald E. DePetris
DePetris & Bachrach, LLP
240 Madison Avenue
3rd Floor
New York, NY 10016
    *Attorneys for Defendant Rodney Watts*

Leasa Woods Anderson
Andrews Kurth LLP
1350 I Street, NW, Suite 1100
Washington, DC 20005
    *Attorney for Defendant Courtney Dupree*


**AZRACK**, **United States Magistrate Judge:**

    On April 25, 2011, the Honorable Kiyo A. Matsumoto referred to me defendant Rodney

Watts' post-indictment, pretrial hearing pursuant to <u>United States v. Monsanto</u> ("<u>Monsanto IV</u>"),

924 F.2d 1186 (2d Cir. 1991). Minute Entry of Apr. 25, 2011. Prior to the May 13, 2011, hearing, I informed the parties that I was satisfied that, per Federal Bureau of Investigation ("FBI") forensic accountant Christopher Petrellese's April 28, 2011 affidavit, Government Letter of April 29, 2011, Ex. A ("Petrellese Aff."), ECF No. 184, the government met its burden of establishing probable cause to believe that the Unalite Southwest, LLC ("USW") bank funds presently at issue[1] are forfeitable and, therefore, may lawfully continue to be restrained. Scheduling Order as to Monsanto Hearing 2, ECF No. 203. Accordingly, the hearing was strictly limited to defendant Watts' cross-examination of Mr. Petrellese with regard to the factual statements sworn to in Mr. Petrellese's affidavit in support of the "but for" test advanced by the government. Id.; see generally Transcript of Monsanto Hearing ("Monsanto Tr.").

Having carefully reviewed the testimony and exhibits offered into evidence at the hearing, as well as defendant Watts' and the government's post-hearing memoranda, for the reasons articulated below, I respectfully recommend that the Court find that defendant Watts has failed to establish that the government lacks probable cause to continue restraining the seized USW bank funds as property subject to forfeiture.

## I. BACKGROUND

The procedural history of this case has been described in detail by Judge Matsumoto in prior memoranda and orders, see, e.g., Mem. and Order, March 18, 2011, ECF No. 133; therefore, for the purposes of this Report and Recommendation, I shall assume familiarity with this case's history prior to the point when Judge Matsumoto ordered the Monsanto hearing.

---

[1] By letter dated May 19, 2011, the government addressed the seized Unalite NY Chase account ending in "1036," which currently holds approximately $331,000, but was not addressed by either party at the Monsanto hearing or any other litigation prior to Judge Matsumoto's order that a Monsanto hearing be held. Government Letter of May 19, 2011, at 1, ECF No. 214. According to the government, this previously un-identified account received and dispersed funds in exactly the same manner as the previously identified USW accounts as part of the same alleged fraud scheme. Id. at 2. As both parties agree to the existence and approximate current balance of the Chase account ending in 1036, I respectfully recommend that the Court apply the same analysis and holding to the 1036 account as it does for the previously identified and litigated USW Chase accounts.

Monsanto IV dictates that, pursuant to the Fifth and Sixth Amendments, a criminal defendant may be entitled to an adversary, post-restraint, pretrial hearing to challenge the government's showing of probable cause that properties specified as forfeitable in the indictment are, in fact, forfeitable. See 924 F.2d at 1203. The purpose of the challenge is to allow defendants an opportunity to regain possession of seized property for the purpose of retaining their counsel of choice. See id. To be granted a hearing, a defendant must: (1) demonstrate to the court's satisfaction that he has no assets, other than those restrained, with which to retain private counsel and provide for himself and his family; and (2) make a prima facie showing that the assets are not forfeitable. See United States v. All Funds on Deposit, No. CV-05-3971, 2007 U.S. Dist. LEXIS 77817, at *19–20 (E.D.N.Y. Oct. 17, 2007). Judge Matsumoto found both elements met when she ordered that a Monsanto hearing be held. See generally Transcript of Criminal Cause for Motion Hearing of Apr. 25, 2011 ("Hearing Tr.").

