UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

      -against-

COURTNEY DUPREE, THOMAS FOLEY, AND
RODNEY WATTS,

                Defendants.
----------------------------------X

**<u>ORDER ADOPTING IN PART
AND MODIFYING IN PART
REPORT AND
RECOMMENDATION</u>**

10-CR-627 (KAM)

**MATSUMOTO, United States District Judge:**

<u>INTRODUCTION</u>

      Defendants Courtney Dupree ("Dupree"), Thomas Foley
("Foley") and Rodney Watts ("Watts") (together, "defendants")
are charged together in three counts, Watts is charged in four
counts, and Dupree is charged in all five counts of a five-
count superseding indictment. (*See* ECF No. 155, Superseding
Indictment ("Superseding Indictment").) Count One charges all
defendants with Conspiracy to Commit Bank, Mail and Wire Fraud
in violation of 18 U.S.C. §§ 1349, 3551 *et seq.* (*Id.* at
¶¶ 17-18.) Count Two charges all defendants with Bank Fraud
in violation of 18 U.S.C. §§ 1344, 2, 3551 *et seq.* (*Id.* at
¶¶ 19-20.) Count Three charges defendants Dupree and Watts
with making a False Statement in violation of 18 U.S.C.
§§ 1014, 2, 3551 *et seq.* (*Id.* at ¶¶ 21-22.) Count Four
charges all defendants with making a False Statement by
"knowingly and intentionally [making] a false statement and

report, and willfully overvalu[ing] property and security, for the purpose of influencing the action of Amalgamated Bank upon one or more loans . . ." in violation of 18 U.S.C. §§ 1014, 2, 3551 *et seq.* (*Id.* at ¶¶ 23-24.) Count Five charges only defendant Dupree with an additional count of Bank Fraud, in violation of 18 U.S.C. §§ 1344, 2, 3551 *et seq.* (*Id.* at ¶¶ 25-26.)

Currently before the court is defendant Watts' request that funds in the amount of $980,000 seized by the United States from accounts at J.P. Morgan Chase Bank in the name of Unalite Southwest LLC (the "USW Chase accounts") be released to fund his defense. Familiarity with the facts and prior opinions of this court in this matter is presumed and only the background relevant to this motion is set forth below. For the reasons set forth below, Magistrate Judge Azrack's Report and Recommendation is respectfully adopted in part and modified in part.

## BACKGROUND

On July 21, 2010, the government applied for seizure warrants for funds in Amalgamated Bank accounts held by GDC and its subsidiaries. (ECF No. 57, Seizure Warrants dated July 21, 2010 ("7/21/10 Seizure Warrants").) In support of its application for seizure warrants, the government submitted several affidavits from Special Agent Gavin Shea. After

providing a detailed description of defendants' allegedly
fraudulent activities, Special Agent Shea affirmed that there
"is probable cause to believe that any and all funds on
deposit in the accounts listed below and in Exhibit B to this
affidavit (collectively, the "SUBJECT ACCOUNTS") are subject
to forfeiture pursuant to Title 18, United States Code,
sections 981(a)(1)(C), 981(a)(1)(D), 982(a)(2), and Title 28,
United States Code section 2461, as representing property
which constitutes or is derived from proceeds traceable to a
conspiracy to commit bank fraud, mail fraud, and wire fraud
contrary to Title 18, United States Code, Sections 1344 (bank
fraud), 1341 (mail fraud), and 1343 (wire fraud),
respectively, all specified unlawful activities." (ECF No.
55, Affidavit in Support of Application for Search and Seizure
Warrants dated July 21, 2010 ("Shea Aff.") at 2.)

