UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------- x
UNITED STATES OF AMERICA )
) Case No. 1:10-cr-000627(S-2) (KAM)
v. )
)
COURTNEY DUPREE, ) **MEMORANDUM IN SUPPORT OF**
) **MOTION *IN LIMINE***
) **TO LIMIT THE**
Defendant. ) **GOVERNMENT'S EVIDENCE**
--------------------------------------------------- x

Defendant, Courtney Dupree, by and through undersigned counsel, hereby requests a pretrial evidentiary ruling on the government's ability to introduce into evidence certain financial documents at trial in the above-captioned case. As discussed below, Mr. Dupree has not been provided with adequate information concerning the voluminous financial documents in order to effectively defend himself at trial.

### A. Background

### Indictment & Request for Bill of Particulars

On July 23, 2010, Mr. Dupree was arrested and later indicted on various counts of conspiracy to commit bank fraud, bank fraud and making false statements. Among other acts, the government alleges that Mr. Dupree falsified certain financial reports in order to obtain loan funds from Amalgamated Bank. The Indictment states that Mr. Dupree accomplished this fraud by "booking fictitious sales, … 're-aging' the accounts receivable … prematurely recognizing sales and the corresponding revenue, … [and] failing to reduce the accounts receivable with cash received from customers." Indictment at ¶ 14.

On November 29, 2010, Mr. Dupree filed a Motion for a Bill of Particulars, pursuant to Federal Rules of Criminal Procedure 7(f) and 16, in an attempt to identify the specific financial documents that the government alleges to have been inflated so that he could better understand

the charges and prepare his defenses. *See* ECF No. 70. On December 30, 2010, this Court ruled on defendants' Motion for a Bill of Particulars, granting it in part and denying it in part. *See* ECF No. 84, at 13-14. The Court's ruling relied in part on the government's promise " to identify on a rolling basis additional documents, by bates range, that it intend[ed] to introduce at trial" the defendants' request for a bill of particulars was unnecessary. *Id*. at 13. The ruling appeared based on the understanding that if the government were to provide specific information on a continuing basis in the future, this would provide ample notice to defendants so that they could prepare for trial and not be surprised by the government's case. *Id.*

On May 20, 2011, the government filed a revised exhibit list which was 8 pages long and included various emails, documents and financial reports. *See* ECF No. 231. In particular, the government's proposed exhibit list shows, as one exhibit, a compilation of all Borrowing Base Certificates ("BBCs") given to Amalgamated bank (DOJ-GDC-000005219 - 237). *Id.* This bates range of documents, however, only represents the first page of the financial report, and not the supporting financial documents also given to Amalgamated Bank. The government's list also included, for the first time, certain invoices never previously produced. These invoices total less than 30 out of tens of thousands. After reviewing the government's proposed exhibit list and the *Jencks* material provided by the government, Mr. Dupree renewed his request to the government that it more specifically identify which financial documents were purported to be false and what line items in a particular report or invoice were allegedly falsified. *See* ECF No. 345, attached as Exhibit A.

In response to Mr. Dupree's renewed request, the government stated that Mr. Dupree "should be prepared to defend any accounts receivable figure and any figure derived from the accounts receivable figures in the financial statements, BBCs, and aging reports provided to

2

Amalgamated Bank and C3 Capital." ECF No. 350, at p.1, attached as Exhibit B. The government's response also stated its belief that the discovery it has provided thus far and the materials provided pursuant to 18 U.S.C. § 3500 more than satisfy the government's burden to inform the defendant of the charges against him. *Id.*

The government's response of September 26, 2011, also implies that Mr. Dupree should be able to figure out which financial data was falsified since he, allegedly, perpetrated the fraud. That is never a proper response because defendants are presumed innocent. It is also an improper response for specifics regarding complex allegations of fraud involving millions of produced documents and thousands of pages of exhibits. Indeed, no defendant should be assumed to have knowledge of details of a fraud spanning several years, involving millions of produced documents, and involving complex calculations.

### Financial Documents and Calculations of GDC and Its Subsidiaries

In multiple filings the government has stated that the defendants should be prepared to defend all financial statements submitted to Amalgamated Bank from January 2007 to July 2010 and to C3 Capital. *See* ECF Nos. 74, 350. This would comprise not only approximately 40 BBCs, but all the financial reports and the myriad of other financial documents that accompanied the BBCs which are comprised of innumerable calculations

Each of the BBCs, constitutes several hundred pages because it incorporates the accounts receivable ("A/R") and accounts payable ("AP") reports for five GDC subsidiaries. For example, the BBC mentioned in paragraph 23 of the Indictment refers to the November 2009 BBC which was submitted by Frank Patello on January 6, 2010. Exhibit C, November 2009 BBC.[1] This BBC is approximately 400 pages long. Moreover, the invoice entries for just one customer,

---

[1] Mr. Dupree has not filed Exhibit B on ECF due to its length but has provided a paper copy to Chambers with its courtesy copies of this motion as well as a copy to all counsel.

