UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

     -against-

COURTNEY DUPREE, THOMAS FOLEY, AND
RODNEY WATTS,

             Defendants.
----------------------------------X

**MEMORANDUM AND ORDER**

10-CR-627 (KAM)

**MATSUMOTO, United States District Judge:**

**INTRODUCTION**

     The government charges defendant Courtney Dupree

("Dupree") with various counts of Bank Fraud, Making a False

Statement, and Conspiracy to Commit Bank, Mail, and Wire Fraud.

Presently before the court are certain of defendant Dupree's

pretrial motions and motions *in limine* to preclude evidence at

trial pursuant to the Federal Rules of Evidence.  For the

following reasons, the court grants in part and denies in part

Dupree's pretrial motions and denies Dupree's motions *in limine*.

**BACKGROUND**[1]

    **I.   The Charges Against Defendants**

     Defendant Dupree is charged in all five counts of a

five-count second superseding indictment, and Thomas Foley

("Foley") is charged in three counts of the same indictment.

---

[1] Familiarity with the facts and prior opinions of this court in
this matter is presumed and only the background relevant to these motions is
set forth below.

(*See* ECF No. 295, Superseding Indictment ("S-2 Indictment").)  A third co-defendant, Rodney Watts ("Watts") (together with Dupree and Foley, "defendants"), is charged in four counts of the S-2 Indictment, and his trial has been stayed pending a Second Circuit appeal.  (*See* Minute Entry dated October 17, 2011.)

Count One charges all defendants with Conspiracy to Commit Bank, Mail, and Wire Fraud in violation of 18 U.S.C. §§ 1349, 3551 *et seq.* (S-2 Indictment ¶¶ 18-19.)  Count Two charges all defendants with Bank Fraud in violation of 18 U.S.C. §§ 2, 1344, 3551 *et seq.* (*Id.* ¶¶ 20-21.)  Count Three charges defendants Dupree and Watts with Making a False Statement on or about January 6, 2010 by "willfully overvalu[ing] property and security, for the purpose of influencing the action of Amalgamated Bank upon one or more loans" in violation of 18 U.S.C. §§ 2, 1014, 3551 *et seq.* (*Id.* ¶¶ 22-23.)  Count Four charges all defendants with Making a False Statement on or about May 24, 2010 in violation of 18 U.S.C. §§ 2, 1014, 3551 *et seq.* (*Id.* ¶¶ 24-25.)  Finally, Count Five charges only defendant Dupree with an additional count of Bank Fraud in violation of 18 U.S.C. §§ 2, 1344, 3551 *et seq.* (*Id.* ¶¶ 26-27.)

The S-2 Indictment charges that Dupree was the president and chief executive officer of GDC Acquisitions, LLC ("GDC") and that Foley was GDC's outside counsel and chief operating officer.  (*Id.* ¶¶ 2-3.)  Watts is charged as having

2

been GDC's chief financial officer and chief investment officer. (*Id.* ¶ 4.) The first four counts arise out of an alleged scheme to defraud Amalgamated Bank ("Amalgamated"), a financial institution, and C3 Capital, LLC, a private equity investment firm, by obtaining, and attempting to obtain, loans for GDC and its subsidiaries on the basis of false financial statements and other material misrepresentations between January 2007 and July 2010. (*Id.* ¶¶ 5, 6, 8.)

Count Five was originally added in a superseding indictment returned on March 25, 2011 (ECF No. 155, Superseding Indictment ("S-1 Indictment")), which was again superseded on August 3, 2011. Count Five of the S-2 Indictment charges only Dupree with an additional count of bank fraud for "knowingly and intentionally execut[ing] and attempt[ing] to execute a scheme and artifice to defraud Amalgamated Bank, and to obtain moneys, funds, credits and other property owned by, and under the custody and control of, Amalgamated Bank, by means of materially false and fraudulent pretenses, representations and promises" between August 4, 2010 and March 1, 2011. (S-2 Indictment ¶ 27.)

## II. The Instant Motions

Dupree's pretrial motions consist of the following: (1) a motion to physically place Dupree and his counsel at a separate table than Foley and his counsel during trial; and (2) a motion to modify the order of defendants' presentations at trial,

allowing Dupree to make opening and closing statements, cross-examine witnesses, and present his defense after Foley. In addition to these two pretrial motions, Dupree makes three motions *in limine* to preclude the government (1) from introducing into evidence financial documents without specifying the fraudulent content and line item amounts deemed false in each document, (2) from calling Irma Nusfaumer as a witness or using any information gained from her statements or documents at trial, and (3) from calling three fact witnesses added to the government's witness list on November 18, 2011, approximately two weeks prior to trial and a month after the court's October 24, 2011 deadline for final witness lists. Each of these motions will be discussed in turn.

