

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TYH:MLY:BDM                                     *271 Cadman Plaza East*
F.#2010R01153                                   *Brooklyn, New York  11201*

August 20, 2012

ECF and By Hand

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:   United States v. Courtney Dupree
>       Criminal Docket No. 10-627 (S-2)(KAM)

Dear Judge Matsumoto:

Pursuant to the Court's order entered on July 23, 2012, the government respectfully writes in response to the letter filed by defendant Courtney Dupree amending his post-trial motions for acquittal and for a new trial (Doc. 577, the "Amendment"). In its order, the Court reserved decision on the timeliness of Dupree's prior application for leave to amend his motions (Doc. 560, the "Leave Application"), and directed that his submission specifically address the arguments contained in the government's July 20, 2012 letter filed in opposition to that application (Doc. 569, the "Gov't Letter").

For the reasons set forth below and in the government's prior letter, defendant Dupree's request to amend his motions was untimely and his allegations of perjury are unfounded. Moreover, Dupree has failed to respond to key arguments articulated in the government's letter, including his inability to meet the "due diligence" requirement imposed by Federal Rule of Criminal Procedure 33. Accordingly, the grounds that Dupree advances for acquittal and a new trial must be rejected, just like the other bases asserted in his original post-trial motions.

**I.   Defendant Dupree's Amendment to His Rule 29 and 33 Motions Should Be Rejected As Untimely**

Nowhere within his ten page amendment does defendant Dupree provide any plausible explanation for his failure to comply with the January 20, 2012 deadline for filing his post-trial motions. Rather, the defendant merely repeats the arguments in his leave application that his request was timely because (i) "counsel only recently became aware" that the testimony of a forensic accountant for the FBI during the forfeiture phase of trial was purportedly "contradictory" to prior testimony offered at the *Monsanto* hearing and (ii) "counsel did not have opportunity or reason to review" the record of the *Monsanto* hearing because although "counsel was present . . . it was merely as an observer since Mr. Dupree had not made the requisite

showing to be considered for relief." Amendment p. 3; *see also* Leave App. ¶¶ 1-3. These arguments remain inaccurate and unconvincing.

### A. Defense Counsel Had Ample Reason To Review the <u>Monsanto</u> Record and Actually Did Review the Transcript

In its prior letter, the government demonstrated why counsel for Dupree had ample reason to review the record and also cast serious doubt on counsel's claim not to have reviewed at least some portions of the *Monsanto* hearing transcript. *See* Gov't Letter § I (noting that Dupree was present at the *Monsanto* hearing, the accountant was noticed as a witness before trial, the accountant testified for the government and was cross-examined by counsel for Dupree in the criminal case-in-chief, the accountant was called as a witness in the forfeiture phase by Dupree (not the government), and counsel for Dupree actually questioned the accountant during both direct and redirect examination about his prior *Monsanto* hearing testimony). In his Amendment, defendant Dupree fails to dispute or otherwise address any of these points, but just glosses over them by asserting that counsel's ability to review the accountant's previous testimony, which totaled only approximately 40 double-spaced pages, was "non-existent." Amendment § b.1., at p. 3. Accordingly, Dupree's argument should be rejected as baseless.

