

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JM:MLY
F.#2010R01153

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 3, 2012

By ECF and Hand

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Courtney Dupree, et al.
           Criminal Docket No. 10-627 (S-2)(KAM)

Dear Judge Matsumoto:

      The defendant Courtney Dupree was convicted on December 30, 2011, after a jury trial, of participating in a conspiracy to commit bank fraud, of committing bank fraud, and of causing false statements to be made to a bank.  The defendant was remanded to jail on or about March 16, 2011 and is currently scheduled to be sentenced by the Court on February 4, 2013.  The government respectfully submits this letter in response to the defendant's sentencing memorandum, dated November 26, 2012, which requested a prison term of "time served, or, in the alternative . . . home confinement or probation." (Doc. 602, Def. Mem. at 1).  The government opposes the defendant's request, which would be unreasonable under 18 U.S.C. § 3553(a). See United States v. Jones, 531 F.3d 163, 170 (2d Cir. 2008) (federal appellate courts review federal sentences for reasonableness).

      Under § 3553(a), the sentence imposed must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public.  Section 3553(a)(4) further provides that a sentencing court is obligated to give fair consideration to the Guidelines before imposing sentence.  See 18 U.S.C. § 3553(a)(4).  The sentence proposed by the defendant is so lenient, and so wildly divergent from the bottom of the Guidelines range, which calls for a sentence of 135 months, that the defendant's proposal should give this Court pause. See Rita v. United States, 551 U.S. 338, 350 (2007)(observing that, in light of the

Commission's "ongoing" revisions to the Guidelines, based on review of criminal sentences and "advice from prosecutors, defenders, law enforcement groups, civil liberties associations, experts in penology, and others [,] .... it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives"). A close examination of the facts in this case shows that the proposal is unfounded. The defendant's crimes are serious and extensive, the defendant is seemingly unrepentant, and the defendant's family circumstances are not so extraordinary to warrant time served, home incarceration, or probation.

I.  For Years, The Defendant Led an Elaborate Fraud Designed To Benefit His Own Businesses

The defendant was a leader in a multi-year fraud scheme designed to benefit businesses that he owned and controlled. His claim that he "did not personally benefit" from the fraud (Def. Mem. at 11) is simply false and ignores the fact that he alone owned the businesses that benefited directly from the fraud. No one else in the scheme had an equity stake in the businesses that borrowed the money; no one else stood to gain as much from the fraud's concealment or lose as much from its discovery. By lying in 2008 about his companies' net income and other aspects of their financial condition, defendant Dupree obtained $21 million from Amalgamated Bank that he would not otherwise have received and used that money to grow his companies. By lying about his companies' financial condition for the next two years, defendant Dupree was able to avoid paying back the money when the Bank would otherwise have been entitled to it and was able to forestall the economic collapse of his business. That the defendant also invested other money in the companies and sometimes took a lower salary than he had previously does not negate the benefits that the defendant reaped from the fraud. (Def. Mem. at 14-16). The money was a significant gain for the defendant, and the defendant knew that when he lied to get and keep the money from the Bank. He is an intelligent and highly educated man, and his conduct over several years was not, as the defendant would have the Court believe, a momentary aberration or lapse of reason. To the contrary, it was the way the defendant ran his business.

II. The Defendant Has Not Accepted Responsibility For His Crimes

The defendant also tries to minimize his conduct by asserting that he has accepted responsibility for his actions. Yet his sentencing memorandum and his objections to the Pre-Sentencing Report suggest that he feels no real remorse for what he has done and that he will not acknowledge the lies he told. At base, the defendant's claim that he has accepted responsibility for his crimes rests on an artful conflation of his crimes with his debts. Defendant Dupree would have the Court believe that because he "has accepted the responsibility of paying Amalgamated what it is owed," he has accepted responsibility for his fraud. (Def. Mem. at 13). But this is a false equivalency. To acknowledge the obvious fact that one's companies borrowed millions of dollars is easy; to acknowledge that the money was obtained and kept through extensive fraud is another thing altogether. The defendant has yet to even admit that he committed an offense, much less taken responsibility for it. See U.S.S.G. § 3E1.1(a) (defendant must "clearly demonstrate[] acceptance of responsibility for his offense") (emphasis added).

