

**Jeffrey J. Wild**
Partner
Tel  973 597 2554
Fax  973 597 2555
jwild@lowenstein.com

January 16, 2013

**VIA ECF & FEDEX**

Hon. Kiyo A. Matsumoto, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   **United States of America v. Courtney Dupree, Thomas Foley, and Rodney Watts, Case No. 10-CR-627 (KAM)**

Dear Judge Matsumoto:

On behalf of Amalgamated Bank (the "Bank"), the victim of the crimes of Courtney Dupree, we submit this letter in connection with Mr. Dupree's sentencing, which is presently scheduled for February 4, 2013 at 3 p.m.  For the reasons described below -- the nature of the original crimes, the harm caused by the crimes, Mr. Dupree's post-arrest defiance of this Court, and the need for there to be a "risk-to-reward ratio" that deters others from committing crimes of this kind -- the Bank respectfully submits that this case requires a substantial prison term based on the factors described in this letter.

    A.    **Nature of the Original Crimes**

Some crimes, no doubt, are less serious because they are the acts of a single minute, hour or day -- perhaps lapses after provocation or a one-time loss of control.  But not so with the crimes of Mr. Dupree.

Here, day after day, month after month, Mr. Dupree made a choice -- in essence, a new choice every day -- to continue perpetrating his ongoing, massive fraud upon the Bank.  And the word "premeditated" really does not do Mr. Dupree's crimes justice.  It takes great time, and detailed planning, to defraud a financial institution by masterminding a scheme of completely fictitious, non-existent "sales" -- the millions of dollars of bogus transactions that Mr. Dupree used to create the illusion of millions of dollars of fraudulent collateral, and thereby extract -- steal -- millions from the Bank.

The Bank will leave it to the Government to provide the details of the carefully calculated crime that Mr. Dupree chose to perpetrate upon the Bank.  It is hard, however, to imagine a financial felony against a bank that could be more brazen or more culpable.

Hon. Kiyo A. Matsumoto, U.S.D.J.                                                        January 16, 2013
Page 2

###    B.    The Harm Caused by the Crimes

Amalgamated Bank is not some massive, money center giant, but rather "America's Labor Bank®" -- a small bank founded in 1923 by the Amalgamated Clothing Workers of America. To this day, the Bank is largely owned (directly or indirectly) by hard-working union workers. The crimes that Mr. Dupree orchestrated were not some legal abstractions. Mr. Dupree took money out of the pockets out of the Bank's shareholders (and potentially from the U.S. Government, since as with all depository institutions, Amalgamated holds depository monies and is FDIC insured).

If Courtney Dupree walked into a bank branch to commit bank robbery, he could not possibly have stolen more than $20 million. No one could ever carry that much money. Yet Mr. Dupree planned carefully, and continued on and on with that fraud -- a complex and effective way to steal a large multiple of any amount that he could have carried out by hand.

As more fully detailed in this firm's letter to your Honor dated December 24, 2012 (Document 616-1), the total loss to the Bank as of that date a result of Mr. Dupree's criminal conduct was **$20,523,137.18**. Moreover, the crimes tied up the Bank's credit and legal personnel in more than two years of effort in seeking to mitigate the harm to the Bank. It forced the Bank to retain outside legal counsel, as well as credit consultants, forensic accountants and collection specialists, to ferret through the deep thicket of false invoices and accounting records created by Mr. Dupree. The far-ranging harm caused by Mr. Dupree's criminal acts mandates a severe sentence.

###    C.    Mr. Dupree's Post-Arrest Defiance of this Court

At least the Bank could feel that it was safe after Mr. Dupree was first arrested, after his crimes had been discovered. But even that was not so.

Instead, even after his first arrest -- and after his first indictment -- Courtney Dupree defied the law and defied this Court. While awaiting trial, Mr. Dupree had the audacity to continue stealing from his victim, the Bank, by continuing to collect and pocket receivables to which the Bank was entitled. In short, even after he had been caught with his hand in the till, Courtney Dupree remained unrepentant -- and even with this case pending, put his hands right back in. Only after this Court's March 31, 2011 Order of Detention Pending Trial did the fraud and stealing finally stop, because Mr. Dupree had no choice.

The Bank continues to try and collect on the loans at issue to this day. Based on his proven track record, Mr. Dupree will do whatever he can, whenever he can, to continue trying to collect receivables that belong to the Bank. This is yet another reason why Mr. Dupree cannot be released from incarceration anytime soon.

Hon. Kiyo A. Matsumoto, U.S.D.J.                                                   January 16, 2013
Page 3

### D.  The Need for a High "Risk-to-Reward Ratio"

The reasons described above cry out for a substantial term of imprisonment for Mr. Dupree.  But there is another factor that the Bank asks Your Honor to weigh heavily here:  the need for a high "risk-to-reward ratio" to deter other crimes of this kind.

The Bank, like all banks in Americas, constantly makes loans based on collateral, including accounts receivable that were the bulk of the Bank's supposed collateral in this instance.  In turn, borrowers -- businesses and individuals -- depend on those loans for their businesses and their daily lives.  Mr. Dupree's actions render it that much more difficult for responsible financial institutions to lend against such collateral when it is easy and without consequence to a borrower to create fictional receivables that are beyond the reach of easy detection.

If, however, criminals like Courtney Dupree are able to use fraud to obtain massive amounts of loan money and only spend a few years in prison -- and even then, only if the criminals happen to be caught -- then bank fraud starts to seem like a reasonable, and possibly profitable, alternative for those who, like Mr. Dupree, were unable to obtain loans honestly.

Thus, the math of bank fraud -- that is the many years in prison that should be imposed for massive bank frauds such as this one, and thereby outweigh the perceived gains of bank fraud -- must make it clear that crime, indeed, does not pay.

* * *

For all these reasons, the Bank respectfully requests that at the sentencing currently scheduled for February 4, 2013, Your Honor impose upon Mr. Dupree a substantial prison term based on the factors described in this letter and the federal sentencing guidelines.  Mr. Dupree is deserving of nothing less, based on his deliberate and long-term fraud; the massive harm that he caused to the Bank and its ownership; his extraordinary, post-arrest defiance of the law and this Court, and the need to impose a sentence of substantial imprisonment that proves that crimes like this really do not pay.


Respectfully submitted,

*/s/ Jeffrey J. Wild*

Jeffrey J. Wild


cc:     Robert J. Kipnees, Esq. (via ECF & e-mail)
        Michael Yaeger, AUSA (via ECF & e-mail))
        Roscoe Howard, Esq. (via ECF & e-mail)
        Lisa Langone, U.S. Probation Officer (via ECF & e-mail)

22841/12
01/16/13 23049919