In order to continue restraining a defendant's property, the government "need only establish probable cause as to the defendant's guilt and the forfeitability of the specified assets. . . ." Monsanto IV, 924 F.2d at 1195 (citing United States v. Monsanto ("Monsanto III"), 109 S. Ct. 2657, 2666–67 (1989)); see also United States v. Hatfield, No. 06-CR-0550, 2010 U.S. Dist. LEXIS 39618, at *13–14 (E.D.N.Y. Apr. 21, 2010). The defendant, on the other hand, is "required to prove 'by a preponderance of the evidence that the government seized [nonforfeitable] assets without probable cause.'" United States v. Wingerter, 369 F. Supp. 2d 799, 808 (E.D. Va. 2005) (insertion in original) (quoting Mathews v. Eldridge, 424 U.S. 319, 334–35 (1976).

Defendant Watts consistently argued prior to the May 13th hearing that the issue of probable cause as to the government's detention of the USW bank funds should be governed by

the tracing principles enunciated in United States v. Banco Cafetero, 797 F.2d 1154 (2d Cir. 1986). E.g., Watts Letter of May 11, 2011, at 1, ECF No. 198. In Banco Cafetero, the Second Circuit held that drug money commingled in a bank account with legitimate money is forfeitable, but implied that the legitimate money in the same account is not forfeitable. 797 F.2d at 1159, 1161 n.9. Here, under the Banco Cafetero tracing principles, the government would have to trace forfeitable deposits of loan proceeds into the seized USW bank accounts at issue. Id. at 1157–62.

Conversely, the government argued that Banco Cafetero did not apply here because this is not a comingling case, and that this issue should be governed by the "but for" test endorsed by the Second Circuit in United States v. Porcelli, 865 F.2d 1352 (2d Cir. 1989). Gov't Letter of May 11, 2011, at 3–5, ECF No. 197. Under Porcelli, otherwise legitimate or untainted assets may nonetheless be seized by the government if a criminal defendant "would not have acquired or maintained [them] but for his fraudulent scheme." 865 F.2d at 1365 (emphasis added). According to the government's theory, "the seized funds are forfeitable in their entirety because the entire amount is a product of the tainted funds . . . . [B]ut for the fraudulently obtained loan proceeds used to pay [USW] employees, there simply would have been no proceeds of USW or payments by USW's customers." Gov't Letter of May 11, 2011, at 3.

By order dated May 12, 2011, I advised the parties that I agreed with the government that the "but for" test governs this issue, and that, for the purposes of defendant Watts' Monsanto hearing, the affidavits of FBI Special Agent Gavin Shea in support of the original arrest and seizure warrants, and the tracing principles enunciated in Banco Cafetero are irrelevant.[2] I also informed the parties that I was satisfied that, per Mr. Petrellese's April 28, 2011 affidavit, the

---

[2] Judge Matsumoto also previously indicated that the Monsanto hearing would be based upon the "but for" theory proffered by the government. See Hearing Tr. 54.

government had met its burden of establishing probable cause to believe that the USW bank funds presently at issue are forfeitable and, therefore, may lawfully continue to be restrained. Scheduling Order as to Monsanto Hearing 2, ECF No. 203. Accordingly, on May 13, 2011, I held a Monsanto hearing for the limited purpose of allowing defense counsel to cross-examine Mr. Petrellese with regard to the factual statements sworn to in his affidavit in support of the government's "but for" theory. See generally Monsanto Tr.

## II.  DISCUSSION

Mr. Petrellese's May 2011 affidavit and hearing testimony, as well as exhibits submitted into evidence by defendant Watts, illustrate the banking structure and practices of GDC Acquisitions, LLC ("GDC") and its various subsidiaries. See generally Exs. 2, 4, 5. With regard to the USW subsidiary, customer deposits were regularly transferred out of the subject Chase accounts, into the USW Operating Account at Amalgamated Bank, and then transferred to a Concentration Account at Amalgamated. Monsanto Tr. 12–14. The Concentration Account held the available cash of all of GDC's subsidiaries, as well as the loan proceeds alleged to have been fraudulently obtained. Id. at 12–15. The Chief Financial Officer ("CFO") of GDC would then transfer funds from the Concentration Account into the USW Payroll Account at Amalgamated as necessary, from which USW paid its employees and other expenses. Id. at 37; Exs. 5, 6.