In addition to his Affidavit in Support of
Application for Search and Seizure Warrants dated July 21,
2010, Agent Shea also submitted additional affidavits in
support of the seizure warrants that were ultimately issued on
July 23 and July 27, 2010 to seize funds in GDC's and its
subsidiaries' accounts at Amalgamated Bank and J.P. Morgan
Chase Bank. (*See* Affidavit in Support of Application for
Seizure Warrants dated July 23, 2010 ("7/23/10 Shea Seizure
Aff."); Affidavit in Support of Application for Seizure

3

Warrants dated July 27, 2010 ("7/27/10 Shea Seizure Aff.").)
In these affidavits, Special Agent Shea provided the source of
his information and his grounds for believing probable cause
existed to seize the funds, including setting forth details of
the scheme to defraud and the fraudulent financial statements.
(Shea Aff. at ¶ 7; *see also* 7/23/10 and 7/27/10 Shea Seizure
Affs.)  Following the government's execution of the seizure
warrants on July 23, 2010, and in further support of probable
cause, Special Agent Shea affirmed that "[a]fter being placed
under arrest, PATELLO, [GDC's] controller and chief financial
officer ("CFO"), confirmed the statements of the CS-1
[Confidential Source] and stated that the fraud proceeds were
initially deposited into an account held by GDC and then
dispersed throughout the Subject Accounts as needed to run GDC
and its subsidiaries.  PATELLO further stated that the
Additional Subject Accounts received fraud proceeds through
the same process . . . .  Specifically, PATELLO stated that
the money was distributed to all other accounts held at
Amalgamated and Chase Banks including Unalite accounts in
Texas."  (7/23/10 and 7/27/10 Shea Seizure Affs. at ¶ 32.)

   Magistrate Judge Go signed two seizure warrants for
accounts at Amalgamated and J.P. Morgan Chase Bank on July 21,
2010, and limited the seizures to $21,000,000.  (7/21/10
Seizure Warrants.)  Pursuant to these seizure warrants,

sixteen bank accounts at Amalgamated were seized on July 23, 2010. (7/23/10 Shea Seizure Aff. at ¶ 3.) A second seizure warrant for five additional bank accounts at Amalgamated was signed by Magistrate Judge Reyes on July 23, 2010. The government subsequently learned that additional bank accounts and one of the original subject accounts were held at J.P. Morgan Chase Bank rather than at Amalgamated Bank as listed in the warrant. (7/27/10 Shea Seizure Aff. at ¶ 3.) Accordingly, on July 27, 2010, Magistrate Judge Reyes reissued the seizure warrant authorizing seizure of funds held at J.P. Morgan Chase Bank by Unalite Southwest LLC and Unalite NY, LLC (the "USW Chase accounts"). (ECF No. 60, Seizure Warrant dated July 27, 2010.) The funds in these accounts are the subject of the instant motion.

On January 10, 2011, defendant Watts filed, *inter alia*, a motion pursuant to *United States v. Monsanto*, 924 F.2d 1186 (2d Cir. 1991), to vacate the seizure of funds in the USW Chase accounts. (ECF No. 89, Notice of Motion Opposing Government's Unconstitutional and Unlawful Seizure and Restraint of Funds dated January 10, 2011.)

On March 18, 2011, the court denied defendant Watts' motion, holding that notwithstanding Watts' demonstrated financial need for the funds, the government had established probable cause to seize the funds based upon the sworn

statement of Agent Shea in which he recounted statements of two confidential informants, who were employed by GDC and who had knowledge of the scheme, that the fraud proceeds from Amalgamated were deposited into an Amalgamated account and disbursed amongst all of the subject accounts to be seized, and then used to run GDC and the subsidiary businesses. (*See generally* ECF No. 133, Memorandum and Opinion dated March 18, 2011.)

On March 24, 2011, defendant Watts filed a motion for reconsideration of the court's denial of his motion for a *Monsanto* hearing. (ECF No. 143, Notice of Motion for Reconsideration and Re-Argument; ECF No. 143-1, Memorandum of Law in Support of Motion for Reconsideration or Re-Argument.) Defendant Watts attached to his motion bank records from the USW Chase accounts which purportedly showed that no proceeds from the Amalgamated loan were deposited into the accounts. (ECF No. 143, Exs. A and B.) The government opposed defendant Watts' motion, arguing that even if the seized funds in the USW Chase accounts were legitimate proceeds of the business, the funds are forfeitable because USW would not have obtained or retained the funds "but for" the criminal offense. (ECF No. 164, Memorandum of Law in Opposition to Defendants' Motion for Reconsideration or Re-Argument, at 9-10, citing, *inter alia*, *United States v. Porcelli*, 865 F.2d 1352 (2d Cir.