3

NYC School Construction Authority, comprise over four (4) pages. Each invoice that makes up an A/R or A/P entry on the report may be anywhere from one to 83 pages. For example, one invoice to Bedford Stuyvesant Family Health for HBE is 83 pages long. *See* Exhibit D, DOJ-SW-GDC000020065-147.[2]

In addition to BBCs, GDC also submitted year end financial reports to Amalgamated Bank which contained calculations that were generated from the A/R reports. The Borrowers, HBE, JDC and Unalite NY, were also required by an affirmative loan covenant to maintain a certain level of earnings before interest, taxes, depreciation, and amortization ("EBITDA"). This involves a complex calculation that cannot be properly determined without knowing what numbers used in the calculation are purportedly false and the amount by which they are allegedly incorrect or false. EBITDA is defined in the loan agreement as:

> [F]or any period, Net Income for such period, plus, without duplication and to the extent deducted in determining such Net Income, the sum of (i) Interest Expense for such period, (ii) the aggregate amount of taxes accrued for such period and dividends permitted to be paid pursuant to Section 6.06 and in fact so paid (iii) the aggregate amount attributable to depreciation and amortization for such period, (iv) all other non-cash charges and non-cash losses and (v) the aggregate amount of extraordinary or non-recurring non-cash losses during such period, minus, without duplication and to the extent added in determining such Net Income for such period, the aggregate amount of extraordinary or non-recurring gains during such period. Revolving Credit Loan, Sec. 8.01, p.26.

The A/R report in any given period was also used to perform the complex calculation which comprises the EBITDA. The Borrowers were required to report the EBITDA to Amalgamated Bank on a regular basis. Yet, the government has refused to identify which components or calculations used to determine EBITDA are allegedly false.

---

[2] Due to its length, only a cover sheet place-holder has been filed on ECF for this exhibit. A full, paper version will be provided to Chambers and all counsel.

.   **Jencks Material**

The government's response of September 26, 2011, also states that the defendants should be aware of the nature and details of the charges against them based on the extensive statements provided pursuant to 18 USC § 3500. *See* ECF No. 350, p. 2. The government did produce many *Jencks* statements and, in particular, statements from alleged co-conspirators Emilio Serrano and Frank Patello. Most of the *Jencks* statements, however, were produced without the documents referenced in the statements, rendering them useless for purposes of identification. The best examples of this, but not the only examples, are the statements of Frank Patello. Patello gave numerous statements most of which reference documents that were discussed with government agents during the interview. For example, Patello refers to a "blue print of the fraud", yet this document was not attached to the statement or referred to by bates number. Moreover, Mr. Patello told the interviewing agent that he gave Mr. Dupree monthly "recaps of the fraud" but these "recaps" were neither identified by Bates number nor produced to the defendants with the *Jencks* statements. Indeed, in most instances, the statements reflect that the documents discussed in the interviews were initially attached to the statement but removed before being produced to the defendants. Without the documents themselves, the statements by Serrano and Patello in the *Jencks* material which refer to the alleged fraud are too general for the defendants to make a determination as to which line item in an invoice or which invoice was allegedly falsified.

## B. ANALYSIS

Despite Mr. Dupree's multiple requests to the government for information as to a list of receivables and specific information on the amounts, dates and bates numbers of the documents showing which particular line item was falsified and this Court's Order of December 30, 2010,

5

Mr. Dupree is still unable to determine the alleged financial falsities in the numerous financial documents listed on the government's exhibit list. The government has stated that the defendants need to be prepared to defend all accounts receivable *and* any figure derived from the accounts receivable figures, including every BBC that was ever sent to Amalgamated Bank or C3 Capital. ECF No. 350. As stated, *supra*, the sheer volume of the BBCs, not including the other financial documents, makes this task impossible for defendants. One BBC for any given month is hundreds of pages long, includes reports from multiple companies, and is supported by hundreds of invoices which are themselves lengthy. To require Mr. Dupree to guess which line item in a 400 page report is false is simply unfair and more "trial by ambush" than a search for the truth.

For example, in the case of the November 2009 BBC, the accounts receivable is reported to be approximately $25.3 million. *See* Ex. C. Under the government's theory, the defendants should be able to figure out which portion of the $25.3 million reported in accounts receivable is false when it could be one invoice for $200 or three invoices for $300,000, or multiple line items on the same invoice. Mr. Dupree simply does not possess the knowledge, resources, or time to make such determinations without additional information and will, therefore, be prejudiced and surprised at trial.

The government also claims that the defendants should be able to figure out which amounts were false by referring to the *Jencks* material provided. However, as stated *supra,* the Patello statements are without attached documents or bates numbers so it is impossible to determine to which financial document Patello is referring. Furthermore, Mr. Dupree is incarcerated and has no access to his companies accounting database in order to even begin researching allegedly false invoices. Accordingly, it is impossible for Mr. Dupree to make any

determination as to which particular line item or invoice in the multitude of financial reports might be false and this inability will result in unfair surprise at trial.