## DISCUSSION

### I.  Motion to Physically Separate Defendants

Dupree requests that he and Foley and their respective counsel sit at separate tables during trial. (ECF No. 358-1, Dupree's Memorandum in Support of Motion *in Limine* for Physical Separation of Defendants at 1.)[2]  Dupree argues that because his and Foley's interests are "diametrically opposed," they are entitled to separate tables and "any association with Foley, even sitting at the same table with him, will impair [Dupree's]

---

[2]  Although Dupree calls this motion a "motion *in limine*," it is not a motion *in limine* because it does not seek a ruling on the admissibility of evidence.

ability to obtain a fair trial." (*Id*. at 2.)  Additionally,
Dupree asserts that "[t]he jury will also be confused as to why
two people, formerly associates, are now at odds with each other
but yet sitting at the same defense table." (*Id*. at 3.)

Foley did not file a response to this motion.  The
government, however, opposes Dupree's motion.  (ECF No. 381,
Response in Opposition to Motion *in Limine* to Physically Separate
Defendants ("Opp'n to Physical Separation") at 1.)  First, the
government asserts that it is a "universal practice in this
district . . . to seat co-defendants at the same table unless the
number of co-defendants is so large as to actually require
additional tables." (*Id*.)  Second, the government maintains that
the jury can be instructed to evaluate the evidence separately
against each defendant, which would negate any potential jury
confusion. (*Id*. at 1-2.)  In support of its arguments, the
government cites to *Carter v. Gibson*, 27 F. App'x 934 (10th Cir.
2001), a case in which a habeas petitioner claimed that a joint
trial prejudiced him for several reasons, including that "co-
defendants had to share the counsel table, thereby destroying
confidentiality of legal consultation." *Id.* at 948.  In
affirming the district court's denial of habeas relief on this
ground, the Tenth Circuit noted that the "trial court denied a
request for separate tables due to space concerns." *Id*. at 948
n.6.

In his reply to the government's opposition, Dupree argues that Foley has "stated his intent to help the government prove his theory that Mr. Dupree masterminded a fraud against Amalgamated" and that "it will be impossible for counsel and Mr. Dupree to review documents, notes and have conversations at counsel table during the trial without a real concern that Foley or his counsel will be eavesdropping and use the information they overhear to their advantage." (ECF No. 399, Dupree's Reply in Support of Motion *in Limine* for Physical Separation of Defendants ("Dupree's Reply in Support of Physical Separation") at 2.)

Dupree, however, does not point to any case law in support of his argument that physical separation from Foley at separate tables is necessary to prevent jury confusion and to ensure that Foley will not overhear conversations between Dupree and his counsel.[3] Indeed, the courtroom tables are sufficiently large for counsel and their clients to confer without being overheard. Moreover, the courtroom itself cannot accommodate an additional table for the defendants, particularly given that both defendants are likely to require the use of computers, electronic exhibit monitors, and other electronic systems during trial and

---

[3] The only support Dupree provides is an April 14, 1986 article from the *New York Times* discussing a racketeering trial in which twelve co-defendants were given separate tables in the courtroom. (*See* ECF. No. 358-2, Ex. A.) In its opposition, the government noted that those defendants likely were given separate tables because they could not fit at one table. (Opp'n to Physical Separation at 2 n.1.) Certainly that is not a concern here where two defendants and their respective counsel can be accommodated at a single table in the courtroom with sufficient privacy for consultation with counsel.

an additional table would not be connected to such systems.  In
addition, the court has been advised that additional funds to
install separate electrical and data systems in the courtroom are
not available in this two-defendant case.  Accordingly, the court
will follow the customary practice of the Eastern District of New
York and require the defendants to sit at the same table with
their respective counsel.

        To address Dupree's concern regarding jury confusion,
the court will issue an instruction directing the jury to
evaluate the evidence separately against each defendant and that
no inferences are to be drawn by defendants' physical placement
at the same table.  Beyond such an instruction, the court finds
that defendants' sharing of a table at trial will not violate
Dupree's right to a fair trial.

> **II.  Motion to Modify the Order of Dupree's and Foley's
> Presentations at Trial**

        Dupree moves to modify the order of defendants'
presentations at trial.  Generally, any defendant who may wish to
present witnesses or evidence at trial would proceed in the order
set forth in the S-2 Indictment, such that following the
government's case-in-chief, Dupree would present his evidence
followed by Foley.  Dupree requests that his presentation to the
jury *follow*, rather than *directly precede*, Foley's presentation.
(ECF No. 389, Dupree's Letter Motion to Amend/Correct/Modify

Order of Defendants at Trial at 1.)  Dupree argues that, because Foley has "repeatedly stated that he intends to aid the prosecution in proving its case" against Dupree, allowing Foley to present his case after Dupree would cause Dupree to "face[] what essentially amounts to a double prosecution" as Dupree would be "sandwiched" between the government's accusations and similar accusations by Foley.  (*Id.*)  Furthermore, Dupree argues that "[t]he current order of the defendants clearly prevents [him] from being able to effectively defend himself at trial because he will be unable to respond to or follow up on the statements and questions of [Foley]."  (*Id.* at 2.)