### B. Counsel for Defendant Dupree Had Sufficient Time To Adequately Prepare for the Forfeiture Phase of the Trial

Defendant Dupree also argues that his counsel was unable to adequately prepare for the forfeiture phase of the trial because it proceeded, over his objections, immediately after the guilt phase. For several reasons, this argument too is without merit. As early as May 2011, and then again in October 2011, Dupree filed a notice requesting that the jury be retained for forfeiture in accordance with Federal Rule of Criminal Procedure 32.2. *See* Rule 32.2(b)(5)(A) Notices, Docs. 215 and 398. As the government pointed out in its prior letter, the governing rule provides that the forfeiture phase take place "as soon as practical" after a verdict of guilt. Gov't Letter § II.D. (citing Fed. R. Crim. P. 32.2(b)(1)(A)). To be sure, weeks into trial, Dupree withdrew his request that the jury be retained, first only as to funds seized from accounts held by Unalite Southwest, and then as to all seized funds. Dupree Letter, Doc. 480; Dec. 26, 2011 Order. However, in deciding to retain the jury, the Court expressly found that "for the past nine months, <u>all</u> the parties have prepared for trial understanding that the jury will be retained to determine forfeiture in the event a guilty verdict is returned." Dec. 26, 2011 Order (emphasis added). Further, defendant Dupree never objected but consented to the Court's decision to proceed directly into the forfeiture phase following the jury's verdict of guilt. *See* Tr. 4368:15-23 ("THE COURT: I guess if we were to get a verdict today, if it were guilty, we would start right away with the forfeiture trial . . . . MS. SINFELT: That's fine Your Honor. We have no problem with that."). Nor, as defendant Dupree implies, did his counsel express to the government any inability to prepare for the forfeiture phase. Indeed, that would have made no sense given the vast resources of counsel's firm, which purports to employ 400 lawyers across nine offices around the world. *See Andrews Kurth Receives High Accolades in Litigation and Appellate Practices*, Dec. 16, 2011, http://www.andrewskurth.com/pressroom-news-340.html.

The forfeiture phase was not complex; in fact, the government only recalled one witness who had previously testified on both direct and cross during the guilt phase. Nevertheless, the Court was careful to ensure that witness was identified prior to the forfeiture phase so that counsel for Dupree could prepare. *See* Tr. 4381:8-13 ("THE COURT: Have you identified your witness for the forfeiture hearing and the defense and provide them information they need to prepare? MR. MORRIS: Yes. We've basically gone on the record numerous times and we actually have Mr. Patello standing by.") (eliciting no objection or argument to the contrary from defense counsel). Thus, defendant Dupree's assertion that his counsel was unable to adequately prepare for the forfeiture phase is without merit.

### C. *The Government Need Not Show That It Would Suffer Prejudice From Defendant Dupree's Untimely Filing*

Defendant Dupree also argues that the government has not shown how it would be prejudiced by the Court's consideration of his untimely amendment. Amendment § b.1., at p. 4. But since Dupree is the party seeking relief, the government does not have the burden of showing any prejudice. Nevertheless, as the Second Circuit has recognized, "the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced — where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar." *Silivanich v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003). As noted above and in the government's prior letter, defendant Dupree has not provided any plausible explanation for his failure to comply with the January 20, 2012 deadline for filing his post-trial motions — a deadline that was itself the product of an extension — or any valid reason as to why now, almost six months after those motions were fully briefed, he should be excused from complying with that deadline. Accordingly, his Amendment should be rejected as untimely.

### D. *Defendant Dupree's Untimely Amendment Is Not The Product of Excusable Neglect Under Rule 45*

Nor can Rule 45 be used by defendant Dupree to overlook the severe untimeliness of his Amendment. That rule allows the Court to permit an otherwise untimely filing where a "party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(2). As articulated by the Supreme Court, the factors to be considered in evaluating excusable neglect include:

> [1] the danger of prejudice to the non-movant, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

*Silivanch*, 333 F.3d at 366-367 (quoting *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)).

The first two *Pioneer* factors will generally favor the moving party, and the absence of good faith is rarely at issue. *Silivanich*, 333 F.3d at 366 (citation omitted). "But despite the flexibility of 'excusable neglect' and the existence of the four-factor test in which three of the factors usually weigh in favor of the party seeking the extension, [the Second

Circuit] and other circuits have focused on the third factor: 'the reason for the delay, including whether it was within the reasonable control of the movant.'" *Id.* (citing *Graphic Comm'cs Int'l Union, Local 12–N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5–6 (1st Cir. 2001) ("While prejudice, length of delay, and good faith might have more relevance in a close case, the reason for the delay factor will always be critical to the inquiry.")). In the present case, defendant Dupree is unable to satisfy the critical third factor because he has not provided any plausible explanation for his delay as discussed above, and also for the same reasons he fails to satisfy the due diligence requirement of Rule 33 as discussed in Section II.G., *infra*. Thus, where, as here, "the rule is entirely clear, . . . a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Id.* at 366-367 (citations omitted); *see also United States v. Snipes*, 611 F.3d 855, 865 (11th Cir. 2010) (holding that counsel's misapprehension of the law cannot constitute excusable neglect). Thus, Rule 45 offers no basis for the Court to consider Defendant Dupree's untimely Amendment.