Indeed, the defendant took the witness stand and lied to the Court and the jury. As the PSR states, "the substance of the defendant's testimony denied the conduct comprising the instant offense." ¶ 37. For example, Dupree testified falsely at trial regarding the purchase of Image Lighting, Inc., denying that he had known the credit agreement did not permit the purchase. The testimony of Patello and Serrano established that Dupree knew the purchase was not permitted. Moreover, even by itself, the pattern of concealment proved at trial (including Dupree's lies about the bounced check to George Jarvis and the coaching of "Ernest Sullivan" before he spoke to C3 Capital) was more than sufficient for a jury to conclude that the credit agreement did not permit the Image deal, and that Dupree knew it did not. See United States v. Macpherson, 424 F.3d 183, 190-92 (2d Cir. 2005) (pattern of the defendant's financial transactions was enough to prove his knowledge of, and his intent to evade, currency reporting requirements); see also id. at 189 ("mens rea elements of knowledge and intent can often be proved through circumstantial evidence and the reasonable inferences drawn therefrom"). Despite the overwhelming evidence of the defendant's knowledge and guilt, the defendant has never acknowledged his culpability or expressed remorse for his behavior. Because he has not acknowledged his own misconduct, he cannot be deemed to have accepted responsibility.

### III. The Defendants Lack Of A Previous Criminal History And The Collateral Consequences To His Family From A Prison Term Do Not Warrant The Extraordinarily Lenient Sentence He Seeks

The defendant further seeks to minimize his crimes by noting that he has no criminal history, and by arguing that the incarceration will financially devastate his family. (Def. Mem. at 1). The defendant is indeed without a criminal history, but it bears noting in this context that his fellow employees, whom he led in a crime designed above all for his own benefit, were also without criminal histories in 2008. But now several of the defendant's former subordinates — some of whom have minor children with serious disabilities — have criminal histories in part because of the defendant's actions. Defendant Dupree's choices, and the choices he urged on his employees, have had devastating consequences on several families. All of this was for the sake of a scheme that would most directly benefit the defendant.

As for the defendant's own family, he has no minor children, and his siblings are all grown and able-bodied. The family's resources are not confined to the defendant and the circumstances in this case do not seem so extraordinary as to warrant a sentence of time-served or probation for a defendant who led a multi-year, multi-million dollar fraud. Cf. U.S.S.G. § 5H1.6 ("family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted"); United States v. Johnson, 964 F.2d 124, 129 (2d Cir. 1992) ("Section 5H1.6's phrasing confirms the Commission's understanding that ordinary family circumstances do not justify departure, but extraordinary family circumstances may").

Hardship by itself is not enough, as the Second Circuit has recognized that "[i]t is not unusual . . . for a convicted defendant's incarceration to cause some hardship in the family." United States v. Smith, 331 F.3d 292, 294 (2d Cir. 2003). Further, the Second Circuit has held that departures under the Guidelines were unauthorized where, among other things, other relatives could meet the family's needs. United States v. Madrigal, 331 F.3d 258, 260 (2d Cir. 2003) (district court abused discretion in departing downward for family circumstances when the defendant would be better able to care for her children than any of the other available caretakers, but the defendant was not the only person capable of providing adequate care for her children); see also United States v.

Malpeso, 943 F.Supp. 254, 257 (E.D.N.Y.1996) (denying departure although one of defendant's young children showed signs of emotional distress, the family was encountering financial difficulties, and defendant's wife, unable to find competent, affordable full-time day care for the children, had been unable to obtain employment); United States v. Caba, 911 F.Supp. 630, 642 (E.D.N.Y.) ("[T]he court does not find anything in [the defendant's] circumstances that sets him apart from other defendants who have been their family's sole bread winner or whose children will have difficulty in dealing with their father's incarceration to merit a downward departure").

IV. Conclusion

For the reasons stated above, and based on a balancing of the § 3553(a) factors, the defendant's request for time served, home incarceration, or probation would be unreasonable.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney
Eastern District of New York

By:     /s/
Michael L. Yaeger
David Woll
Assistant U.S. Attorneys
(718) 254-7000


cc:   Roscoe Howard, Esq.