During the period of the alleged fraud, the Concentration Account received approximately $18 million in fraudulently obtained loan proceeds, which accounted for approximately 20% of the $89 million in total cash held in the account. Monsanto Tr. 29; Exs. 3, 4, 7. During the same time period, approximately $1.7 million was disbursed from the Amalgamated Bank Concentration Account to the USW Payroll Account. Petrellese Aff. 2. This $1.7 million was then disbursed to pay the payroll of USW employees and other expenses.

See id.  Between August 2009 and July 2010, approximately $3.5 million in customer payments were deposited into the seized USW accounts.  Monsanto Tr. 5–7.  After the July 2010 seizure of the USW accounts, approximately an additional $980,000 in customer payments were deposited into the subject USW accounts.  Id.  These $4.5 million in payments were made by bona fide commercial customers, such as Kroger supermarkets.  Id. at 7–8.

Defendant Watts' cross-examination of Mr. Petrellese also establishes that, indeed, no proceeds from the Concentration Account, the USW Operating Account, or the USW Payroll Account were ever transferred or deposited into to the subject USW Chase accounts.  Monsanto Tr. 14–15; Exs. 2, 4, 5, 6.  Again, USW's available cash, along with that of the rest of GDC's subsidiaries, was transferred into the Concentration Account.  See Monsanto Tr. 12, 18, 19.  Accounts such as the USW Payroll Account would then receive funds from the Concentration Account as needed.  See Petrellese Aff. 2.  During the course of the alleged fraud, the balance of the Concentration Account sometimes fell below the amounts of the loan deposits, and more than once fell to as low as zero.  Monsanto Tr. 34–37; Ex. 4.  Finally, Mr. Petrellese admitted that he could not say what amount, if any, of the loan proceeds in the Concentration Account went to the USW Payroll Account.  Monsanto Tr. 32–33.

In light of the above facts, defendant Watts asserts that the funds held in the subject USW accounts are untainted, and therefore unforfeitable, for three reasons: (1) no loan proceeds were deposited into the subject USW accounts; (2) USW did not need loan proceeds to fund its payroll, as its customer deposits at Chase more than covered its payroll needs; and (3) Mr. Petrellese acknowledged that the Concentration Account held comingled funds.  Def. Watts' Post-Hearing Mem. ("Watts' Mem.") 7, ECF No. 217.  Defendant Watts argues that these factors

defeat the government's "but for" theory, and therefore rebut the government's offer of probable cause to continue restraining the USW bank funds. See id. at 8.

However, defendant Watts' arguments are in contradiction to both relevant "but for" test case law, and the realities of how the criminal defendants are alleged to have fraudulently obtained $18 million in loan monies.

Firstly, the fact that no loan proceeds were deposited into the subject USW accounts is precisely why the Second Circuit adopted the "but for" test, and is therefore irrelevant to this case. See Porcelli, 865 F.2d at 1365 (finding that the lower court erred in not determining the extent to which certain properties that were "not entirely the tainted fruits of [defendant's] fraud" would not have been acquired "but for" the fraudulent scheme). To require the government to establish that loan proceeds were directly deposited into the subject USW accounts would be to require the application of Banco Cafetero's tracing principles, which both Judge Matsumoto and I have already indicated are inapplicable in this case. See Hearing Tr. 54; Scheduling Order as to Monsanto Hearing at 2.

Secondly, and perhaps most importantly, defendant Watts' assertion that USW did not need loan proceeds to run its business is belied by the facts of this case and applicable law. Defendant Watts argues that the roughly $4.5 million in USW customer payments were deposited into the Concentration Account as a matter of "administrative convenience," Watts' Mem. at 8, and that these customer deposits evince USW's independent profitability and solvency, see id. at 7. However, the proposition that USW could have operated independently does nothing to counter the allegation that it operated as part of an elaborate network of bank accounts and business records in which, as Mr. Petrellese testified, "money could be counted two

7

or three times because of the transfers back and forth on a regular basis. . . ." for the purpose of obfuscating the underlying fraudulent scheme. Monsanto Tr. 20.