1989).) Defendant Watts submitted a reply in further support
of his motion to reconsider. (ECF No. 168, Reply Memorandum
of Law in Support of Motion for Reconsideration or Re-
Argument.)

On April 25, 2011, the court heard oral argument on
defendant Watts' motion to reconsider. Upon extensive
argument, the court granted in part defendant Watts' motion
for reconsideration and ordered:

> Based upon the Unalite accounts records at
> Chase Bank, which the court considered
> based on Watts' representation that he
> only recently obtained access to the bank
> records, the court granted defendants'
> motion to the limited extent of granting
> defendant Watts a hearing pursuant to
> *United States v. Monsanto*, 924 F.2d 1186
> (2d Cir. 1991). The court denied
> defendants' motion on all other grounds.
> The *Monsanto* hearing shall be limited to
> the narrow issue of whether the government
> can establish probable cause that the
> seized Unalite bank accounts at Chase Bank
> are forfeitable.

(Minute Entry dated April 25, 2011.) In the same Minute Entry,
the court referred the *Monsanto* hearing to Magistrate Judge
Azrack. (*Id.*)

The government moved to have the *Monsanto* hearing
conducted by affidavit, rather than by live testimony, and
submitted an affidavit from Christopher Petrellese
("Petrellese"), a forensic accountant with the FBI, in support
of its argument that there was probable cause to continue to

restrain the funds in the USW Chase accounts. (ECF No. 184,

Letter from the Government dated April 29, 2011 ("Govt.

Letter"); ECF No. 184-1, Affidavit of Christopher Petrellese

("Petrellese Aff.").) The government reasserted its argument

that "[b]ut for the fraudulently obtained loan proceeds used

to pay USW employees, there simply would have been no payments

by USW's customers." (ECF No. 184, Govt. Letter at 2.)

Defendant Watts did not object to the government's

presentation of direct evidence by affidavit, but requested

that cross-examination proceed by live testimony. (ECF No.

185, Letter from Marion Bachrach, counsel to defendant Watts,

dated April 29, 2011, at 1.)

       On May 12, 2011, Magistrate Judge Azrack issued a

Scheduling Order setting the *Monsanto* hearing for May 13, 2011

at 10:30 a.m. (ECF No. 203, Scheduling Order as to *Monsanto*

Hearing dated May 12, 2011.) Specifically, Magistrate Judge

Azrack ordered:

> I am satisfied that, through Federal
> Bureau of Investigation ("FBI") forensic
> accountant Christopher Petrellese's April
> 28, 2011, affidavit, the government has
> met its burden of establishing probable
> cause to believe that the Unalite
> Southwest, LLC ("USW") bank funds
> presently at issue are forfeitable. ECF
> No. 184, Ex. A; *c.f.* Transcript of
> Criminal Cause for Motion Hearing at 54.
> Therefore, this hearing will be strictly
> limited to a cross-examination by
> defendant Watts of Mr. Petrellese with

> regard to the factual statements sworn to
> in his affidavit in support of the "but
> for" test advanced by the government. I
> find that, for the purposes of defendant
> Watts' *Monsanto* hearing, the affidavits of
> Special Agent Gavin Shea in support of the
> original arrest and seizure warrants, and
> the tracing principles enunciated in
> *United States v. Banco Cafetero*, 797 F.2d
> 1154 (2d Cir. 1986), are irrelevant.

(*Id.*)  On May 13, 2011, Magistrate Judge Azrack presided over

the *Monsanto* hearing, at which defendant Watts cross-examined

Petrellese.  (ECF No. 213, Minute Entry dated May 13, 2011;

Transcript of *Monsanto* Hearing Before the Honorable Joan M.

Azrack, dated May 13, 2011 ("Tr.").)  Thereafter, Magistrate

Judge Azrack provided the parties with an opportunity to make

post-hearing submissions, which they timely did.  (ECF No.

217, Defendant Watts' Post-Hearing Memorandum dated May 20,

2011; ECF No. 236, Letter from the Government dated May 23,

2011.)

On June 2, 2011, Magistrate Judge Azrack issued a

Report and Recommendation recommending, *inter alia,* that this

court "find that defendant Watts has failed to establish that

the government lacks probable cause to continue restraining

the seized USW bank funds as property subject to forfeiture."

(ECF No. 248, Report and Recommendation dated June 2, 2011, at

2 ("R&R").)  Defendant Watts timely filed objections to the

R&R and the government responded.  Fed. R. Crim. P. 59(b)(2);

(ECF No. 256, Defendant Watts' Objections to Report and
Recommendation of June 2, 2011 by Magistrate Judge Azrack
("Watts Obj."); ECF No. 269, Letter from the Government dated
July 7, 2011.)  The court heard oral argument on defendant
Watts' objections on July 11, 2011.  (Minute Entry dated July
11, 2011.)

## FACTS ESTABLISHED AT *MONSANTO* HEARING

The following facts pertinent to Watts' instant
motion for reconsideration were established by the Petrellese
affidavit or on cross-examination of Petrellese by defendant
Watts and are not in dispute:

- Upon receipt of customer payments, Unalite Southwest
  deposited the payments into the USW Chase accounts.
  Between July 2009 and July 2010, approximately $3.5
  million dollars of customer payments were deposited
  into the USW Chase accounts.  (Tr. at 4-5.)  An
  additional deposit of approximately $1 million was made
  into the accounts after July 2010.  (Tr. at 6-7.)

- Funds from the USW Chase accounts were then transferred
  into account number 151003272 held at Amalgamated Bank
  (the "Concentration Account") (Petrellese Aff. at ¶¶ 5,
  8.)

- Pursuant to the loan and revolving credit agreement
  entered on August 29, 2008 between GDC subsidiaries JDC
  Lighting LLC, Unalite Electric and Lighting LLC and
  Hudson Bay Environments Group LLC (the "subsidiaries")
  and Amalgamated Bank, the subsidiaries could borrow up
  to $21 million from Amalgamated Bank through a
  revolving credit loan and a term loan ("Agreement"),
  both of which loans were guaranteed by GDC.
  (Petrellese Aff. at ¶ 4.)

- Loan proceeds from the Agreement were also deposited into the Concentration Account. (Petrellese Aff. at ¶ 5.)

- Loan proceeds from the Agreement accounted for approximately 20% of the funds in the Concentration Account. (Tr. at 29.)

- On occasion, funds from the Concentration Account were disbursed to account number 151005351 held at Amalgamated Bank in the name of Unalite Southwest (the "USW Payroll Account"). (Petrellese Aff. at ¶ 6.) Between July 1, 2009 and February 12, 2010, approximately $1,751,454.37 was distributed from the Concentration Account to the USW Payroll Account. (*Id.*) The USW Payroll account was used to pay the salaries of USW employees. (*Id.*)

- No funds were ever transferred from the Concentration Account to the USW Chase accounts. (Tr. at 14-15.)

## STANDARD OF REVIEW

To the extent that a party makes specific and timely objections to a magistrate's findings, the court must apply a *de novo* standard of review. Fed. R. Crim. P. 59(b)(3). Upon such *de novo* review, the district court "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3).

## DISCUSSION

Defendant Watts' objections to the R&R can be divided into two main categories: (1) that Magistrate Judge Azrack incorrectly placed the burden of proof at the *Monsanto*

hearing on defendant Watts rather than on the government; and
(2) that the evidence presented by the government on direct
and cross-examination did not satisfy its burden of proof to
establish probable cause to continue to restrain the funds in
the USW Chase accounts.  (Watts Obj. at 15.)  The government
responds that Judge Azrack properly interpreted the evidence
and the law and requests that the findings in the R&R be
adopted.  (ECF No. 269, Govt. Letter dated July 7, 2011.)  The
court discusses each objection in turn.

  **A. Burden of Proof**

         As the court found in its March 18 Order, in order
to be entitled to a *Monsanto* hearing, the defendant must make
a preliminary showing regarding the "lack of probable
cause . . . as to . . . forfeitability of [seized] assets."
(ECF No. 133, Memorandum and Order dated March 18, 2011 at 53
(citing *Monsanto*, 924 F.2d at 1194).)  Upon making such a
showing, at the *Monsanto* hearing, the burden is on the
government to establish probable cause to continue the seizure
of funds.  *See Monsanto,* 924 F.2d at 1195 ("[T]he government
need only establish probable cause as to the defendant's guilt
and the forfeitability of the specified assets."); *see also*
*United States v. Hatfield*, No. 06-CR-0550, 2010 U.S. Dist.
LEXIS 39618, at *13-14 (E.D.N.Y. April 21, 2010) (holding that

the government must establish probable cause that the money it has restrained is forfeitable).

Defendant Watts, in his motion to reconsider on March 24, 2011, presented to the court, for the first time, USW's Chase bank records which indicated that no funds from the Amalgamated loan were ever transferred into the USW Chase accounts. (See ECF No. 143, Exs. A, B.) The government did not refute the evidence presented by Watts that the USW Chase accounts did not receive Amalgamated loan proceeds.

The court granted in part defendant Watts' motion to reconsider and found that defendant Watts had satisfied his *prima facie* burden of establishing a lack of probable cause as to forfeitability of the seized funds in the USW Chase accounts. (*See* Minute Entry dated April 25, 2011 ("Based upon the Unalite accounts records at Chase Bank, which the court considered based on Watts' representation that he only recently obtained access to the bank records, the court granted defendants' motion to the limited extent of granting defendant Watts a hearing pursuant to *United States v. Monsanto*, 924 F.2d 1186 (2d Cir. 1991).").)

Thereafter, the government conceded that its two sources who had previously stated that Amalgamated loan proceeds were disbursed to GDC's subsidiaries' accounts, including the USW Chase accounts – and upon which the court

had relied in determining in its March 18 Order that there was
probable cause to continue to seize the funds – were mistaken.
(ECF No. 184, Letter from the Government dated April 29, 2011,
at 6 n.4 ("The warrants dated July 23, 2010 and July 27, 2010
state that the government was informed by two sources with
knowledge of the defendant's business that the all of the
seized accounts received loan proceeds.  Upon review of the
bank records it appears that while all of GDC's subsidiaries
received loan proceeds, including USW as detailed above, not
every account held by the subsidiaries necessarily received
loan proceeds."); ECF No. 197, Govt. Letter dated May 11, 2011
("The government continues to rely on Agent Shea's affidavits,
but only for probable cause to believe that a crime was
committed.  Agent Shea's testimony is irrelevant to the
traceability of the seized funds.").)

       Once the court granted Watts' request for a *Monsanto*
hearing, it was the government's burden to establish probable
cause as to the defendant's guilt and the forfeitability of
the specified assets at the hearing.[1]  Magistrate Judge Azrack

---

[1] Only at issue here was whether the government had established
probable cause as to the forfeitability of the funds such that seizure may
continue pending trial.  The court previously found, and did not grant
reconsideration, that the government had established probable cause as to
defendant Watts' commission of the offenses that provide a basis for
forfeiture.  (*See* Minute Entry dated April 25, 2011 (limiting the Monsanto
hearing to "the narrow issue of whether the government can establish
probable cause that the seized Unalite bank accounts at Chase Bank are
forfeitable").)

reviewed the Petrellese affidavit and found that it
established probable cause as to the forfeitability of the
funds in the USW Chase accounts.[2] (ECF No. 203, Scheduling
Order as to *Monsanto* Hearing dated May 12, 2011 ("I am
satisfied that, through [FBI] forensic accountant Christopher
Petrellese's April 28, 2011, affidavit, the government has met
its burden of establishing probable cause to believe that the
Unalite Southwest, LLC ("USW") bank funds presently at issue
are forfeitable."). Specifically, Petrellese's affidavit
stated that loan proceeds were distributed to the subsidiaries
through the Amalgamated Concentration Account. (Petrellese
Aff. at ¶ 5.) Petrellese further affirmed that during the
period between July 1, 2009 and February 12, 2010,
approximately $11.5 million was disbursed under the terms of
the Agreement to the Concentration Account. (*Id.* at ¶ 6.)
During the same time period, approximately $1.7 million was
disbursed from the Concentration Account to the USW Payroll
Account. (*Id.*) The USW Payroll Account was then used to pay
the salaries of USW employees. (*Id.*) Further, Petrellese

---

[2] The court finds nothing erroneous about Magistrate Judge Azrack's
decision to allow the government to present its case on direct examination
by affidavit, rather than by live testimony. In fact, from the outset,
defendant Watts had no objection to this procedure. (ECF No. 185, Letter
from Marion Bachrach, counsel to defendant Watts, dated April 29, 2011, at
1.) Moreover, although defendant Watts now complains that "The Magistrate
Judge did not cite any case in support of her unusual determination that
this procedure [to establish probable cause based on Petrellese's affidavit
before hearing cross-examination of the affiant] is permissible," (Watts
Obj. at 18) defendant Watts also cites no case law from this Circuit for
his assertion that this procedure is impermissible.

testified that between June 2, 2009 and July 30, 2010, the USW
Chase accounts were funded with approximately $3,492,780.97 of
customer payments, approximately $2,743,390.33 of which was
then transferred to the Concentration Account. (*Id.* at ¶ 8.)
Petrellese concluded that "upon [his] review of Bank records
it appears that during the time periods discussed above, the
payroll for USW was paid from the Concentration Account which
had received over $11 million in loan proceeds. The proceeds
of USW were then used to pay operational expenses of USW, with
the remainder deposited back into the Concentration Account."
(*Id.* at ¶ 9.) Based upon the Petrellese Affidavit, Magistrate
Judge Azrack found that the government had established
probable cause that the funds are forfeitable.

        The purpose of Defendants Watts' cross-examination,
therefore, was to provide him with the opportunity to
challenge the government's showing of probable cause as found
by the court, based on Petrellese's affidavit. Although
Magistrate Judge Azrack phrased her recommendation in terms
that suggested that the defendant had a burden to establish a
lack of probable cause, (R&R at 9 ("defendant Watts has failed
to establish that the government lacks probable cause to
continue restraining the subject USW bank funds as property
subject to forfeiture")), this court notes that Magistrate
Judge Azrack, upon finding probable cause as to the

forfeitability of the USW Chase funds, properly provided

defendant Watts with the opportunity to cross-examine Mr.

Petrellese and refute the finding of probable cause that the

court had previously made.  Mr. Watts does not bear the burden

to establish at the *Monsanto* hearing the lack of probable

cause, notwithstanding the Second Circuit's acknowledgement

that "the Supreme Court's rulings in *Monsanto III* and *Caplin &*

*Drysdale* compel a defendant to establish lack of probable

cause either as to guilt or forfeitability of restrained

assets in order to obtain any relief from a pretrial restraint

of allegedly forfeitable assets."  *Monsanto,* 924 F.2d at 1194.

Instead, as the *Monsanto* court further determined, in order to

continue the government's post-indictment restraint of funds,

the government must "establish probable cause as to the

defendant's guilt and the forfeitability of the specified

assets."  *Id.* at 1195.  Accordingly, the court finds, upon *de*

*novo* review, that once the government established probable

cause as to the forfeitability of funds, defendant Watts was

afforded the opportunity to cross-examine Mr. Petrellese and

challenge the probable cause determination.  Indeed, at the

commencement of the hearing, Judge Azrack explicitly stated,

"As I indicated in my order of yesterday I'm satisfied the

government met at least their burden with the affidavit, but

I'm prepared to have the defense examine the accountant or put

on any evidence that they think would be illuminating for me
before I make my report and recommendation to Judge Matsumoto
on the issue." (Tr. at 2.) Thus, Magistrate Judge Azrack did
not place an improper burden on defendant Watts at the
*Monsanto* hearing.

   **B. Sufficiency of the Evidence in Support of Probable Cause**

         Second, defendant Watts argues that Magistrate Judge
Azrack erred in applying the "but for" test of forfeitability
and finding that the funds seized from the USW Chase accounts
satisfied the test. (Watts Obj. at 19-22.) Defendant Watts
argues that the government cites only post-trial cases and
does not provide any support for pretrial seizure of funds
based on the "but for" test. (*Id.* at 19.) Defendant Watts
further argues that the "government here utterly failed to
show that any portion of the fraudulent loan proceeds was
needed and actually used to pay the payroll expenses of USW
employees." (*Id.* at 21.)

         In response, the government argues that "it defies
logic to suppose that the government may use the 'but for'
test to achieve ultimate post-trial forfeiture under the more
rigorous standard of preponderance of the evidence, but may
not initially restrain those same assets under the less
rigorous probable cause standard needed for pre-trial
restraint." (ECF No. 269, Govt. Letter dated July 7, 2011, at

                              18

4.)  Further, the government argues that Magistrate Judge
Azrack "properly found, based upon several reasons, that the
customer payments would not have existed but for the
fraudulently obtained loan proceeds . . . .  Specifically,
Judge Azrack correctly found that the loan proceeds were
necessary to continue operation of the business which
generated the seized funds.  Judge Azrack further found the
fraudulent scheme as a whole resulted in a loss of over $18
million dollars based upon the interconnected nature of the
scheme and use of the same concentration account to (a)
receive the fraudulently obtained loan proceeds and (b) fund
all of the companies controlled by the defendants."  (*Id.*)
(citations omitted).

        Regarding the issue of whether the "but for" test
may be applied to pre-trial seizure of funds, the court agrees
with both Magistrate Judge Azrack and the government that it
may.  The Second Circuit, in *United States v. Porcelli*, held
that, post-trial, the court may properly inquire whether the
funds at issue would have been existed "but for [the]
fraudulent scheme."  865 F.2d at 1365; *see also United States
v. Grant*, No. 05 Cr 1192, 2008 U.S. Dist. LEXIS 73479, at *5
n.1 (S.D.N.Y. Sept. 25, 2008) ("Proceeds are property that a
person would not have but for the criminal offense, and
proceeds traceable to the offense may be forfeited.").  That

the "but for" test can be used post-trial under the more

rigorous standard of preponderance of the evidence persuades

this court that the Second Circuit also would approve its

application in the pre-trial phase under the less rigorous

probable cause standard, and the court so holds that the "but

for" test may be applied to the instant case.

The court next turns to the issue of whether, as

Magistrate Judge Azrack found and the government urges the

court to affirm, the government presented sufficient evidence

to support a probable cause finding that "but for" the loan

proceeds, USW would have been unable to continue operations

and generate the seized customer payments.  (ECF No. 269,

Govt. Letter dated July 7, 2011, at 4 ("Judge Azrack correctly

found that the loan proceeds were necessary to continue

operation of the business which generated the seized

funds.").)  Magistrate Judge Azrack found:

> During the course of the alleged fraud,
> the USW Payroll Account received some $1.7
> million from the Concentration Account,
> which was then disbursed to USW employees
> and other USW expenses, thereby making the
> approximately $1 million in customer
> payments at issue possible.  The fact that
> the balance of the Concentration Account
> several times fell to zero supports the
> inference that, but for the roughly 20% of
> the total balance that was composed of
> loan proceeds, there very well may not
> have been $1.7 million to transfer back to
> the USW Payroll Account.  Accordingly,

> there would not have been USW staff to
> earn the customer deposits at issue.

(R&R at 8.)  Based on evidence that the Concentration Account

disbursed money to the subsidiaries and that the balance of

the Concentration Account "several times fell to zero,"

Magistrate Judge Azrack found that the funds from the

fraudulent loan were necessary to keep the subsidiaries

afloat.  (*Id.*)  In other words, without the fraudulent loan

proceeds which comprised approximately 20% of the funds in the

Concentration Account, the subsidiaries, including USW, would

not have received funds from the Concentration Account and

would not have been able to generate customer payments that

were then transferred to the Concentration Account.  Based on

Petrellese's testimony that the Concentration Account

consisted of approximately 20% in loan proceeds and 80% in

customer payments, each disbursement from the Concentration

Account to the subsidiaries contained approximately 20% loan

proceeds.  (*Id.*)

Defendant Watts objects to this line of reasoning.

Watts does not dispute that the USW Payroll Account received

$1.7 million in funds from the Concentration Account,

approximately 20% of which proportionally consisted of loan

proceeds.  Watts argues, however, that because USW contributed

approximately $4.5 million in legitimate customer payments to

the Concentration Account, USW could have existed completely independently from the rest of the subsidiaries and did not require any loan proceeds to survive.  (Watts Obj. at 21.)

        The court finds that Watts' argument overlooks the reality of the way the executives at GDC set up the corporate finances of GDC and its subsidiaries.  Although GDC and its subsidiaries, including USW, *could have* operated independently, it is undisputed that the Concentration Account was set up at Amalgamated so that GDC executives could "concentrate all the cash of different subsidiary companies that are part of the [GDC] group."  (Tr. at 12.)  It is also undisputed that USW contributed more to the Concentration Account than was disbursed from the Concentration Account to the USW Payroll Account, but the executives of GDC and the subsidiaries chose not to segregate the finances.  By setting up an accounting system in which all of the subsidiaries contributed to and received funds from a single Concentration Account, which was also funded with loan proceeds, USW entangled itself with the allegedly fraudulent loan proceeds. In addition, the CEO and CFO of GDC were able to move money between accounts held by GDC and its subsidiaries, including USW, on an "as needed" basis.  Further, although funds were not transferred from the Concentration Account to the USW Chase accounts, the USW Payroll Account did receive funds from

the Concentration Account.  (Tr. at 16.)  The court cannot
ignore this corporate financial structure, or that the group
of related subsidiaries, including USW, all shared in the
Concentration Account and benefited from transfers of funds
from that account, which included loan proceeds.  Accordingly,
the court rejects defendant Watts' argument that, in
considering the forfeiture issues, USW should be treated as an
entirely separate entity from the other subsidiaries and that
"but for" the loan proceeds, it would have sustained itself
financially.

On the other hand, the court cannot agree with
Magistrate Judge Azrack's finding that the government
established probable cause that the entire $980,000 in the USW
Chase accounts is forfeitable.  Petrellese testified, and it
is undisputed, that the Concentration Account consisted of
approximately 20% loan proceeds.  (Tr. at 27.)  Accordingly,
the $1,751,454.37 transferred from the Concentration Account
to the USW Payroll Account proportionately consisted of 20%
loan proceeds.  Thus, the court finds that, based on the
current record, of the $1,751,454.37 transferred from the
Concentration Account to the USW Payroll Account, the
government has established probable cause that approximately
$350,290.87, or 20% of the $1,751,454.37, is forfeitable.
Consequently, of the funds seized by the government from the

USW Chase accounts, the government has established probable cause that $350,290.87 is subject to forfeiture and may be retained under seizure.  Accordingly, the court adopts Magistrate Judge Azrack's R&R to the extent that it finds that the government established that there is probable cause that $350,290.87 of the funds in the USW Chase accounts are forfeitable; however, the court finds that the government has not satisfied its burden regarding the remainder of the balance of the USW Chase accounts, and orders that those funds shall be released.

### CONCLUSION

For the reasons set forth above, Magistrate Judge Azrack's R&R is respectfully adopted in part and modified in part.  The court finds that the government has established probable cause to continue seizure of $350,290.87 of the funds in the USW Chase accounts, but shall release the remaining funds to Unalite Southwest promptly.

**SO ORDERED.**

Dated: July 27, 2011
       Brooklyn, New York

_____/s/____ _____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York