The government's failure to cite specific financial information denies Mr. Dupree a realistic and necessary opportunity to defend himself. For instance, if the government introduces an invoice dated March 12, 2009, which was used in the compilation of the April 2009 BBC, and then identifies, for the first time, one line item on that invoice which it alleges was false, Mr. Dupree would have to request a recess or adjournment of trial in order to review the information and prepare his cross-examination. Depending on the particular line item or invoice alleged to be false, Mr. Dupree may have to call additional witnesses to explain information on the invoice or obtain a copy of the particular documents associated with the invoice in order to prepare his defense.

Moreover, identification of the specific line items and invoices which the government believes were falsified is not a burden on the government, because, in many instances, the material was already attached to the *Jencks* statements as discussed *supra*. If Patello gave the government detailed information as to which amounts, invoices and line items in a particular BBC were falsified and did so by providing a copy of the information to the government, it would be no hardship for the government to produce the same material to the Mr. Dupree. Patello and Serrano were intimately involved in preparing the financial documents of all the companies to a degree of detail that Mr. Dupree was not privy to because of their positions at the company. Patello was the Chief Financial Officer for the majority of the alleged conspiracy and Serrano acted as the Assistant Controller during the same time period. Mr. Dupree, at all times relevant to the conspiracy, was the Chief Executive Officer. Patello and Serrano have specific knowledge, according to the government, about the alleged fraud. Mr. Dupree cannot get

specifics on the complex information from Patello or Serrano, because their lawyers have not responded to defendant Dupree's requests for interviews. If the government has the details as to which line item in a particular invoice or accounts receivable report was falsified, it should be required to give this information to the defendants or be excluded from using it at trial.

The government also claims it should not have to provide such detailed information about falsely reported financial information because the defendants are only trying to get a preview of the government's case. This is simply a red herring to distract the Court. Mr. Dupree is now just over eight weeks from trial so its unimaginable what advantage the government believes he could gain by obtaining specific information as to false financials. Further, if a line item is false, nothing the Mr. Dupree can say or do at this point will change its falsity. Rather the government interjects this inflammatory argument in the hopes that it will not be ordered to specify information to Mr. Dupree and instead, ambush him at trial so he cannot defend himself. It is also a curious argument from an organization that purports to stand for "justice." Mr. Dupree simply asks to be told what it is he has done that exposes him to criminal liability and possible incarceration. In essence, the government has responded, "guess."

This Court's rulings in the above-captioned case make it clear to the defendants that the Court expects a stream-lined trial where neither party is surprised by the other's evidence. Yet the government's failure to identify specific financial information will accomplish just the opposite. This Court's Third Amended Pretrial Scheduling Order states that the government has until October 24, 2011, to provide any additional materials under 18 U.S.C. § 3500. ECF No. 331, ¶ 3(b)(i).

For the reasons stated above, Mr. Dupree moves that if the government does not provide specific information as to the particular line items and invoices, by bates number, that it believes

8

were falsified by October 24, 2011, the government should be prohibited from introducing general financial reports at trial and claiming their falsity.

### C. Conclusion

For the aforementioned reasons, Mr. Dupree respectfully requests that this Court enter an order prohibiting the government from introducing any financial report or invoice at trial unless it has specified the particular line item and invoice by bates number which it intends to prove was falsified, no later than the Court's date of October 24, 2011.

Dated: October 3, 2011

Respectfully submitted by,

S/ROSCOE C. HOWARD JR.
Roscoe C. Howard, Jr., Esq.
Daniel S. Seikaly, Esq.
Leasa W. Anderson, Esq.
Meena T. Sinfelt, Esq.
*Attorneys for Courtney Dupree*

Roscoe C. Howard, Jr., Esq.
ANDREWS KURTH LLP
1350 I Street, NW, Suite 1100
Washington, D.C. 20005
Phone: (202) 662-2764
Facsimile: (202) 974-9544
Email: roscoehoward@andrewskurth.com

Daniel S. Seikaly, Esq.
ANDREWS KURTH LLP
1350 I Street, NW, Suite 1100
Washington, DC 20005
Phone: (202) 662-2754
Facsimile: (202) 974-9524
Email: danielseikaly@andrewskurth.com

Leasa W. Anderson, Esq.
ANDREWS KURTH LLP
1350 I Street, NW, Suite 1100
Washington, D.C. 20005

Phone: (202) 66 2-3055
Facsimile: (202) 974-9549
Email: leasaanderson@andrewskurth.com

Meena T. Sinfelt, Esq.
ANDREWS KURTH LLP
1350 I Street, NW, Suite 1100
Washington, D.C. 20005
Phone: (202) 662-2734
Facsimile: (202) 974-9535
Email: meenasinfelt@andrewskurth.com