In opposition to Dupree's motion, Foley contends that the court denied his motion for severance because "the Foley cross-claim does not amount to prejudice," and that it follows from that ruling that the current order of defendants' presentations is also not prejudicial.  (ECF No. 418, Foley's Letter Opposing Motion to Change Order for Co-Defendants at 1.) In addition, Foley claims that he will be prejudiced by changing the order because "the lion's share of the prosecution's evidence[] will focus on the lead defendant Dupree."  (*Id.*) Finally, Foley asserts that Dupree's argument that he will be unable to anticipate and respond to Foley's presentation is unconvincing because Foley has continued to put forth the same argument throughout pretrial proceedings.  (*Id.*)

Dupree's arguments regarding a departure from the ordinary order of defendants' presentations, if any, are persuasive.  Indeed, it is evident from pretrial proceedings and Foley's own statements that he intends, as co-defendants frequently do, to claim at trial that he was unaware of the charged frauds and the conspiracy to defraud:

> Mr. Foley does *not* contest that there existed a conspiracy to defraud the Amalgamated Bank; he only contests that he was a knowing participant in the scheme.  The Foley defense intends to prove that he was not a participant, and that co-defendants Dupree and Watts, together with their accomplices – including Frank Patello and Emilio Serrano – concealed the scheme from Mr. Foley for fear that disclosure would end it and subject them to exposure.

(ECF No. 135, Joseph W. Ryan, Jr. Affirmation in Support of Motion for Severance ¶¶ 2-3 (emphasis in original).)  Although Dupree may argue at trial that Foley as counsel to GDC committed malpractice in failing to advise him that GDC's purchase of Image Lighting, Inc. was contrary to the terms of the loan agreement with Amalgamated (*see* S-2 Indictment ¶ 15), Dupree has never acknowledged that there was a conspiracy to defraud and has never implicated Foley in the conspiracy, which is precisely what Foley intends to do with respect to Dupree.  (*See* Dupree's Reply in Support of Physical Separation at 2 ("Mr. Dupree does not accuse Foley of any wrongdoing.").)

While neither Dupree nor Foley has cited case law to support their respective positions, in the interest of fairness and justice, the court will exercise its discretion to permit Dupree to make opening and closing statements, cross-examine witnesses, and present his defense *after* Foley. *See United States v. Quattrone*, 441 F.3d 153, 183 (2d Cir. 2006) ("Trial judges . . . are given discretion to manage trials so that evidence is effectively presented . . . ." (citing Fed. R. Evid. 611(a))); *United States v. Donovan*, 55 Fed. App'x 16, 19 (2d Cir. 2003) ("District judges have wide discretion to manage the conduct of trials before them." (citing *United States v. Carson,* 52 F.3d 1173, 1188 (2d Cir. 1995))). The court will instruct the jury that the burden of proof remains on the government, that defendants have no obligation to present evidence, and that no inferences are to be drawn with respect to the order of defendants' presentations, if any.

### III. Motion to Limit the Government's Evidence

Dupree claims that the government has not provided him with adequate information concerning financial documents that it will introduce at trial, which is impairing his ability to effectively defend himself, thus, in effect, seeking another bill of particulars. (ECF No. 360-1, Memorandum in Support of Motion *in Limine* to Limit the Government's Evidence ("Mot. to Limit Evidence") at 1.) In particular, Dupree requests "specific

information as to the particular line items and invoices, by bates number, that [the government] believes were falsified . . . ." (*Id.* at 8-9.) For example, if the government will claim at trial that the accounts receivable reported in a particular Borrowing Base Certificate ("BBC") is false, Dupree requests an order requiring the government to identify which invoices used to calculate the accounts receivable for that BBC, and which line items on those invoices, are false. (*See id.* at 6-7.) If such information is not provided with respect to a particular financial report, such as a BBC, Dupree moves to preclude the government from introducing that financial report at trial and claiming its falsity. (*Id.* at 8-9.)[4]

In opposition, the government contends that Dupree's "renewed demand for granular detail of the government's proof is unfounded in law and impractical." (ECF No. 380, Response in Opposition to Second Motion *in Limine* to Limit Government's Evidence ("Opp'n to Limit Evidence") at 1.) The government summarized all of the information it provided to defendants prior

---

[4] Dupree also repeatedly complains that the government failed to produce documents referenced in or attached to certain *Jencks* statements, particularly the statements of Frank Patello. (*See, e.g.*, Mot. to Limit Evidence at 6-7.) On October 31, 2011, the court ordered the government to produce documents that were discussed by Frank Patello and attached to his *Jencks* statements. (*See* Minute Entry dated October 31, 2011.) On November 1, 2011, the government certified its compliance with the court's October 31, 2011 Order by producing the documents to defendants and confirming that all such statements had been previously produced. (*See* ECF No. 423, Government's Letter in Response to Court's Order of October 31, 2011.)

to May 21, 2011[5] — more than six months ago — and asserts that the defendants have received an "extraordinary amount of information and direction regarding the nature of the evidence." (*Id.* at 3.) Finally, the government argues that it has "gone far beyond its legal obligations in identifying particular invoices that are false," and that there is no basis in law to "restrict the government's evidence to only a select group of invoices or line items that have been specifically identified." (*Id.* at 4-5.)

Dupree filed a reply to the government's opposition, which largely re-asserted the arguments in his moving papers. (*See* ECF No. 400, Reply in Support of Defendant's Motion to Limit Financial Evidence ("Reply to Mot. to Limit Evidence").) In his reply, Dupree acknowledged that "this Court has only been given a small glimpse of the evidence in the instant case" and requests that the court reserve decision on this motion until the government introduces a piece of financial data that Dupree has not seen and to which he objects so that the court "could make an

---

[5] This information includes, *inter alia*, "statements pursuant to 18 U.S.C. § 3500, including numerous detailed interviews with the defendants' co-conspirators about the fraud they perpetrated with the defendants; transcripts of the recordings; a witness list; an exhibit list that specifically identified documents by Bates number; and certifications by customers stating that they never actually received particular invoices with particular dates and dollar amounts (thus making those invoices false when they appeared on aging reports or were incorporated into Borrowing Base Certificates or financial statements)." (Opp'n to Limit Evidence at 1.) The court also refers to its Memorandum and Order dated December 30, 2010, which outlines the extensive history of discovery in this case. (ECF No. 84, Memorandum & Order (the "December 30, 2010 Order") at 5-7, 10-14.)

informed decision as to whether the government should have given Mr. Dupree the specific financial information he requested prior to trial . . . ."  (*Id*. at 7.)

The court has considered all of the parties' submissions and denies Dupree's motion at this time.  Although Dupree contends that his motion is not an attempt to renew his previous request for a bill of particulars (*id.* at 1), the court agrees with the government that it has already considered and denied Dupree's request for additional information in its December 30, 2010 Order.

"The decision of whether or not to grant a bill of particulars rests within the sound discretion of the district court."  *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citation omitted).  A defendant may request a bill of particulars "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense."  *Id.* (citations omitted).  "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required."  *Id.* (citations omitted); *see also United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (stating that a "bill of particulars is not necessary where the government has made

sufficient disclosures concerning its evidence and witnesses by other means" including discovery, which "adequately differentiated the charges" and prevented surprise at trial (citations omitted)).

In assessing whether a bill of particulars is warranted, the proper inquiry is not whether the requested information would be helpful to the defense, but rather whether the information is *necessary* to the defense. *See United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990); *see also United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987) ("As a general rule, the defendant does not 'need' detailed evidence about the conspiracy in order to prepare for trial properly. It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts." (citations omitted)). In conducting this inquiry, the trial court "must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery . . . ." *United States v. Solomonyan*, 452 F. Supp. 2d 334, 349 (S.D.N.Y. 2006) (citation omitted). "So long as the defendant was adequately informed of the charges against him and was not unfairly surprised at trial as a consequence of the denial of the bill of

particulars, the trial court has not abused its discretion."
*Torres*, 901 F.2d at 234 (citation and quotation marks omitted).

In his original demand for a bill of particulars filed
on November 29, 2010, Dupree requested, *inter alia*, that the
government specify, by Bates numbers, (1) the consolidated
financial statements and BBCs alleged to be false, (2) the
entries alleged to be false, and (3) the alleged "fictitious,"
"prematurely recognized," and "re-aged" sales and "improperly
booked" cash by date, amount, customer, invoice number, and line
item.  (*See* ECF No. 70, Notice of Motion for Bill of Particulars
and Discovery ¶ 1.)  In that same motion, like here, Dupree
complained of "mountains of documents" and argued that "it would
impermissibly shift the burden to defendants to needlessly waste
scant resources on the bootless effort of trying to ascertain
what transactions make up the portion of the accounts receivable
that are allegedly overstated."  (ECF No. 70-8, Memorandum of Law
in Support of Defendants' Motion for Bill of Particulars and
Discovery at 9.)

Dupree again relies on the same Second Circuit case
that he cited in his previous motion, *United States v.*
*Bortnovsky*, 820 F.2d 572 (2d Cir. 1987), which remains unavailing
of his position.  (*See* Reply to Mot. to Limit Evidence at 4-6.)
In that case, the defendants were charged with engaging in a
scheme to defraud through the submission of, *inter alia*, false

insurance claims for burglary losses.  *Bortnovsky*, 820 F.2d at

573-74.  Although the government allowed defendants to inspect

and copy approximately 4,000 documents, the indictment did not

specify the dates of the staged burglaries or enumerate which of

numerous documents were falsified.  *Id.* at 574.  The district

court denied defendants' request for a bill of particulars

identifying the fraudulent documents and burglaries, and the

Second Circuit reversed defendants' convictions finding that the

defendants were "hindered in preparing their defense by the

district court's failure to compel the Government to reveal

crucial information:  the dates of the fake burglaries and the

identity of the *three fraudulent documents*."  *Id.* (emphasis

added).

In the *Bortnovsky* case, unlike here, there were only a

few fraudulent documents, "[t]he relevance of key events was

shrouded in mystery at the commencement of and throughout the

trial," and the defendants "were left unguided as to which

documents would be proven falsified or which of some fifteen

burglaries would be demonstrated to be staged."  *Id.* at 574-75.

At trial, the defendants in *Bortnovsky* were "forced to explain

the events surrounding eight actual burglaries and to confront

numerous documents unrelated to the charges pending," which the

Second Circuit found impermissibly shifted the burden of proof to

defendants to establish that certain burglaries actually

occurred.  *Id.*  Finally, one of the defense counsel in *Bortnovsky*

only had four days to prepare a defense, which made him

"particularly susceptible to being waylaid" by the government's

"furtive[]" tactics.  *Id.* at 575.

In this case, the Indictment states that the defendants

overstated the accounts receivable on consolidated financial

statements and BBCs submitted to Amalgamated between January 2007

and July 2010.  (*See* S-2 Indictment ¶¶ 8, 14.)[6]  In addition, the

Indictment specifies four means by which the accounts receivable

were falsified.  (*See id.* at ¶ 14.)  Moreover, the defendants

here are not searching for only a few allegedly false documents

among the thousands produced like in *Bortnovsky*; rather, the

government alleges that defendants committed a "large, multi-year

fraud that permeated and sustained their entire business."

(Opp'n to Limit Evidence at 5.)  Indeed, the government has

previously stated that it believes all of the accounts receivable

figures on all financial statements, BBCs, and aging reports

submitted to Amalgamated and C3 Capital during the charged period

of the conspiracy are false.  (*See* December 30, 2010 Order at

11.)  The government has been producing documents detailing the

allegedly overstated accounts receivable since the day defendants

were indicted more than a year ago (*see* Opp'n to Limit Evidence

_____

[6]  The Indictment also charges that defendants submitted false
financial statements and accounts receivable aging reports to C3 Capital
between October 2008 and October 2009.  (S-2 Indictment ¶ 16).

at 3), and Dupree has had ample time to review what he described as "mountains of documents" provided by the government in order to conduct his own investigation, thereby precluding any claim of surprise.[7]

In contrast to *Bortnovsky*, this case is similar to *United States v. Viertel*, No. S2 01 Cr. 571 (JGK), 2002 U.S. Dist. LEXIS 12833 (S.D.N.Y. July 9, 2002). In that case, which also involved a conspiracy to defraud, the court denied a defendant's request for a bill of particulars identifying dates, amounts, and invoices because: (1) the indictment "is adequately detailed and straightforward, and outlines with specificity the kinds of fraudulent invoices that [defendants] allegedly conspired to create and the means and methods of the conspiracy"; (2) the "government has also already produced discovery, including invoices . . . and several thousand pages of bank records from [defendants'] bank accounts, and [defendant] has been given ample time to review that discovery"; (3) "the Government contends that none of the charges submitted during the period of the scheme charged in the Indictment . . . were legitimate"; and (4) "to the extent that [defendant] seeks lists

---

[7] On November 21, 2010, more than a year ago, the government filed a letter to help focus defendants' review of the discovery produced by the government. (*See* ECF. No. 68, Government's Letter Describing Connections between the Indictment and the Previously Produced Discovery.) This letter identified, by Bates numbers, particular documents with misstatements mentioned in the Indictment and spreadsheets that made detailed comparisons for some of GDC's subsidiaries between internal numbers and numbers reported externally. (*Id.; see also* Opp'n to Limit Evidence at 3-4.)

of the specific invoices . . . , the motion is denied because the conspiracy charge and the other materials produced in this case adequately apprise [defendant] of the activities charged against him." *Id.* at *33-39; *see also United States v. Qayyum*, No. 97 Cr. 1000 (AGS), 1998 U.S. Dist. LEXIS 4149, at *7-8 (S.D.N.Y. Apr. 1, 1998) (denying defendant's request for a bill of particulars "identifying which of the approximately 900 pharmaceutical prescriptions turned over in discovery are alleged to be fraudulent and itemizing 'the specific date, type and nature' of allegedly false statements" because (1) the indictment sets forth specific information concerning defendant's participation in a conspiracy to defraud Medicaid, the means by which the fraud was carried out, and several dates on which the defendant submitted false claims and received payments and (2) the government considers all 900 prescriptions to be false).

Based on the specificity regarding the fraud charges contained in the S-2 Indictment and the government's productions to date — which encompassed an eight-page exhibit list with Bates numbers and the identification of particular invoice numbers, dates, and dollar amounts (*see* Opp'n to Limit Evidence at 3-4) — the court finds, once again, that the government's disclosures have been sufficient to inform defendants of the charges against them, to enable them to prepare for trial, and to prevent

surprise.[8]  (*See* December 30, 2010 Order at 10-14); *see also*

*United States v. Kalish*, 403 Fed. App'x 541, 544 n.2 (2d Cir.

2010) ("[T]he Government provided more than adequate details

regarding the victims of the fraud and the nature of the proof it

intended to offer at trial.  This satisfied the Government's

obligation to inform [defendant] of the charges against him."

(citation omitted)); *United States v. Glaze*, 313 F.2d 757, 760-61

(2d Cir. 1963) (finding no grounds for reversible error due to

the government's insufficient particulars where defendant did not

make a "sufficient showing of actual and substantial prejudice

resulting from unfair surprise.").  Furthermore, because of the

absence of any authority in law to restrict the government's

evidence to only those invoices or line items that have been

specifically identified prior to trial, the court denies Dupree's

motion.

### IV.  Preclusion of the Testimony of Irma Nusfaumer

Dupree moves to preclude the testimony of the

government's fact witness Irma Nusfaumer on the ground that he

first received materials provided by Ms. Nusfaumer to the

government on October 25, 2011, less than six weeks prior to

---

[8]  As the court previously stated in denying Dupree's initial
motion, "[t]he burden on defendants is also lessened by the fact that the
documents produced came from defendants' own business and computers and were
organized according to the room from which the documents were seized."
(December 30, 2010 Order at 12 (citing *United States v. Kaplan*, No. 02 Cr. 883
(DAB), 2003 U.S. Dist. LEXIS 21825, at *43 (S.D.N.Y. Dec. 5, 2003)).)

trial.  (ECF No. 424, Fourth Motion *in Limine* to Exclude
Testimony of Irma Nusfaumer ("Mot. to Exclude Testimony") at 1.)
According to Dupree, Ms. Nusfaumer was the assistant controller
of Hudson Bay Environments, LLC ("HBE"), which was subsequently
acquired by GDC, and she has direct knowledge of the alleged
conspiracy.  (*Id.*)  The materials that Ms. Nusfaumer supplied to
the government consists of copies of her computer's hard drive at
HBE and certain flash drives, copies of which she made prior to
terminating her employment at HBE on April 23, 2010.  (*Id.* at 1-
2.)  Dupree claims that it would be prejudicial to his case to
allow Ms. Nusfaumer to testify because he would only have five
weeks until the commencement of trial in a complex financial case
to review what he estimates to be "70 million pages of
documents."  (*Id.* at 3-4.)  Notably, Dupree does not cite any
case in support of his motion.

The government submitted an opposition to Dupree's
motion.  (ECF No. 428, Response in Opposition to Fourth Motion *in
Limine* to Exclude Testimony of Irma Nusfaumer ("Response to
Exclude Testimony") at 1.)  First, the government argues that
"the relief [Dupree] seeks is not warranted by the harm he has
alleged" because the "logical remedy for allegedly untimely
production of materials on a hard drive would be to preclude
admission of evidence on the hard drive, not *all* testimony by the
witness who provided the government with the hard drive."  (*Id.*

at 1 (emphasis in original)). Second, the government asserts
that Dupree has already had a thorough preview of Ms. Nusfaumer's
testimony and that none of the exhibits on the government's
current exhibit list are from Ms. Nusfaumer's hard drive or flash
drives. (*Id.*) Finally, the government argues that Dupree's
estimation of the size of the documents on the Nusfaumer drives
is speculative and that five weeks is a sufficient length of time
to review the evidence. (*Id.* at 3.)

The court finds the government's arguments to be
persuasive. Although Dupree correctly notes that Federal Rule of
Criminal Procedure 16 requires the government to permit
defendants to inspect any item in its possession that is
"material to preparing the defense," Fed. R. Crim. Proc.
16(a)(1)(E)(i), Rule 16 does not automatically provide for the
type of relief that Dupree seeks – exclusion of the entire
testimony of a witness. Rather, Rule 16 provides that, if a
party fails to comply with its discovery obligations under the
rule, the court may grant a continuance, prohibit that party from
introducing the undisclosed evidence, or enter any other order
that is just under the circumstances. Fed. R. Crim. Proc.
16(d)(2). "When the government has failed to comply with Rule
16, the district court has broad discretion to determine what
remedial action, if any, is appropriate." *United States v.
Miller*, 116 F.3d 641, 681 (2d Cir. 1997) (citing Fed. R. Crim.

Proc. 16(d)(2)).  The court, however does not find that the
extreme remedy of witness preclusion is appropriate here,
especially where Dupree has not made any specific showing of
prejudice.

        The only prejudice that Dupree alludes to in his
submission is that the volume of data contained in the Nusfaumer
hard drive "is so large that [he] is unable to review the data
and participate in his own defense."  (Mot. to Exclude Testimony
at 4.)  In the fall of 2010, however, the government did provide
Dupree with a copy of Ms. Nusfaumer's hard drive that was seized
during the government's search of GDC's offices on July 23, 2010.
(*Id.* at 5.)  Although this hard drive may not be the same copy
that Ms. Nusfaumer made in April 2010 three months before the
search and which she provided to the government, a forensic
examination of the two drives should reveal what documents, if
any, were deleted prior to the government's seizure of the hard
drive in July 2010.  Even if there were documents deleted from
the Nusfaumer hard drive that remained at the GDC offices between
April and July 2010, the government logically asserts that such
documents would more likely have been deleted in an effort to
conceal the conspiracy from law enforcement, and therefore likely
would not aid Dupree in his defense.  (*See* Response to Exclude
Testimony at 2-3.)  In addition, as early as May 20, 2011, the
government supplied Dupree with several statements of Ms.

Nusfaumer pursuant to 18 U.S.C. § 3500, which provide a detailed preview of her expected testimony, and the government is not planning to offer any of the documents from the Nusfaumer hard drive or flash drives as exhibits in its case-in-chief. (*Id.* at 1.) Finally, because the data provided by Ms. Nusfaumer first had to be reviewed by the government's privilege taint team and was not disclosed to the prosecution team until November 21, 2011 (*id.* at 3; *see* ECF No. 437, Letter from Michael Warren), Dupree has actually had more time than the government – by almost a month – to review Ms. Nusfaumer's materials.

On November 14, 2011, the government asked the court to adjourn the trial currently scheduled to start on December 5, 2011 until January or February of 2012. (*See* ECF No. 438, Government's Letter Requesting Adjournment.) Dupree "strenuously oppose[d]" the government's request for an adjournment and did not mention any issues relating to his review of Ms. Nusfaumer's materials, which suggests that he was not confronting any such issues. (*See* ECF No. 440, Dupree's Letter Opposing Government's Request for Adjournment.) Without a specific showing of prejudice to Dupree as a result of the October 25, 2011 production of Ms. Nusfaumer's hard drive and flash drives (*i.e.* the actual volume of additional documents that Dupree must

review[9], their relevance to the case, and how their use or non-use will prejudice Dupree), the court must, and does, deny Dupree's motion to exclude Ms. Nusfaumer's testimony.

### V. Preclusion of Three Witnesses Added to the Government's Witness List Two Weeks Prior to Trial and After the Court's Deadline for Final Witness Lists

On November 18, 2011, the government notified defendants that it was adding three witnesses[10] to its witness list and provided defendants with statements of those witnesses pursuant to 18 U.S.C. § 3500 and additional Rule 16 discovery materials. (*See* ECF No. 442, Letter Providing Additional Discovery and 3500 Material at 1.)[11] Three days later, on November 21, 2011, Dupree filed a motion to preclude (1) the three witnesses from testifying at trial and (2) the government from using any information gleaned from the § 3500 and Rule 16

---

[9] After its review of Ms. Nusfaumer's hard drive and flash drives, the government's privilege taint team identified 174 pages of nonprivileged documents that would be disclosed to the prosecution team on November 21, 2011 absent any objections from the defendants. (*See* ECF No. 437, Letter from Michael Warren.) Unless a vast majority of the documents on Ms. Nusfaumer's drives were privileged, Dupree's claim that he has to review 70 million pages of additional documents is vastly exaggerated. Moreover, the government clarified that the estimated size of the hard drive included empty space. (Response to Exclude Testimony at 3.)

[10] The three witnesses are (1) Paul Rome, a consultant hired by Amalgamated as early as August 2010, (2) Jay Stephan, an employee of Steelcase, the office furniture company that served as a supplier to HBE, and (3) Dora Yim, an auditor with J.H. Cohn, which was hired by Amalgamated in the spring of 2010 to perform an audit. (ECF No. 443, Dupree's Letter Motion to Exclude Government Witnesses and Discovery ("Mot. to Exclude Witnesses") at 2 n.2.)

[11] Because the government should have sought leave from the court to amend its final witness list, the court will treat the government's November 18, 2011 letter as a motion to amend its final witness list.

materials produced.  (Mot. to Exclude Witnesses at 1.)  Dupree
argues that total exclusion of witness testimony and information
gleaned from § 3500 and Rule 16 disclosures is an "appropriate
remedy given the government's extraordinarily late disclosure,
its failure to request leave to amend its final witness list, and
the resulting prejudice to Mr. Dupree." (*Id.*)  In response,
citing Supreme Court and Second Circuit cases, the government
asserts that it has "no general duty to disclose the identities
of witnesses before trial under either the Constitution or
Federal Rule of Criminal Procedure 16" and that there is no basis
for Dupree's claim of prejudice.  (ECF No. 446, Response in
Opposition to Letter Motion to Exclude Government Witnesses and
Discovery at 1-2.)

The court ordered the parties to provide a final list
of witnesses by October 24, 2011, exactly six weeks prior to
trial.  (*See* ECF No. 331, Third Amended Criminal Pretrial
Scheduling Order ¶ 3(b)(ii)(A).)  On that date, the government
produced a list of 40 witnesses (*see* ECF No. 404, Witness List),
36 of which were disclosed more than six months ago in a
previously submitted witness list filed on May 20, 2011.  (*See*
ECF No. 229, Witness List.)  The court acknowledges that, despite
its discretionary order, the government was not required by rule,
statute, or case law to make these pretrial disclosures.  *See*
*United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990) ("Fed.

R. Crim. P. 16 does not require the Government to furnish the names and addresses of its witnesses in general."); *Mendez v. United States*, 379 F. Supp. 2d 589, 598 (S.D.N.Y. 2005) ("[T]he government is not required to provide the defense with a list of witnesses and § 3500 material prior to trial."); *United States v. Morales*, No. 93 Cr. 291 (KC), 1993 U.S. Dist. LEXIS 15889, at *36 (S.D.N.Y. Nov. 8, 1993) ("While the Court has the discretion to compel pre-trial disclosure of the Government's witnesses in certain circumstances, Fed. R. Crim. P. 16 does not require the Government to turn over this information in general." (citation omitted)); *see also United States v. Yarborough*, No. 06-CR-190(A), 2007 U.S. Dist. LEXIS 23198, at *54 (W.D.N.Y. Mar. 28, 2007) ("Neither Fed. R. Crim. P. 16(a) nor the Jencks Act authorizes a court to compel pre-trial disclosure of statements made by codefendants and coconspirators whom the government intends to call as witnesses at trial." (citations omitted)).

Nevertheless, given the complexity of this case, the court ordered these disclosures to assist defendants with preparing for trial and the government complied in good faith without objecting.  It would be an unfair, inappropriate, and legally unjustified result to penalize the government for adding three witnesses two weeks prior to trial when the government exceeded its legal obligations in disclosing 40 witnesses more than a month ago to assist the defense and prevent surprise.

Accordingly, without a specific showing of prejudice to Dupree, which is absent from his moving papers, Dupree's motion to preclude the testimony of the three witnesses is denied and the court grants the government's motion to amend its final witness list.  *See Mendez*, 379 F. Supp. 2d at 598 (denying a habeas petitioner's claim of prosecutorial misconduct where defendant "failed to show that untimely disclosure of additional witnesses materially impacted his counsel's preparation for trial or denied him a fair trial.").  For the same reason, the court also denies Dupree's motion to preclude the government from using any information learned from the § 3500 and Rule 16 material produced on November 18, 2011.  *See United States v. Adeniji*, 31 F.3d 58, 64 (2d Cir. 1994) ("Assuming a violation of Rule 16 [for untimely disclosure by the government], reversal will only be warranted if the nondisclosure results in substantial prejudice to the defendant.  By substantial prejudice, we mean . . . the defendant must demonstrate that the untimely disclosure of the statement adversely affected some aspect of his trial strategy." (citations and quotation marks omitted)).

## CONCLUSION

For the reasons set forth above, the court grants in part and denies in part defendant Dupree's pretrial motions and denies Dupree's motions *in limine*:  (1) the motion to physically separate Dupree and Foley and their respective counsel at

different tables during trial is denied; (2) the motion to modify
the order of defendants' presentations at trial is granted, and
Dupree will be permitted to make opening and closing statements,
cross-examine witnesses, and present his defense after Foley; (3)
the motion to preclude the government from introducing into
evidence financial documents without specifying the fraudulent
content and line item amounts deemed false in each document is
denied; (4) the motion to preclude the testimony of Irma
Nusfaumer or the use of any information gained from her
statements or documents at trial is denied; and (5) the motion to
preclude three additional government witnesses disclosed on
November 18, 2011 from testifying at trial and the use of any
information gleaned from the 18 U.S.C. § 3500 and Rule 16
materials produced on the same day is denied.

**SO ORDERED.**

Dated: November 28, 2011
        Brooklyn, New York

_____
            /s/
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York