### E. Defendant Dupree's Other Arguments About Timeliness Are Without Merit

Defendant Dupree's attempt to distinguish a Southern District decision cited by the government in its prior letter, *United States v. Azzara*, No. 02 Cr. 1446(CM), 2008 WL 4702740 (S.D.N.Y. Oct. 22, 2008), is also futile. There, the Court articulated the general proposition that "a supplemental motion filed out of time — whether raising new grounds or rehashing old arguments — does not relate back to the original timely motion." 2008 WL 4702740, at *1 (collecting cases). Dupree tries to distinguish *Azzara* by pointing out that there the defendant "creatively" characterized his untimely Rule 33 motion as a "supplement" to a prior motion. Amendment § b.1., at p. 4. But this is not a valid distinction. Defendant Dupree has attempted to perform the same maneuver here by offering his Amendment to provide "supplemental information in support of his Rule 29 and 33 Motions . . . ." Amendment § b.2., p. 5, at n. 6.

Defendant Dupree also ignores the timeliness requirements altogether when he attempts to cast doubt on the sufficiency of the evidence presented by the government at the forfeiture proceeding, including testimony by Frank Patello. *See* Amendment § b.2., at p. 9. Under any reasonable measure, however, these arguments cannot be deemed to be based upon "newly discovered" evidence. *See United States v. Thomas*, 525 F. Supp. 2d 17, 35-36 (D.D.C. 2007) (holding that after appropriate filing time has expired, court lacks jurisdiction to proceed on Rule 33 motion based on any grounds other than newly discovered evidence). Accordingly, Dupree's attempt to challenge the sufficiency of the forfeiture case should also be rejected as untimely.

### II. Defendant Dupree Has Not Demonstrated Any Factual or Legal Basis For the Amendment to His Rule 29 and 33 Motions

To challenge a conviction on the grounds that a prosecutor knowingly used false testimony, a defendant must establish that (1) there was false testimony, (2) the government knew or should have known that the testimony was false, (3) the testimony was uncorrected, and (4) the testimony was prejudicial in the sense that there is a reasonable likelihood that the false testimony could have affected the judgment of the jury. *Shih Wei Su v. Filion*, 335 F.3d 119, 127 (2d Cir. 2003). Defendant Dupree cannot satisfy <u>any</u> part of the Second Circuit's test.

A.     *The Defendant Has Not Demonstrated That Any Testimony Was False, Let Alone Qualified as Perjury*

In its prior letter, the government pointed out that in his leave application, defendant Dupree had not even bothered to set forth what testimony he alleges was false. *See* Gov't Letter § II.A., at p. 4. In similar fashion, defendant Dupree's Amendment fails to quote the particular portions of the *Monsanto* transcript that he alleges render the accountant's trial testimony "contradictory." Even putting aside the fact that some of Dupree's paraphrasing of the transcript is inaccurate, it is far from obvious how the paraphrased portions of the *Monsanto* hearing testimony are even inconsistent with the accountant's trial testimony, nevermind how they show that testimony was false or perjured.

Defendant Dupree argues that "[m]ost importantly," at the *Monsanto* hearing, the accountant "testified that based on his review of the evidence he was unable to tell what fraction, if any, of the Amalgamated loan proceeds went to USW or any other subsidiary." Amendment § b.2., at p. 6. Defendant Dupree suggests this testimony is contradicted by the accountant's later trial testimony that Unalite Southwest ("USW") borrowed more than what it contributed. *Id.* at p. 7. That is not the case.

First, to put the accountant's trial testimony in its proper context, the relevant line of questioning occurred while he was explaining a summary exhibit that he had prepared based upon bank records. *See* GX-343, attached hereto as Exhibit A; *United States v. Clifford*, 426 F. Supp. 696, 704 (E.D.N.Y. 1976) (Costantino, J.) (citations omitted) (holding that meaning of particular statement must be evaluated in context of broader testimony). Exhibit 343 set forth, on an aggregate basis, the net amount of transfers between two USW bank accounts at Amalgamated Bank and the Hudson Bay Environments ("HBE") Concentration Account which received loan proceeds. At the *Monsanto* hearing, the accountant testified that while he was unable to say whether any <u>particular</u> dollar represented loan proceeds or not, he could still trace flows of funds on an aggregate basis, which is what he did at trial while testifying about Exhibit 343. The transcript of the *Monsanto* hearing makes clear that the agent's inability to identify a particular dollar of funds as loan proceeds had no bearing on his analysis of the aggregate flow of those same funds:

> Q:   It's entirely speculative, is it not, to say that the loan proceeds went to any particular account or payee once it was disbursed from the concentration account.
>
> A:   I followed the flow of the money.
>
> Q:   But you can't say any fraction of any deposit went when funds were disbursed from the concentration account, correct?
>
> A:   Correct.
>
> \*     \*     \*
>
> Q:   You can't say where the loan money went, can you?

> A: The loan was disbursed to those companies and an analysis was done of those accounts too.
>
> Q: You are saying you can make that determination for loan but not for HBE funds?
>
> A: The funds were mixed together, <u>I can't say dollar for dollar, from this place went to that place, I just know collectively this much went into these accounts and this much went out.</u>
>
> Q: You can do it collectively?
>
> A: Yes.

*Monsanto* Tr. 32:24-33:5, 33:10-20 (emphasis added).

Thus, the accountant's testimony at the *Monsanto* hearing concerning the <u>scope</u> of his analysis is consistent with his trial testimony discussing the actual <u>results</u> of his analysis as reflected in Exhibit 343.

Defendant Dupree also suggests that the accountant testified at the *Monsanto* hearing that "the amount of money paid from the USW account [at Amalgamated Bank] . . . to other GDC subsidiaries was over $700,000." Amendment § b.2., at p. (citing *Monsanto* Tr. at 37-39). However, the transcript of the hearing reflects that the accountant's actual testimony did not go as far as defendant Dupree leads this Court to believe:

> Q: . . . Did you fail to notice that of the customer deposits that were transferred from USW Chase and ultimately ended up in the USW accounts at Amalgamated Bank, that over $700,000 was used to pay a different company called Unalite Distribution, UDL?
>
> A: I might have seen those checks, I didn't know they were expenses or not. <u>That is not something that I would know.</u>

*Monsanto* Tr. 32:24-33:5, 33:10-20 (emphasis added).

"[Q]uestions are not evidence." *United States v. Byrd*, 210 Fed. Appx. 101, 102 (2d Cir. 2006) (Summary Order). Thus, notwithstanding defendant Dupree's suggestion to the contrary, the transcript of the *Monsanto* hearing reflects that the accountant offered no testimony about the transfer of funds from a USW account at Amalgamated Bank to other GDC subsidiaries.

Even if the accountant had testified in the manner that the defendant suggests, his *Monsanto* testimony would not have been contradicted by his later trial testimony. The accountant's trial testimony, which pertained to Exhibit 343 discussed above, concerned the net

flow of cash between two USW accounts at Amalgamated Bank and the HBE Concentration Account — not accounts held by other GDC subsidiaries such as Unalite Distribution. Thus, the accuracy of the accountant's testimony as to those flows was not affected by other cash outflows from USW accounts that counsel's questioning in the *Monsanto* hearing implied might have existed. Defendant Dupree has therefore failed to demonstrate any inconsistency between the accountant's testimony at the *Monsanto* hearing and his testimony at trial, nor has he shown that any testimony at trial was false or perjured. Accordingly, he cannot satisfy any of the first three factors required by the Second Circuit under *Filion*.

        B.       *The Defendant Has Not Shown That Any Allegedly False Testimony Was Prejudicial*

Defendant Dupree has not established any reasonable likelihood that the portions that he quotes from the accountant's trial testimony could have affected the judgment of the jury. Amendment § b.2., at p. 7. He maintains that there was no other evidence presented by the government which could lead a reasonable jury to conclude that funds held by USW at Chase bank represented proceeds of his crimes. *Id.* at pp. 9-10. The defendant, however, ignores testimony and exhibits in the trial record. Aside from testifying about the net flow of cash between two USW accounts at Amalgamated Bank and the HBE Concentration Account, the accountant also offered testimony in conjunction with another summary exhibit reflecting how, based upon bank records, USW began to pay employee payroll before ever receiving any customer payments. (GX-344; Tr. 4443:8-15). That testimony was corroborated by the testimony of former GDC Chief Financial Officer Frank Patello. Patello testified during the government's criminal case-in-chief that USW did not generate any customer payments until after its employee payroll and other start up expenses had been paid out of the Concentration Account, which was in turn funded by the Amalgamated loan. (Tr. 2449:3-2450:22).

Contrary to Dupree's assertion that Patello's testimony "did not even touch on whether USW was a self-sustaining company," Patello testified that USW — like other GDC subsidiaries and the enterprise as a whole — had negative cash flow from operations in 2009. (Tr. 2445:4-2446:16). Moreover, his testimony was based upon a spreadsheet that he created while working for the business. (GX-301). Patello further testified these cash flow losses were funded by the Concentration Account, and that the Concentration Account received its money from draw downs on the Amalgamated loan set forth on another spreadsheet that he prepared during his employment. (GX-302; Tr. 2414:11-2418:8, 2447:5-2448:9).

Defendant Dupree maintains that Patello testified on cross-examination that the cash flow spreadsheet upon which much of his testimony relied "could not be used to determine if any one of the subsidiary companies paid more on the loan than it borrowed." Amendment § b.2., p. 9, at n. 9. However, the pages of the trial transcript cited by the defendant do not bear out his claim. *Id.* (citing Tr. 4417:1-7 (Patello testifying that cash flow statement reflects how money was used), 4418:11-14 (Patello testifying that cash flow statement summarizes total cash inflows and outflows based upon supporting schedules which reflect every bank transaction). Defendant Dupree further urges the Court to discount Patello's testimony about USW's negative cash flow position USW in 2009, because USW did not begin operations until about midway through that year. Amendment § b.2., p. 9, at n. 9. That would make no sense, as Patello's cash

8

flow spreadsheet reflects that USW still operated in the red during the second half of the year. (GX-301).

Thus, even excluding the testimony that defendant Dupree claims to be false, the accountant's other testimony, Patello's testimony, and the exhibits introduced through both of them all point to USW's dependence on the Amalgamated loan. Furthermore, it is not reasonable to conclude that the jury's special verdict of forfeiture was dependent upon the accountant's testimony during the forfeiture phase given that he was called to testify in the forfeiture phase by defendant Dupree (not the government), and that the government's cross-examination mostly concerned testimony that had already been elicited during its criminal case-in-chief. (Tr. 2858:14-2862:17). Accordingly, defendant Dupree's argument that there was no other evidence from which a reasonable jury could find the USW Chase funds forfeitable should be rejected.

        C.    *Even if the Defendant's Allegations Could Be Supported They Still Could Not Provide a Basis to Overturn His Conviction Under Rule 29*

In its prior letter, the government explained that because forfeiture does not constitute a substantive criminal charge but is an aspect of sentencing, defendant Dupree may not seek to challenge the forfeiture verdict in his Rule 29 motion. *See* Gov't Letter § II.B., at p. 5. (citing *United States v. Day*, 416 F. Supp. 2d 79, 84 (D.D.C. 2006), *rev'd in part on other grounds*, 524 F.3d 1361 (D.C. Cir. 2008)). Defendant Dupree does not address the authority cited by the government and cites no authority to the contrary. Amendment § b.2., p. 5, at n. 6. Nevertheless, the defendant argues that this Court should still entertain his motion. *Id.* Accordingly, defendant Dupree's request to use Rule 29 as a basis for setting aside the forfeiture verdict should be rejected as improper.

        D.    *Even if the Defendant's Allegations Could Be Supported They Would Not Suffice to Show Diligence in Gathering and Using Information to Rebut a Prosecution Witness*

In its prior submission, the government demonstrated that defendant Dupree cannot satisfy the Second Circuit's requirement of due diligence in gathering and using information to rebut a prosecution witness. Gov't Letter § II.C., at pp. 5-6 (citing *Filion*, 335 F.3d at 127-28 and pointing out that Dupree had ample cause to review transcript from the *Monsanto* hearing he attended, his counsel at least partially reviewed that transcript, the government noticed the accountant as a witness before trial, the accountant went on to testify during the government's criminal case-in-chief, counsel for Dupree cross-examined him during the case-in-chief, and when the accountant testified during the forfeiture phase he did so at the request of counsel for Dupree, who called the accountant to the witness stand).

Defendant Dupree responds only by attempting to distinguish one of the cases cited by the government in support of its position, *United States ex rel. Regina v. LaVallee*, 504 F.2d 580, 583 (2d Cir. 1974) (holding that failure to call witnesses who could have contradicted alleged perjury is fatal to subsequent attempt to reverse conviction based on prosecutorial misconduct). Amendment § b.2., at p.9. Specifically, Dupree argues that here, unlike in *Regina*,

"there was no witness to call in order to impeach [the accountant because] . . . [t]he proof was simply in his previous contradictory testimony." *Id.* Even if that were the case, however, Dupree still could not satisfy his burden, because he neglected to even question the accountant during redirect about those portions of *Monsanto* testimony that he now claims were contradictory. *United States v. Helmsley*, 985 F.2d 1202, 1207 (2d Cir. 1993) (acknowledging that Second Circuit has never upheld challenge to conviction based upon "evidence that defendant was aware, or in the exercise of due diligence should have been aware, at trial"). Buried in a lengthy footnote, Dupree maintains that his counsel did not "have on hand" the accountant's previous testimony during the forfeiture phase. Amendment § b.2., p. 8, at n. 8. That representation strains credulity given that, as discussed in Section I.A., *supra*, counsel for Dupree actually questioned the accountant during both direct and redirect examination about his prior *Monsanto* hearing testimony. And even if that were true, Dupree most certainly should have had a copy of it before calling the accountant to the stand. *Cf. United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005) (upholding denial of Rule 33 motion on grounds that "the evidence in question all pertained to matters that [the defendant] knew would be in issue at trial, even if he did not know the government's exact position on those matters."). Accordingly, there is no basis to conclude that the defendant made adequate efforts to gather and use information to rebut the accountant.[1]

In lieu of making the requisite showing of diligence, defendant Dupree argues that, under circumstances present here, the "defendant's awareness at trial of the government's use of perjured testimony does not preclude a collateral attack." Amendment § b.2., p. 8, at n. 8 (citing *Helmsley*, 985 F.2d at 1207-1208). However, the underlying decisions that the defendant cites in support of his position, *United States ex rel. Washington v. Vincent*, 525 F.2d 262 (2d Cir. 1975) and *United States v. Valentine*, 820 F.2d 565 (2d Cir. 1987), stand for the limited exception that due diligence is not required when the "prosecutor is claimed not merely to have been aware of circumstances indicating the falsity of a witness's testimony but to have been <u>directly involved as a participant in the transaction about which the witness has allegedly lied.</u>" *Helmsley*, 985 F.2d at 1207 (emphasis added). In *Vincent*, the testimony at issue concerned lies about a deal that a witness had made with the prosecutor. Similarly, in *Valentine*, the testimony at issue concerned lies about a witnesses's interaction with the prosecutor's office. As *Helmsley* explains, when a prosecutor has a role in the "falsity of a witness' statement" it eliminates the issue of whether the prosecutor was aware of the falsity and creates a unique difficulty for the defendant because he has to directly challenge the prosecutor's credibility before the jury. *Id*. Here, there has been and can be no allegation that the accountant's testimony concerned any prosecutorial conduct. Thus, the exception to the general requirement of diligence has no bearing here.

---

[1] It should also be noted that the standard of due diligence is particularly difficult to meet when, as is the case here, the alleged "new evidence" concerns the defendant's own business. *See, e.g.*, *United States v. Parness*, 408 F. Supp. 440, 443-44 (S.D.N.Y. 1975) (denying motion for new trial based upon newly discovered evidence on grounds that defendant, as owner of business upon which checks at issue were drawn, knew or should have known about them).

### III. Conclusion

For the reasons discussed above, defendant Dupree fails to demonstrate any grounds for the Court to consider his untimely amendment to his pending post-trial motions based upon prosecutorial misconduct. Aside from its lack of timeliness, the Amendment fails on the merits because it advances an unfounded allegation of perjury based upon prior testimony of which Dupree was aware, but did not bother to use at trial. Accordingly, defendant Dupree's post-trial motions for acquittal and for a new trial should be denied.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney
Eastern District of New York

By:   /s/
Michael L. Yaeger
David C. Woll
Brian D. Morris
Assistant U.S. Attorneys
(718) 254-7000

cc: All counsel of record (by ECF)