Moreover, the proposition that USW could have operated independently is not supported by the record. During the course of the alleged fraud, the USW Payroll Account received some $1.7 million from the Concentration Account, which was then disbursed to USW employees and other USW expenses, thereby making the approximately $1 million in customer payments at issue possible. The fact that the balance of the Concentration Account several times fell to zero supports the inference that, but for the roughly 20% of the total balance that was composed of loan proceeds, there very well may not have been $1.7 million to transfer back to the USW Payroll Account.[3] Id. at 7. Accordingly, there would not have been USW staff to earn the customer deposits at issue. Also, as defendant Watts himself notes, "customer payments from USW not only funded its own operations, they also helped fund other companies. . . ." Watts' Mem. at 8; Exs. 8, 6A. Therefore, retaining all of its customer payments would never have been a viable option for USW, because every dollar in loan proceeds and customer payments appears to have been needed to keep the GDC family of companies afloat.

Furthermore, as noted by the government, "at the time of defendant's arrest, the fraudulently obtained line of credit was drawn down by over $18 million. Most of these funds are still outstanding, indicating that the fraudulent scheme in no way generated a profit." Government Letter of May 23, 2011, at 2, ECF No. 236. This means that, taking a broad view of USW as part of the overall GDC family, the millions of dollars in customer payments received by USW cannot be considered "profit," per se. Alternatively, even if USW's customer payments

---

[3] Put another way, by design, USW paid its employees exclusively by means of a payroll account funded by the Concentration Account, 20% of which is alleged to have been composed of fraudulently obtained loan monies. A periodic $0 Concentration Account balance suggests that the account's 20% in loan monies made possible disbursements to subsidiaries like USW that otherwise could not have been made.

can be considered profit, it is irrelevant for forfeiture purposes whether property obtained via illicit activity generate an honest profit. See United States v. Kalish, No. 05-CR-656, 2009 U.S. Dist. LEXIS 31453, at *17 (S.D.N.Y. Jan. 23, 2009); see also United States v. Hill, 46 Fed. Appx. 838, 839 (6th Cir. 2002) ("[B]ecause this case merely involves the appreciated value of the forfeited 616 shares, the district court properly ordered the forfeiture of the appreciated value of the stock.").

Thirdly, and finally, the fact that Mr. Petrellese acknowledged that the Concentration Account was composed of a comingling of approximately 20% in allegedly fraudulent loan proceeds and 80% in transfers from subsidiaries does not make this a comingling case. C.f. Banco Cafetero, 797 F.2d at 1161 n.9 (implying that untainted monies comingled with tainted monies are not forfeitable). Nor does it change the fact that, but for those loan monies, the subject USW bank funds would not have been possible. See, e.g., Porcelli, 865 F.2d at 1364–66 (describing how property interests outside of a RICO enterprise may also be forfeitable as the fruit of a broader fraudulent scheme).

### III. CONCLUSION

In light of the foregoing, I respectfully recommend that the Court find that defendant Watts has failed to establish that the government lacks probable cause to continue restraining the subject USW bank funds as property subject to forfeiture, and therefore deny his request under United States v. Monsanto for the release of these funds in order to retain counsel.[4]

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of the date of entry of this

---

[4] In its post-hearing memorandum, the government additionally argues that the retention of the seized funds is appropriate pursuant to Banco Cafetero. Government Letter of May 23, 2011, at 3. However, because this Court has previously found that Banco Cafetero is inapplicable to this case, I decline to comment on the government's analysis in this regard.

Report and Recommendation. Failure to file objections within the specified time waives the right to appeal the District Court's order. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(a).

SO ORDERED.

Dated: June 2, 2011
Brooklyn, New York

_____/s/_____
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE