UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X

UNITED STATES OF AMERICA                    **MEMORANDUM AND ORDER**

        - against -                         10-CR-627 (KAM)

COURTNEY DUPREE, THOMAS FOLEY,
and RODNEY WATTS

                Defendants.
-------------------------------X

**MATSUMOTO, United States District Judge:**

        On December 30, 2011, after a jury trial, defendant

Courtney Dupree ("Dupree"), the owner and CEO of GDC

Acquisitions, LLC ("GDC"), and a number of wholly owned

subsidiaries, was convicted of (1) conspiracy to commit bank

fraud, mail fraud, and wire fraud, (2) bank fraud, and (3) two

counts of making a false statement in connection with a complex

multi-million dollar scheme to defraud Amalgamated Bank

("Amalgamated") by obtaining or attempting to obtain loan

proceeds on the basis of false financial statements and other

material misrepresentations between January 2007 and July 2010.

On January 3, 2012, the same jury returned a special verdict

finding that Dupree obtained $18,157,000 constituting or derived

from proceeds traceable to the offenses for which he was

convicted, and also finding that funds in eight bank accounts

seized by the government were subject to forfeiture as property

constituting or derived from proceeds traceable to those

offenses.  (*See* ECF No. 511, Special Verdict Sheet for

Forfeiture.)  Accordingly, on January 10, 2012, the court

entered a preliminary order of forfeiture as to the funds seized

from the bank accounts.  Four of the eight bank accounts were

with JP Morgan Chase Bank ("Chase Bank") in the name of Unalite

Southwest, LLC ("USW"), a wholly-owned subsidiary of GDC, and

total $983,790.11 (the "Subject Funds").  (*See id.*)  Pursuant to

21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure

32.2(c)(1), before the court may enter a final order of

forfeiture as to the assets included in the preliminary order of

forfeiture in favor of the government, it must first conduct a

post-trial ancillary proceeding in order to adjudicate any

third-party claims to the forfeited assets.

Presently before the court are four motions related to

third-parties claiming an interest in the Subject Funds: (1) a

motion by the United States of America (the "government") to

dismiss the verified petition for a hearing to adjudicate the

third-party claims of defendant Rodney Watts ("Watts") and his

counsel DePetris & Bachrach, LLP ("D&B") (collectively, the

"Watts Petitioners") to the Subject Funds; (2) a cross-motion by

the Watts Petitioners for judgment on the pleadings against the

government; (3) a motion by the Watts Petitioners to dismiss the

verified petition for a hearing to adjudicate the third-party

claims of Amalgamated to the Subject Funds; and (4) a request by

2

*pro se* third-party Valerie A. Griffin ("Griffin") that she be added as an interested party so that she may file a third-party claim to assets included in the preliminary order of forfeiture. (*See* ECF Nos. 554, 559, 571, 575-76, 579-584.)  For the reasons set forth below, the court hereby: (1) grants the government's motion to dismiss the Watts Petitioners' petition; (2) denies the Watts Petitioners' cross-motion for judgment on the pleadings; (3) denies the Watts Petitioners' motion to dismiss Amalgamated's petition; and (4) denies Griffin's request to be added as an interested party in order to file a third-party petition.

## BACKGROUND

### I. Factual and Procedural History

The court will assume the reader's familiarity with the extensive factual and procedural history of this case, and will therefore only summarize those facts that are pertinent to the present motions regarding third-party claims to assets subject to the preliminary order of forfeiture.

On July 21, 2010, Magistrate Judge Marilyn D. Go of the Eastern District of New York issued warrants to seize funds in approximately sixteen bank accounts as representing property that constituted or was derived from proceeds traceable to a conspiracy to commit bank fraud, mail fraud, and wire fraud in violation of 18 U.S.C. §§ 1344, 1341, and 1343.  (*See generally*

ECF No. 2, Arrest Warrant.)  On July 23, 2010, Magistrate Judge

Ramon E. Reyes of the Eastern District of New York issued

seizure warrants for funds in several additional bank accounts.

Included among those assets seized by the government were the

Subject Funds from four accounts at Chase Bank held in the name

of USW.

In a five-count superseding indictment on August 13,

2010, defendants Dupree, Watts, and Thomas Foley ("Foley")

(collectively, "defendants") were indicted by a grand jury for

bank fraud, conspiracy to commit bank, mail, and wire fraud, and

making a false statement and report for the purposes of

influencing Amalgamated.  (*See* ECF No. 295, Superseding

Indictment.)[1]  The first four counts of the Superseding

Indictment arise out of an alleged scheme to defraud

Amalgamated, a federally insured financial institution, by

obtaining, and attempting to obtain, loan funds for GDC and its

subsidiaries on the basis of false financial statements and

other material misrepresentations between January 2007 and July

2010.  (*Id.* ¶¶ 5, 6, 8.)  Specifically, on or about August 29,

2008, three of GDC's subsidiaries, JDC Lighting, LLC, Unalite

Electric and Lighting, LLC, and Hudson Bay Environments Group,

LLC (collectively, the "Borrower Subsidiaries"), entered into an

---

[1] Count Five of the Superseding Indictment charges only Dupree
with an additional count of bank fraud.  However, this charge was not
presented to the jury at trial and remains open.  (*See* ECF No. 506, Jury
Verdict.)

4

agreement ("the Loan Agreement") with Amalgamated under which the Borrower Subsidiaries could borrow up to $21 million through a revolving credit and term loan, which were guaranteed by GDC and other wholly owned subsidiaries of GDC. (*Id.* ¶ 9). Under the terms of the Loan Agreement, the Borrower Subsidiaries pledged as security for the loans all of their property, which included, *inter alia*, their accounts receivable and inventory. The Borrower Subsidiaries were required to submit Borrowing Base Certificates to Amalgamated each month stating the total value of both their accounts receivable and current inventory. (*Id.* ¶¶ 10-11.) The core of the fraud allegations was that defendants deliberately and falsely overstated the accounts receivable on consolidated financial statements and Borrowing Base Certificates provided to Amalgamated, which were used to determine the amount that the Borrower Subsidiaries could borrow in any given month. (*Id.* ¶¶ 11-13.)

In May of 2011, Watts sought to challenge the government's continued restraint of the Subject Funds at an evidentiary hearing conducted pursuant to *United States v. Monsanto*, 924 F.2d 1186 (2d Cir. 1991). (*See* ECF No. 213, Minute Entry for *Monsanto* Hearing held before Magistrate Judge Joan M. Azrack.) On July 27, 2011, the court adopted in part and modified in part the Report and Recommendation of Magistrate Judge Azrack, and found that the government had demonstrated

probable cause to continue to restrain $350,290.87 of the Subject Funds in advance of trial. (ECF No. 281, Memorandum and Order ("July 27th Order") at 23-24.) As part of his opposition to the government's motion for reconsideration and clarification of the court's order, Watts tendered an assignment by USW, executed by counsel for Dupree on August 11, 2011 (the "Assignment"), which purports to assign all of USW's right, title, and interest in the Subject Funds to Watts' counsel, D&B, in payment of past and future legal services provided by D&B to Watts. (*See* ECF No. 314-1, Assignment ¶¶ 2-3.)

Despite Watts' request that the remaining balance of the Subject Funds, totaling $633,499.24, be released to D&B, the court instead directed the government to deposit the remaining balance into the Eastern District of New York's Seized Asset Deposit Fund pending further orders from this court or a court with jurisdiction over those funds. (*See* Minute Entry of Sept. 13, 2011; ECF No. 338, Order.) At Watts' request, based upon Watts' appeal to the Second Circuit of those orders, the court granted Watts a stay of his criminal case pending adjudication of his appeal. (*See* Minute Entry of Oct. 17, 2011.)

After jury selection on December 5, 2011, the trial of Dupree and Foley commenced with opening statements the following day on December 6, 2011, and continued thereafter. On December 30, 2012, after one day of deliberations, the jury returned its

verdict finding Dupree guilty of counts One through Four of the
Superseding Indictment, and acquitting Foley of all charges.
(*See* Jury Verdict.) The forfeiture phase of the jury trial then
continued in a separate proceeding following the guilty verdict.
On January 3, 2012, the jury returned a Special Verdict for a
Forfeiture Money Judgment, by a preponderance of the evidence,
that Dupree obtained funds constituting or derived from proceeds
of the offenses in the Superseding Indictment of which he was
convicted, in the amount of $18,157,000, as representing
proceeds traceable to offenses for which he was convicted, and
that funds seized by the government from the eight bank accounts
were also subject to forfeiture as property traceable to or
derived from proceeds of Dupree's offenses of conviction. (*See*
Special Verdict Sheet for Forfeiture.) Accordingly, on January
10, 2012, the court entered preliminary orders of forfeiture as
to the Subject Funds. (*See* ECF Nos. 520, 521, First and Second
Preliminary Orders of Forfeiture.) Dupree has not contested the
sufficiency of the evidence to sustain the forfeiture verdict.

By summary order issued on April 30, 2012, the Second
Circuit held that the jury's verdict as to Dupree, as well as
the preliminary orders of forfeiture entered on the basis of
that verdict, rendered Watts' appeal moot, and therefore
dismissed his appeal. *See United States v. Watts*, 477 Fed.

Appx. 816, 817-818 (2d Cir. 2012). The Second Circuit

specifically stated in relevant part:

> The district court's finding that the
> government lacked probable cause to continue
> to restrain the funds at issue did not bar
> the government from seeking the forfeiture
> of the funds following a trial based on a
> preponderance of the evidence standard. *See*
> Fed. R. Crim. P. 32.2(b)(1)(B); *see also*
> *United States v. Premises and Real Prop. at*
> *4492 S. Livonia Rd.*, 889 F.2d 1258, 1265-66
> (2d Cir. 1989) ("the illegal seizure of
> property, standing alone, will not immunize
> that property from forfeiture, so long as
> impermissibly obtained evidence is not used
> in the forfeiture proceeding"). Of course,
> Watts is free to pursue his claims against
> the subject funds in a post-trial ancillary
> proceeding. *See* 21 U.S.C. § 853(n); Fed. R.
> Crim. P. 32.2(c)(1);*see also De Almeida v.*
> *United States*, 459 F.3d 377, 381 (2d Cir.
> 2006)("[C]riminal forfeiture is not a
> measure restricted to property owned by the
> criminal defendant . . . . The likelihood
> that some property involved in an offense
> will be owned by persons other than the
> criminal defendant is reflected in the
> provision for an ancillary proceeding").

*Watts*, 477 Fed. Appx. at 817-818.

On May 9, 2012, and in accordance with 21 U.S.C. §

853(n)(1),[2] the government sent direct written notice of the

preliminary order of forfeiture to potential claimants,

including the Watts Petitioners and Amalgamated. (*See* ECF No.

538, Certificate of Service.) On June 7, 2012, the Watts

Petitioners timely filed a joint verified petition claiming an

---

[2] As detailed *infra*, 21 U.S.C. § 853(n) establishes the procedure by which third-party claims to assets subject to forfeiture are adjudicated.

interest in the Subject Funds. (ECF No. 549, Verified Pet. for Hearing to Adjudicate Third-Party Claims of Watts and D&B (the "Watts Petition").) On June 8, 2012, Amalgamated also timely filed a verified petition claiming an interest in the Subject Funds. (ECF No. 550, Pet. of Amalgamated for Adjudication of Interest (the "Amalgamated Petition").) On June 19, 2012, the court set a briefing schedule as to the instant motions. (ECF Order of June 19, 2012.) Finally, by letter dated June 25, 2012, and received by the court on June 28, 2012, *pro se* third-party Griffin, a former employee of GDC, requested that the court add her name as an interested party in order that she may file a petition claiming an interest in the Subject Funds. (ECF No. 554, Ltr. from Valerie A. Griffin to the court ("Griffin Ltr.").)

## II. <u>Ancillary Proceedings and Standard of Review</u>

### A. Statutory Framework of Ancillary Proceedings

The procedure by which third-parties may seek to recover an alleged interest in forfeited property is through a post-trial ancillary proceeding pursuant to 21 U.S.C. § 853(n). 21 U.S.C. § 853(n). "[T]he purpose of the ancillary proceeding is for the District Court . . . to amend orders of forfeiture and apportion assets when one or more third parties claim an interest in the property to be forfeited." *Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 246 (2d Cir. 2011). Thus,

if a third-party establishes a valid and superior interest in the forfeited property, then that property shall be stricken from the final order of forfeiture. *See* 21 U.S.C. § 853(n)(6). If, however, the third-party does not establish a valid and superior interest in the property, then "the United States shall have clear title to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee." 21 U.S.C. § 853(n)(7). "Property" includes "tangible and intangible personal property, including rights, privileges, interests, claims and securities." *United States v. Singh*, 390 F.3d 168, 189 (2d Cir. 2004) (quoting 21 U.S.C. § 853(b)(2)).

Section 853(n)(2), which delineates the process for third-parties seeking to modify a final order of forfeiture and claiming an interest in forfeited property, provides, in pertinent part:

> Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property.

21 U.S.C. § 853(n)(2). A third-party petition must be filed within 30 days of either final publication of notice by the government of the forfeiture, or the claimant's receipt of

notice of the order of forfeiture, whichever is earlier.  21

U.S.C. § 853(n)(2).   Section 853(n)(3) further provides that:

> The petition shall be signed by the
> petitioner under penalty of perjury and
> shall set forth the nature and extent of the
> petitioner's right, title, or interest in
> the property, the time and circumstances of
> the petitioner's acquisition of the right,
> title, or interest in the property, any
> additional facts supporting the petitioner's
> claim, and the relief sought.

21 U.S.C. § 853(n)(3).  Thus, a petition must set forth the

legal basis and all grounds for the third-party's claimed

interest in the property, and the third-party may not later

amend the petition to assert additional grounds for relief.  21

U.S.C. § 853(n)(3); *see United States v. Soreide*, 461 F.3d 1351,

1355 (11th Cir. 2006) (citing *United States v. Strube*, 58 F.

Supp. 2d 576, 585 (M.D. Pa. 1999) (denying claims of third-

parties as untimely when those claims were not made in petitions

but in response to government's motion to dismiss)).  Courts

generally require "strict compliance" with the rules and

deadlines governing forfeiture proceedings.  *See United States

v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993) (collecting cases

applying the "strict compliance" standard to various statutory

forfeiture proceedings).

In order to advance a claim in the ancillary

proceeding, a third-party petitioner must first establish a

"legal interest" in a particular asset, pursuant to 21 U.S.C. §

11

853(n)(2). *See United States v. Timely*, 507 F.3d 1125, 1129 (8th Cir. 2007) ("[A] party seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate [a legal] interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture." (quoting *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars ($ 364,960.00) in U.S. Currency*, 661 F.2d 319, 326 (5th Cir. 1981)). "Legal interest" is not defined by federal law; rather, "[s]tate law determines a petitioner's interest in the property at issue." *Willis Mgmt.*, 652 F.3d at 242 (citing *Pacheco v. Serendensky*, 393 F.3d 348, 353-56 (2d Cir. 2004)). If a third-party petitioner possesses no legal interest under applicable state law (in this case, the law of the State of New York), the claim must be dismissed for lack of standing. *See United States v. Ribadeneira*, 105 F.3d 833, 835 (2d Cir. 1997); *Timely*, 507 F.3d at 1130; *United States v. Ovid*, No. 09-CR-216, 2012 U.S. Dist. LEXIS 80049, at *7-8 (E.D.N.Y. June 8, 2012).

Pursuant to Title 21 Section 853(n)(6), if a third-party petitioner demonstrates that the petitioner has standing, petitioner must then establish by a preponderance of the evidence at the hearing either that:

> (A) [T]he petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order

of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property . . . ; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture . . . .

21 U.S.C. § 853(n)(6)(A),(B); *see also Ribadeneira*, 105 F.3d at 834-35; *Ovid*, 2012 U.S. Dist. LEXIS 80049, at *7.

## B. Procedures in Ancillary Proceeding

Ancillary proceedings are governed by Federal Rule of Criminal Procedure 32.2(c), which provides that "the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true." Fed. R. Crim. P. 32.2(c)(1)(A); *Willis Mgmt.*, 652 F.3d at 241. "[A] motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *Pacheco*, 393 F.3d at 352. "Therefore, a petition should not be dismissed if the petitioner has stated 'enough facts to state a claim to relief that is plausible on its face.'" *Willis Mgmt.*,

13

652 F.3d at 241-42 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Additionally, all reasonable inferences must be drawn in favor of the petitioner. *See Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (stating Fed. R. Civ. P. 12(b)(6) standard). The court, however, is not required to accept "mere conclusory statements," nor is it required to accept legal conclusions that are pleaded as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

## I. The Government's Motion to Dismiss the Watts Petition

### A. The Watts Petitioners' Standing to Assert a Claim

The government first argues in its motion to dismiss the Watts Petition that neither D&B nor Watts have standing to assert a claim to the Subject Funds.[3] (*See* ECF No. 580-1, Gov.'s Mem. of Law in Supp. of Mot. to Dismiss ("Gov. Mem.") at 9-17.) The Watts Petitioners dispute that D&B and Watts lack standing to assert a claim and, instead, counter that the government lacks standing to contest the USW assignment of the Subject Funds to D&B. (*See* ECF No. 582, Mem. of Law in Opp. to Gov.'s Mot. to Dismiss ("Watts Opp.") at 1-14.) As discussed below,

---

[3] Amalgamated purports to join in the government's motion. (ECF No. 581, Mem. of Law in Opp. to Mot. by Watts Petitioners to Dismiss Amalgamated's Petition ("Amalgamated Opp.") at 24 n.3). However, because Amalgamated did not formally move to join in the government's motion, *see* Fed. R. Civ. P. 7(b), the court will only consider the government's arguments.

14

the court finds, assuming as it must for purposes of the motion,
that the allegations in the Watts Petition are true, Fed. R.
Crim. P. 32.2(c)(1)(A), that D&B and Watts each have standing to
assert a claim to the Subject Funds.

### 1. The Government's Standing to Contest the USW Assignment

The Watts Petitioners assert that because the
government is not a creditor of USW, it lacks standing to
contest the validity of the Assignment between USW and D&B.
(Watts Opp. at 6-7.)  The Watts Petitioners' cite only to the
Second Circuit decision in *Eberhard v. Marcu*, 530 F.3d 122 (2d
Cir. 2008), in support of their assertion.  In *Eberhard*, the
Second Circuit noted that "in order to set aside a fraudulent
conveyance, one must be a creditor of the transferor," and that
"those who are not injured by the transfer lack standing to
challenge it."[4]  *Id.* at 129.  The Second Circuit held that a
receiver appointed over the defendant's assets in a Securities
and Exchange Commission enforcement action could not challenge
an earlier conveyance made by the defendant because the
creditors' assets had been excluded from the receivership
estate.  *See id.* at 133.

---

[4] New York Debtor and Creditor Law defines "creditor" as "a person
having any claim, whether matured or unmatured, liquidated or unliquidated,
absolute, fixed or contingent."  N.Y. Debt. & Cred. Law § 270.

*Eberhard*, however, did not involve the application of any forfeiture statute, criminal or civil; thus, the factual and legal bases on which *Eberhard* was decided have no bearing on this case.  More importantly, the Watts Petitioners' argument that the government lacks standing to contest the validity of the Assignment runs counter to the statutory framework and purpose of the ancillary forfeiture proceeding by attempting to deprive the government of the ability to defend its interests against invalid third-party claims.  *See* 21 U.S.C. § 853(n)(5) ("The United States may present evidence and witnesses in rebuttal and in defense of its claim to the property and cross-examine witnesses who appear at the hearing.")

The Watts Petitioners' argument is also contrary to prior court decisions that have ruled for the government by rejecting third-party claims based upon fraudulent conveyances.  *See, e.g.*, *United States v. Peterson*, 820 F. Supp. 2d 576, 583 (S.D.N.Y. 2011) (rejecting third-party claim on grounds that transfers of property to third-party were fraudulent conveyances under California law); *United States v. Frykholm*, 362 F.3d 413, 417 (7th Cir. 2004) (rejecting third-party claim on grounds that transfer of security interest to petitioner was fraudulent conveyance under Wisconsin law, thereby preventing petitioner from achieving the status of bona fide purchaser for value).  Accordingly, the court rejects the Watts Petitioners' argument

that the government lacks standing to contest the validity of the Assignment.

### 2. *D&B's Standing to Pursue a Third-Party Claim*

As previously noted, in order for a third-party to have standing to make a claim to preliminarily forfeited assets, it must have a legal interest in those assets, as established by relevant state law. *Willis Mgmt.*, 652 F.3d at 242 (citing *Pacheco*, 393 F.3d at 353-56). Here, D&B claims an interest in the Subject Funds pursuant to the August 2011 Assignment of the funds by USW to the law firm for payment of past and future legal services related to Watts' criminal defense. (Watts Petition ¶ 2.)[5]

Although the Assignment states that USW "irrevocably assigns, grants, and transfer all rights, title, interest, and obligation in" the Subject Funds to D&B, (*see* Assignment ¶¶ 2-3), neither the Assignment nor the Watts Petition set forth facts upon which USW was obligated to pay the legal fees, past or present, of Watts, nor the nature of the corporate action authorizing USW to pay legal fees by way of an Assignment to D&B, executed by Dupree's "attorney in fact." (Assignment at 2.) The government contends that the Assignment is a fraudulent

---

[5] The Assignment is attached as an Exhibit to the Watts Petition, and therefore properly may be considered by the court in determining the government's motion to dismiss the Watts Petition. *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (noting that on a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference . . . .").

conveyance. (Gov. Mem. at 9-13.) If the Assignment is, in fact, a fraudulent conveyance, D&B would lack standing to make a claim to the Subject Funds. *United States v. Gallion*, No. 2:07-39-DCR, 2010 U.S. Dist. LEXIS 94786, at *71 (E.D. Ky. Sept. 10, 2010) (citing *United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1192 (9th Cir. 2004)).

Where, as in this case, the party challenging forfeiture is not the person in possession of the property at the time it was seized, but instead purports to be an assignee of the possessor, the "claimant must show that the assignment was valid, i.e. that it effectively conveyed to the assignee an interest in the subject property." *$ 364,960.00 in U.S. Currency*, 661 F.2d at 326. Whether the Assignment is a valid transfer or a fraudulent conveyance is a question of New York law. Under the New York Debtor and Creditor Law, a conveyance is fraudulent if it was both made without "fair consideration," and the transferor is, *inter alia*, "insolvent or will be rendered insolvent by the transfer in question . . . ." *Geltzer v. Artists Mktg. Corp. (In re Cassandra Group)*, 338 B.R. 583, 594 (Bankr. S.D.N.Y. 2006) (citing N.Y. Debt. & Cred. Law §§ 273, 274, 275); *see also Sharp Intl Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l Corp.)*, 302 B.R. 760, 778 (E.D.N.Y. 2003) (citing same).

Here, the government asserts that the Assignment by
USW to D&B was made without fair consideration, and that USW was
already insolvent at the time the Assignment was made. (*See*
Gov. Mem. at 10-13.)  Relying on matters outside the petition,
the government argues that USW was insolvent at the time of the
Assignment on August 11, 2011 on the basis of a conference
before the court on September 13, 2011, at which the court
voiced concern that USW was, according to the parties, "defunct"
and "not operational." (Tr. of Sept. 13, 2011 Conf. at 95-96,
Gov. Mem. Ex. A.)[6]  Although counsel for Dupree conceded that USW
was not then staffed or operating in the ordinary course of
business, counsel also insisted that USW "hasn't been shut
down," and that it was still "an operating entity" and "still
viable" insofar as its official corporate status was concerned.
(*Id.* at 96.)

Under New York law, "[a] person is insolvent when the
present fair salable value of his assets is less than the amount

---

[6] The transcript of the September 2011 conference is not part of
the "pleadings," *i.e.*, the Watts Petition.  The Second Circuit, however, has
noted that on a motion to dismiss, district courts may properly consider
matters of which judicial notice may be taken. *Halebian* v. *Berv*, 644 F.3d
122, 131 n.7 (2d Cir. 2011).  Additionally, under the "law of the case"
doctrine, a prior decision of law by this court would be binding as to the
present motions to dismiss. *Caci* v. *Laborers' Int'l Union*, Nos. 97-CV-
33A(F), 97-CV-34A(F), 1999 U.S. Dist. LEXIS 21572, at *20-21 (W.D.N.Y. Sept.
7, 1999) (noting that under the law of the case doctrine, "a decision on an
issue of law made at one stage of the case becomes binding precedent to be
followed in subsequent stages of the same litigation.").  Even assuming that
the court may properly consider the September 2011 conference transcript,
however, the court's discussion with counsel at that conference is not "law
of the case" and does not represent an adequate factual basis on which to
determine USW's solvency at the time of the Assignment.

that will be required to pay his probable liability on his existing debts as they become absolute and matured." N.Y. Debt. and Cred. Law § 271(1). Additionally, "the element of insolvency is presumed when a conveyance is made without fair consideration, and the burden of overcoming such presumption is on the transferee." *United States v. Alfano*, 34 F. Supp. 2d 827, 845 (E.D.N.Y. 1999) (citing *Snyder v. United States*, No. 88-CV-2136, 1995 U.S. Dist. LEXIS 13283, at *30-31 (E.D.N.Y. 1995)); *see also Greystone Bank v. Neuberg*, No. 10-CV-5225, 2011 U.S. Dist. LEXIS 96669, at *7 (E.D.N.Y. Aug. 25, 2011). Hence, assuming that the government established that the Assignment was made without fair consideration, the burden would then shift to D&B to overcome the presumption of insolvency.

In order to determine whether or not USW assigned the funds without fair consideration and was thus presumptively insolvent at the time of the Assignment, and whether to allow D&B to address its burden of overcoming the presumption of insolvency, the court would be required to look beyond the pleadings and to weigh evidence extrinsic to the petition regarding USW's specific debts and obligations at that time of the Assignment. Notwithstanding the court's previously expressed concern with the operational and financial status of USW, there is no basis in the pleadings or the transcript of the September 2011 conference on which to determine either whether

USW received fair consideration and was insolvent or was rendered insolvent by the Assignment.

Because the four corners of the pleadings provide no basis upon which the court may determine that USW received fair consideration for, and was in fact insolvent at the time of, the Assignment, the court declines to address the parties' arguments regarding the first element of a fraudulent conveyance: whether or not the Assignment was made for fair consideration. The court notes that the government has raised valid questions regarding the timing and circumstances under which the Assignment was executed. The petition does not explain the circumstances under which USW was obligated to pay D&B legal fees for legal serviced provided to Watts in connection with his criminal case. Nonetheless, on the basis of the information alleged in the Watts Petition and the attached Assignment which states that "good and valuable consideration" was received, the court must assume, for purposes of the government's motion to dismiss the Watts Petition, that the allegation of a valid assignment is true. The court therefore finds that the Watts Petition provides barely "enough facts to state a claim to relief that is plausible on its face," and that D&B has satisfied the pleading requirement that it have an interest in a particular, specific asset at issue. *Twombly*, 550 U.S. at 570.

3. *Watts' Standing as a Third-Party Beneficiary to the Assignment*

The Watts Petition claims that Watts has standing to pursue a claim in the ancillary proceeding as a third-party beneficiary of the Assignment from USW to D&B. (Watts Petition ¶ 6, claiming that "Petitioner Watts is a third-party beneficiary of the Assignment from USW to his counsel for payment of his legal fees and expenses in this criminal case, and had a property interest in the funds assigned for said purpose.") Under New York law, "[p]arties asserting third-party beneficiary rights under a contract must establish the existence of a valid and binding contract between other parties . . . ." *Mendel v. Henry Phipps Plaza W., Inc.*, 844 N.E.2d 748, 751 (N.Y. 2006) (citation omitted); *see also Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 324 (2d Cir. 2010) (holding that plaintiff could not prevail as a third-party beneficiary where contract was not valid). The government here argues that the Assignment does not constitute a contract. (*See* Gov. Mem. at 15-17.)

The Assignment purports to assign USW's interest in the Subject Funds to D&B in exchange for past and future legal services rendered to Watts. (*See* Assignment ¶ 2.) The Assignment also states the parties' intent that D&B's legal services be "deemed good and valuable consideration received"

22

for the assignment of the Subject Funds. (*Id.*) Notwithstanding the government's arguments to the contrary, and the government's doubts about the genesis of the Assignment, the court must accept at this juncture that the Assignment was a valid contract. *See In re Asia Global Crossing, LTD.*, 344 B.R. 247, 252 (Bankr. S.D.N.Y. 2006) ("[C]ontract law does not concern itself with the relative value of what the parties exchanged, and will enforce a bad bargain.") Therefore, the court again finds, for purposes of the government's motion to dismiss Watts and D&B's claims, that the Watts Petition states barely "enough facts to state a claim to relief that is plausible on its face" with regard to Watts' standing to bring a claim as a third-party beneficiary to the Assignment between USW and D&B. *Twombly*, 550 U.S. at 570.

**B.  The Watts Petitioners' Claim to a Superior Legal Interest in the Subject Funds Pursuant to 21 U.S.C. § 853(n)(6)**

The government further asserts that the Watts Petition must be dismissed because D&B cannot demonstrate a superior legal interest in the Subject Funds pursuant to Section 853(n)(6)(A) or (B). (*See* Gov. Mem. at 17-25.) The Watts Petitioners counter that their petition satisfies the superior legal interest requirements of Section 853(n)(6)(A) and (B). (*See* Watts Opp. at 14-25.) As set forth below, the court finds that the Watts Petitioners do not and cannot demonstrate a

23

superior legal interest in the Subject Funds pursuant to Section 853(n)(6)(A) or (B) and, consequently, the entire Watts Petition must therefore be dismissed.

>    1.    *D&P Cannot Demonstrate Priority of Ownership Under Section 853(n)(6)(A)*

In order for the Watts Petitioners to prevail under Section 853(n)(6)(A), D&B must be able to demonstrate that it had a priority of ownership of the Subject Funds at the time of the criminal offenses, which offenses were proven during the trial to have occurred between 2007 and 2010.[7]  21 U.S.C. § 853(n)(6)(A).  Under the relation-back doctrine, "title to the forfeited property vests in the United States at the time of the defendant's criminal act." *Timley*, 507 F.3d at 1130; 21 U.S.C. § 853(c) ("All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section."); *see also Caplin & Drysdale v. United States*, 491 U.S. 617, 627 (1989) ("[Section] 853(c) reflects the application of the long-recognized and lawful practice of vesting title to any forfeitable assets, in the United States, at the time of the criminal act giving rise to forfeiture.").  D&B cannot possibly demonstrate a superior legal interest in the Subject Funds because the Assignment under which D&B claims its interest was

---

[7] Because Watts' alleged interest in the Subject Funds is as a third-party beneficiary to the Assignment between USW and D&B, the validity of his claim necessarily depends on the validity of D&B's claim.

executed on August 11, 2011, a year after the defendants were indicted, and almost four years after the start of the conspiracy for which Dupree was convicted and Watts stands to be tried. *See United States v. Monea Family Trust I*, 626 F.3d 271, 276 (6th Cir. 2010) (noting trial court ruling that government's interest in property vested on date on which conspiracy began); *United States v. McClung*, 6 F. Supp. 2d 548, 552 (W.D. Va. 1998) (looking to ownership of property at issue as of the beginning of drug conspiracy). D&B's claim that it acquired priority of ownership at the time of the offenses of conviction is plainly belied by the fact that the Assignment was not executed until August 11, 2011. (*See* Watts Petition ¶ 2.) Therefore, because Dupree's criminal act predated the Assignment, the relation-back doctrine vests title in the Subject Funds with the United States as of the start of the conspiracy to commit bank, mail, and wire fraud.

The Watts Petitioners respond by invoking two cases in which courts have recognized exceptions to the relation-back doctrine's rule: *Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236 (2d Cir. 2011), and *United States v. Shefton*, 548 F.3d 1360 (11th Cir. 2008). (Watts Opp. at 15-17.) However, the holdings of *Willis Management* and *Shefton* are distinguishable from the facts of this case. Both of those cases held that a third-party petitioner can demonstrate a superior legal interest

under Section 853(n)(6)(A) where the petitioner can establish the existence of a constructive trust for the benefit of a victim of crime. *Willis Mgmt.*, 652 F.3d at 245 ("[I]t is the law of this Circuit that a constructive trust qualifies as a 'legal . . . interest' for the purposes of § 853(n)(6)(A).") (citation omitted); *Shefton*, 548 F.3d at 1367 ("[W]e agree with the majority of circuits that have held that a constructive trust can serve as a superior legal interest under § 853(n)(6)(A) and thus can serve as grounds for invalidating a criminal forfeiture order.")  In *Willis Management*, the Second Circuit also directed that "district courts should evaluate whether a constructive trust should be recognized pursuant to the applicable state law and based on the facts of the particular case at issue."  652 F.3d at 245.

In order to establish a constructive trust, New York law requires four elements: "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment." *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 362 (2d Cir. 1999) (quoting *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121 (1976)).  The Watts Petitioners could not and do not assert that they should be the beneficiaries of a constructive trust.  Moreover, the facts of this case do not support recognizing a constructive trust for the benefit of the Watts Petitioners pursuant to New York law.

Additionally, third-party petitioners cannot possibly establish a pre-existing interest in property adjudged to be the proceeds of crime because criminal proceeds, and the government's vested interest therein, necessarily only come into existence once a crime occurs. *See United States v. Hooper*, 229 F.3d 818, 821-22 (9th Cir. 2000) (holding that Section 853(n)(6)(A) "is likely never to apply to proceeds of the crime" given that the proceeds cannot exist before commission of the crime); *see also Timely*, 507 F.3d at 1130 ("As the court in *Hooper* explained, the proceeds of an offense do not exist before the offense is committed, and when they come into existence, the government's interest under the relation-back doctrine immediately vests."); *United States v. Eldick*, 223 Fed. Appx. 837, 840 (11th Cir. 2007) ("In order to have a superior interest, then, the claimant must have had a legal right, title, or interest in the forfeitable properties that *preceded* the commission of the crime that gave rise to the forfeiture of that property."); *United States v. Watkins*, 320 F.3d 1279, 1282 (11th Cir. 2003).

Here, the Subject Funds to which D&B claims a priority of interest were found by the jury to represent the proceeds of Dupree's fraud conspiracy and fraud against Amalgamated, which began years before the Assignment was executed. (*See* Jury Verdict at 1-3; Special Verdict Sheet for Forfeiture at 3(a)-

(d).)  Accordingly, the Watts Petitioners cannot claim an interest in the Subject Funds that precedes the point at which the government's interest in the funds vested.

The Watts Petitioners therefore cannot establish a claim to the Subject Funds under Section 853(n)(6)(A).

### 2.    *D&P Cannot Establish a Claim Under Section 853(n)(6)(B)*

In order to prevail under Section 853(n)(6)(B), D&B must demonstrate both that it is a bona fide purchaser for value of the Subject Funds, and that at the time of the purchase it was reasonably without cause to believe that the Subject Funds were subject to forfeiture.  21. U.S.C. § 853(n)(6)(B); *Pacheco*, 393 F.3d at 353.

The government contends that even if the Watts Petition adequately alleges the existence of an antecedent debt owed by USW/GDC to D&B, the law firm still would not qualify as a "purchaser" within the meaning of Section 853(n)(6)(B) because a creditor who claims receipt of property in satisfaction of an antecedent debt cannot be said to have given anything of "value" in exchange for the property.  (Gov. Mem. at 19-20 (citing *United States v. BCCI Holdings (Lux.), S.A.*, 69 F. Supp. 2d 36, 62 (D.D.C. 1999); *United States v. Caro*, No. 08-20044-CR, 2010 U.S. Dist. LEXIS 15538, at *14-16 (S.D. Fla. Jan. 22, 2010), adopted by 2010 U.S. Dist. LEXIS 15536.))

The government also contends that D&B cannot qualify as a "purchaser" based upon the provision in the Assignment that D&B took an interest in the Subject Funds in exchange for future legal services owed to Watts because, at the time of the Assignment, D&B had already billed Watts an unpaid amount in excess of the value of the Subject Funds. The government thus argues that because the funds would be exhausted by the payment of past legal services, D&B's promise to provide legal services in exchange for the funds was meaningless. (Gov. Mem. at 20. (citing ECF No. 543, Ltr. at 8-9 n.8); Assignment ¶ 2.)

Conversely, the Watts Petitioners argue that the Assignment between USW and D&B for the rendering of past and future legal services for Watts' defense satisfies the bona fide purchaser for value requirement under New York law. (Watts Opp. at 17-19 (citing *Swift v. Tyson*, 41 U.S. 1, 11-14 (1842); *Frykholm*, 362 F.3d at 416; N.Y. U.C.C. § 1-201(44)).)

Even assuming D&B's purported ability to establish that the Assignment was made in partial satisfaction of an obligation by USW and GDC to advance funds for Watts' legal defense, thereby rendering the firm a bona fide purchaser for value, the court cannot accept D&B's conclusory allegations that it was reasonably without cause to believe that the Subject Funds were subject to forfeiture. Watts and D&B have been on notice that the Subject Funds were forfeitable since learning of

the government's initial seizure of the funds in July of 2010.
Moreover, the Watts Petitioners were further notified that the
funds were forfeitable upon the initial indictment of Watts on
August 13, 2010, which included a forfeiture count, and the
government's filing of a bill of particulars on February 22,
2011. (ECF No. 118.) Thus, D&B has had notice that the funds
were forfeitable since well before the execution of the
Assignment on August 11, 2011.

As the Supreme Court's 1989 decision in *Caplin &
Drysdale* noted, "given the requirement that any assets which the
Government wishes to have forfeited must be specified in the
indictment, the only way a lawyer could be a beneficiary of §
853(n)(6)(B) would be to fail to read the indictment of his
client." 491 U.S. at 633 n.10 (internal citation omitted); *see
also United States v. Monsanto*, 491 U.S. 600, 604 n.3 (1989)
("An attorney seeking a payment of fees from forfeited assets
under § 853(n)(6) would presumably rest his petition on
subsection (B) . . . though, . . . it is highly doubtful that
one who defends a client in a criminal case that results in
forfeiture could prove that he was 'without cause to believe
that the property was subject to forfeiture.'"); *Timely*, 507
F.3d at 1131 (satisfying the "reasonably without cause to
believe" element "creates a problem for defense attorneys who
perform services in return for criminal proceeds."); *FTC v.*

*Assail, Inc.*, 410 F.3d 256, 266 (5th Cir. 2005) ("[T]he mere fact that an attorney has read the indictment against his client is enough to put him on notice that his fees are potentially tainted and to destroy his status as a bona fide purchaser for value."); *United States v. McCorkle*, No. 98-CR-52-ORL-19C, 2000 WL 133759, at *3 (M.D. Fla. Jan. 14, 2000) ("It is unlikely that an attorney will ever achieve the status of a bona fide purchaser for value under 21 U.S.C. § 853(n)(6)(B) because he is the person most likely to appreciate the forfeitability of his client's assets.").

The Watts Petitioners allege that because the Assignment on August 11, 2011 was made after the court's July 27, 2011 order regarding the May 2011 *Monsanto* hearing held before Magistrate Judge Azrack, D&B was "reasonably without cause" to believe that $633,499.24 of the Subject Funds were not subject to forfeiture. (*See* Watts Petition ¶¶ 3-4; Watts Opp. at 19-21.) According to the Watts Petitioners, the court's July 27, 2011 order determined that "the government had no right to restrain $633,499.24 of the USW Chase Funds because the government had failed to show probable cause that those funds were subject to forfeiture." Thus, D&B asserts that it was thereafter reasonably without cause to believe that the funds were subject to forfeiture. (*Id.* at 19.) The Watts Petitioners substantially misconstrue both the significance of the court's

July 27th order, and the scope and purpose of a *Monsanto* hearing.

In *United States v. Monsanto*, the Second Circuit concluded that, "the fifth and sixth amendments, considered in combination, require an adversary, post-restraint, pretrial hearing as to probable cause that . . . the properties specified as forfeitable in the indictment are properly forfeitable, *to continue a restraint of assets* . . . needed to retain counsel of choice . . . ." 924 F.2d at 1203 (emphasis added). The Second Circuit made a clear distinction between pretrial "restraint" and post-conviction forfeiture. *See id.* at 1198 ("If the government determines in any case that an adversary hearing in advance of a criminal trial is inadvisable, it always has the option of forgoing the restraint and obtaining forfeiture after conviction."); *see also id.* at 1202 ("[T]he sole purpose of [§ 853's] restraining order . . . provision is to preserve the status quo, i.e., to assure the availability of the property pending disposition of the criminal case.") (quoting *Monsanto*, 491 U.S. at 613).

Thus, the scope of this court's ruling as to the continued seizure of assets by the government following a *Monsanto* evidentiary hearing is far more limited than the Watts Petitioners contend; this court's ruling did not and could not constitute a determination as to the ultimate forfeitability of

restrained assets.  The Second Circuit confirmed as much when it dismissed Watts' appeal and noted that, "[t]he district court's finding that the government lacked probable cause to continue to *restrain* the funds at issue did not bar the government from seeking the forfeiture of the funds following a trial based on a preponderance of the evidence standard."  *Watts*, 477 Fed. Appx. at 817 (emphasis added).  Consequently, the court's July 27, 2011 post-indictment, pretrial order following the *Monsanto* hearing did not foreclose the ultimate forfeitability of the Subject Funds pursuant to a jury determination after the government's full presentation of evidence at trial, nor could the court have done so at that juncture.

Additionally, the two cases cited by the Watts Petitioners do not support their argument that D&B was reasonably without cause to believe that the Subject Funds were forfeitable at the time the Assignment was executed.[8]  The first case, *United States v. Southern P. R. Co.*, 184 U.S. 49 (1902), dealt with the application of congressional statutes "passed for the purpose of upholding the titles of parties who in good faith had purchased from railroad companies lands, which though supposed to be part of their grants, proved not to be so."  *Id.* at 52.  The Supreme Court held that "[a] party may have notice of conflicting claims and still, in the exercise of an honest

---

[8] The Watts Petitioners also here invoke *Pacheco v. Serenensky*, 348 F.3d 348, which case the court addresses in detail *infra* Section I.B.3.

judgment as to the rightful owner, buy property and pay for it, and be acting in good faith," as a bona fide purchaser. *Id.* at 54. By contrast, in this case, D&B knew well before the time of the Assignment that the government intended to forfeit the funds upon the conviction of any of the named defendants.

The second case, *Nat'l Credit Union Admin. Bd. v. Johnson*, 133 F.3d 1097 (8th Cir. 1998), dealt with a civil enforcement action as part of a bankruptcy under the Federal Credit Union Act. *See id.* at 1099. The Eighth Circuit held that "an insolvent debtor in a bankruptcy proceeding may pay a nonrefundable retainer to attorneys of his choice for representation if the amount paid is reasonable and is not taken from assets that the law firm either knew or should have known were secured at the time they were paid." *Id.* at 1103. The court, therefore, found that a law firm acted in good faith in accepting a client's retainer when it reasonably relied upon representations that the assets were unencumbered. *Id.*

The court first notes that neither of these cases involved a forfeiture statute; thus, their application to this case is questionable. Second, as previously discussed, the clearly established legal scope and significance of the court's July 27, 2011 *Monsanto* order precluded any "good faith" or reasonable belief on the part of D&B that the Subject Funds were no longer subject to forfeiture. The Supreme Court noted in

*Caplin & Drysdale* that, as it explained in its *Monsanto* decision, a district judge's exercise of its discretion in refusing to enter a pretrial restraining order did not "'immunize' nonrestrained assets from subsequent forfeiture under § 853(c), if they are transferred to an attorney to pay legal fees." 491 U.S. at 623. Thus, the Watts Petitioners cannot have reasonably believed that this court's pretrial *Monsanto* decision immunized the Subject Funds from subsequent forfeiture, even if they were assigned to D&B in payment of past and future legal fees. As seasoned criminal defense lawyers and former federal prosecutors, D&B's counsel knew, or reasonably should have known, that this court's post-*Monsanto* hearing decision, that the government had not shown probable cause to continue the seizure of certain funds, could not and did not immunize the funds from a subsequent forfeiture. Furthermore, the evidence presented at the *Monsanto* hearing was far narrower than the evidence presented at trial and at the subsequent forfeiture phase of the trial. The court's *Monsanto* decision determined that the government had not shown sufficient probable cause to continue its pretrial seizure of the funds based on the more limited evidence at the hearing.[9]

---

[9] Nor does the government's decision not to appeal the court's July 27, 2011 order make any more reasonable D&B's belief that the Subject Funds were no longer subject to forfeiture. (*See* Watts Opp. at 20.) The legal significance of a court's decision cannot be contingent upon a party's subsequent response to it.

In light of the above, D&B cannot establish that it was reasonably without cause to believe that the Subject Funds were forfeitable at the time the Assignment was executed. Accordingly, D&B, as well as Watts as third-party beneficiary of the Assignment, have failed to state a plausible claim to the Subject Funds under Section 853(n)(6)(B).

### 3. *All Property Involved in the Instant Criminal Offense is Forfeitable*

Lastly, the Watts Petitioners argue that in an ancillary proceeding, the government may obtain forfeiture of property only insofar as the criminal defendant actually owns the property. (*See* Watts Opp. at 22-25.) The Watts Petitioners specifically argue that Dupree did not personally have any ownership interest in the Subject Funds, and that the funds were instead owned by USW, an entity which is not a defendant in the criminal case. (*See id.* at 15-17, 22.) Therefore, the Watts Petitioners argue, the government may not take the Subject Funds by forfeiture.

The court is not persuaded by this argument for several reasons. First, the primary case on which the Watts Petitioners rely for this argument, *Pacheco v. Serendensky*, is entirely distinguishable from this case. In *Pacheco*, the Second Circuit held that, under Section 853, the government could only acquire by forfeiture criminal defendant Serendensky's partial

ownership interest in a piece of real property, not the entire property, which included an interest owned by Serendensky's uncharged spouse. *See* 393 F.3d at 355-56. The primary concern of the *Pacheco* court, which is not at issue here, was whether 21 U.S.C. § 853 permits partial forfeiture of real property. *See id.* at 354 ("We are therefore required to determine whether the criminal forfeiture statute permits partial forfeitures of real property."). Further, the Second Circuit's conclusion that the statute does permit partial forfeitures of real property was largely premised on the fact that the indictment and notice of pendency referred only to the government's intent to obtain by forfeiture "the interest of defendant John Serendensky," and were silent as to the remaining interest owned by Serendensky's spouse. *See id.* at 355 ("[W]e conclude that Serendensky -- *consistent with the government's notice of pendency as well as the information to which Serendensky pleaded* -- could only have forfeited his interest in the Premises.") (emphasis added).

By contrast, in the instant case, the government consistently and expressly has sought forfeiture of all of the Subject Funds as "property constituting, or derived from, any proceeds" obtained, directly or indirectly, as the result of Dupree's offenses, not merely his interest in those funds. 21 U.S.C. § 853(a)(1). The government sought the funds as proceeds of the fraud, not as Dupree's property. *Pacheco* is therefore

factually distinguishable from this case. That case neither limits the forfeitability of the Subject Funds, nor does it suggest that D&B's belief that the funds were no longer subject to forfeiture was reasonable.

Second, the Watts Petitioners' argument that the *in personam* nature of criminal forfeiture limits forfeiture to assets owned by Dupree is unsupported by the law. (*See* Watts Opp. at 22-25.) The Watts Petitioners point to the Advisory Committee Notes to Fed. R. Crim. P. 32.2, which provide, "[t]he notion that the 'extent' of the defendant's interest must be established as part of the criminal trial is related to the fact that criminal forfeiture is an *in personam* action in which only the defendant's *interest* in the property may be forfeited." Fed. R. Crim. P. 32.2 Advisory Committee Notes (2000) (emphasis added). Here, however, the Dupree jury found at the close of the criminal trial by a preponderance of the evidence that the USW Subject Funds are property "constituting or derived from proceeds traceable to the offenses in the Superseding Indictment for which we returned a verdict of guilty as to Courtney Dupree." (Special Verdict Sheet for Forfeiture ¶ 3.a-d.) Therefore, the *in personam* nature of criminal forfeiture changes nothing where, as here, the jury has already found by a preponderance of the evidence that the Subject Funds constitute or are derived from proceeds traceable to the offenses for which

Dupree has been convicted. *See De Almeida v. United States*, 459 F.3d 377, 381 (2d Cir. 2006) ("The statutory wording makes sufficiently clear that criminal forfeiture is not a measure restricted to property owned by the criminal defendant; it reaches *any* property that is 'involved' in the offense.") (emphasis in original); 21 U.S.C. § 853(a)(1).

The Watts Petitioners' argument that forfeiture is limited to property in which Dupree owns or has an interest is also contradicted by the clear language of the forfeiture statute. 21 U.S.C. § 853(a)(1) (explaining that forfeitable property includes "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation"); *see also Monsanto*, 491 U.S. at 607 ("[Section] 853(a) provides that a person convicted of the offenses charged in respondent's indictment 'shall forfeit . . . any property' that was derived from the commission of these offenses. After setting out this rule, § 853(a) repeats later in its text that upon conviction a sentencing court 'shall order' forfeiture of all property described in § 853(a). Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied, or broader words to define the scope of what was to be forfeited.") Indeed, the Second Circuit has already confirmed in this case that "[c]riminal forfeiture is not a measure

restricted to property owned by the criminal defendant . . . ."
*Watts*, 477 Fed. Appx. at 817-818 (quoting *De Almeida*, 459 F.3d
at 381); *see also De Almeida*, 459 F.3d at 381 (criminal
forfeiture "reaches *any* property that is 'involved' in the
offense.") (emphasis in original); *United States v. Grossman*,
501 F.3d 846, 849 (7th Cir. 2007) ("The interests subject to
forfeiture encompass all the fruits of a defendant's crimes,
including assets held in the name of third parties.") (citing 21
U.S.C. § 853(c)).

Moreover, if a petition sufficiently alleges a claim
pursuant to Section 853(n), the burden of demonstrating a
petitioner's ownership of or right, title, or interest in
property included in a preliminary order of forfeiture is
"ultimately on the petitioner to prove . . . by a preponderance
of the evidence," rather than on the government. *Pacheco*, 393
F.3d at 351; *United States v. Nava*, 404 F.3d 1119, 1125 (9th
Cir. 2005) ("The petitioner bears the burden of proving his
right, title, or interest under § 853(n)(6)."). Thus, had their
petition survived the government's motion, the Watts Petitioners
would have the burden of establishing by a preponderance of the
evidence that they have a superior interest in the Subject Funds
pursuant to Section 853(n), which they cannot do. *See De
Almeida*, 459 F.3d at 381 ("An ancillary proceeding is evidently
the *only* avenue for a post-indictment third-party claim to

40

forfeited property . . . .") (emphasis in original); *see also* 21 U.S.C. § 853(k)(1) ("[N]o party claiming an interest in property subject to forfeiture . . . may intervene in a trial or appeal of a criminal case involving the forfeiture of such property . . . .").

Third, the cases cited by the Watts Petitioners for the argument that the government may only take by forfeiture property that is owned by Dupree are outdated or distinguishable from this case. To start, *United States v. Gilbert*, 244 F.3d 888 (11th Cir. 2001), and *United States v. O'Dell*, 247 F.3d 655 (6th Cir. 2001), are both premised upon a version of the Federal Rules of Criminal Procedure which predated the enactment of Rule 32.2 in 2000. Under then-Rule 31(e), which no longer exists, some courts, including *Gilbert* and *O'Dell*, required the jury to return a special verdict "as to the extent of the interest of the property" to be forfeited by a criminal defendant. *See* Fed. R. Crim. P. 31(e) (1994); *Gilbert*, 244 F.3d at 923 (holding that jury's verdict was "fatally deficient" where jury did not find "the extent of the interest or property subject to forfeiture, if any" pursuant to Rule 31(e)); *see O'Dell*, 247 F.3d at 680 ("[W]e must determine what, if any, interest Defendant had in the property that the government now claims."); *see also United States v. McKeithen*, 822 F.2d 310, 312 (2d Cir. 1987) (noting application of then-Rule 31(e) to criminal forfeiture

proceedings).  Current Rule 32.2 contains no such requirement.
*See generally* Fed. R. Crim. P. 32.2.  Therefore, to the extent
that *Gilbert* and *O'Dell*, can be read as holding that the
government must establish in an ancillary proceeding that a
criminal defendant personally owns the forfeited property, that
requirement was excised by Rule 32.2.[10]  *See United States v.*
*Marion*, 562 F.3d 1330, 1341 (11th Cir. 2009) ("The forfeiture
order at issue in *Gilbert*, however, was entered in 1990 . . .
before . . . the 2000 adoption of Rule 32.2 . . . .").

     The Watts Petitioners citation to *United States v.*
*Jones*, 502 F.3d 388, 392 (6th Cir. 2007), for the proposition
that the government can acquire through forfeiture no greater
interest than that owned by the defendant at the time the
criminal acts were committed is at odds with unambiguous Second
Circuit precedent to the contrary.  *See De Almeida*, 459 F.3d at
381 ("[t]he statutory wording makes sufficiently clear that
criminal forfeiture is not a measure restricted to property
owned by the criminal defendant . . . ."); *see also Watts*, 477
Fed. Appx. at 817-818; *United States v. Rosario*, 111 F.3d 293,
301 (2d Cir. 1997) ("21 U.S.C. § 853(a), expressly authorizes
the forfeiture of property derived from or used to facilitate
*any* violation of Title 21." (emphasis in original)).  The

_____

     [10] As the Watts Petitioners note, (Watts Opp. at 23), the Second
Circuit cites to *O'Dell* in *Pacheco*.  393 F.2d at 356.  As previously
discussed, however, *Pacheco* is factually distinguishable from this case and
pre-dates *De Almeida*.

remaining cases cited by the Watts Petitioners merely support
the view that "the criminal forfeiture statute 'permits the
forfeiture of the defendant's interests only, *not the property
of innocent parties.'*" *United States v. Grossi*, 482 Fed. Appx.
252, 255 (9th Cir. 2012) (quoting *Nava*, 404 F.3d at 1124
(emphasis added)); *see also United States v. Huntington Nat'l
Bank*, 682 F.3d 429, 433 (6th Cir. 2012) (discussing how
ancillary proceedings function to protect the rights of third
parties with superior interests to funds subject to forfeiture);
*United States v. Totaro*, 345 F.3d 989, 995 (8th Cir. 2003);
*United States v. Egan*, 811 F. Supp. 2d 829, 838 (S.D.N.Y. 2011).
Indeed, the purpose of the ancillary proceeding is to ensure
that the superior property interests of third-parties are not
forfeited to the government.

　　　　For the reasons discussed above, the court finds that
the Watts Petition fails to state a plausible claim to the
Subject Funds pursuant to both Sections 853(n)(6)(A) and
853(n)(6)(B), and that the government's motion to dismiss the
Watts Petition is therefore granted.

## II. <u>Watts Petitioners' Cross-Motion for Judgment on the Pleadings</u>

　　　　In their papers in opposition to the government's
motion to dismiss their third-party petition, the Watts
Petitioners also cross-move against the government for judgment

on the pleadings.  (Watts Opp. at 25-26.)  Because the court has already granted the government's motion to dismiss the Watts Petition on the basis that the petition fails to state a plausible claim, *supra*, the Watts Petitioners' cross-motion for judgment on the pleadings against the government must accordingly be denied.  However, even assuming that the court had not already dismissed the Watts Petition, the cross-motion for judgment on the pleadings would also be denied because it is procedurally improper and premature.

The Advisory Committee notes to Federal Rule of Criminal Procedure 32.2(c) state that "procedures akin to those available under the Federal Rules of Civil Procedure should be available to the court and the parties to aid in the efficient resolution of the claims" involving criminal forfeitures.  Fed. R. Crim. P. 32.2 Advisory Committee's Note.  Therefore, the Watts Petitioners argue, a motion for judgment on the pleadings akin to that provided for by Federal Rule of Civil Procedure 12(c) may be appropriate in certain ancillary forfeiture proceedings under Federal Rule of Criminal Procedure 32.2(c).

Practically speaking, however, a decision by the court to award the Subject Funds to a party on the basis of that party's petition alone would divest the government (and any other third-party petitioner) of the right to test the factual and legal bases for that party's claim to the funds at the

ancillary proceeding. *See Pacheco*, 393 F.3d at 351 ("At [the ancillary proceeding], both the petitioner and the government are entitled to present evidence, with the burden ultimately on the petitioner to prove her claim by a preponderance of the evidence.") (internal citations omitted); *see also* 21 U.S.C. § 853(n)(5)-(6). Additionally, although Rule 32.2(c) does not specifically include a Federal Rule of Civil Procedure 12(c) analog, it does explicitly provide that motions may be made under Federal Rule of Civil Procedure 56 following the close of discovery. Fed. R. Crim. P. 32.2(c)(1)(B). Because the Watts Petition constitutes one of three competing claims to the Subject Funds, the court would have no factual basis on which to grant judgment on the pleadings in favor of the Watts Petitioners prior to the completion of discovery as to the competing claims, and the potential subsequent motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Therefore, the court finds that, even had the court not dismissed the Watts Petitioners' claims, the Watts Petitioners' cross-motion for judgment on the pleadings must be denied as being procedurally improper or premature.

## III. Watts Petitioners' Motion to Dismiss Amalgamated's Petition

### A. Amalgamated's Standing to Assert a Claim

The Watts Petitioners' argue first that the Amalgamated Petition should be dismissed for lack of standing.

(*See* ECF No. 579-1, Mem. in Supp. of Mot. to Dismiss Amalgamated Petition ("Watts Mem.") at 7-13.)  The Watts Petitioners specifically claim that the Amalgamated Petition fails to establish the bank's interest in "a particular, specific asset, as opposed to a general interest in" the Subject Funds pursuant to Section 853(n).  (*Id.* at 7 (quoting *Ribadeneira*, 105 F.3d at 836).)  Amalgamated counters that it has standing to assert a legal interest in particular assets on the basis of a security interest in the Subject Funds arising from the loan documents and guarantees previously executed between Amalgamated, GDC, and the Borrower Subsidiaries.  (*See* Amalgamated Opp. at 14.)  As discussed below, even if the Watts Petition had not been dismissed, the court agrees that the Amalgamated Petition sufficiently asserts an interest in particular assets to confer standing upon Amalgamated to pursue its claim in the ancillary proceeding.

The Amalgamated Petition claims the existence of a security interest in the Subject Funds based upon: a Revolving Credit and Term Loan Agreement in the amount of $21,000,000 dated August 29, 2008; a Revolving Credit Note in the amount of $18,500,000; a Term Loan Note in the amount of $2,500,000; a Guarantee on the Revolving Credit and Term Loan Agreement dated August 29, 2008 executed by GDC; a Security Agreement on the Revolving Credit and Term Loan Agreement by the Borrower

46

Subsidiaries dated August 29, 2008; two Guarantees on the Revolving Credit and Term Loan Agreement dated July 29, 2010 executed by Image Lighting Services LLC and TDC Acquisitions LLC; and a Security Agreement by Image Lighting Services LLC and TDC Acquisitions LLC on the Revolving Credit and Term Loan Agreement dated July 29, 2010. (*See* Amalgamated Petition ¶ 3; Amalgamated Opp. Exs. A-A—A-H.) The Amalgamated Petition asserts that these agreements give rise to Amalgamated's first-priority right, title, and interest in the Subject Funds.[11] (*Id.* ¶ 4.)

Indeed, the August 29, 2008 Security Agreement ("2008 Security Agreement") between Amalgamated and the Borrower Subsidiaries grants Amalgamated "a security interest in, all of the right, title and interest of the [Borrower Subsidiaries] in,

---

[11] As set forth in the Amalgamated Petition, this same claim is also the subject of a lawsuit commenced by Amalgamated on August 4, 2010 in the Supreme Court of New York, New York County, titled *Amalgamated Bank v. JDC Lighting LLC, et al.*, Index No. 651184/10 (the "State Court Action"), against, among others, GDC, USW, the Borrower Subsidiaries, Dupree, and Watts. (Amalgamated Petition ¶ 4; *see also* Amended State Court Action Compl., Amalgamated Opp. Ex. A.) The same day on which the State Court Action was commenced, Justice Shirley Werner Kornreich issued an order imposing restraints on transfers of funds by the named defendants and "all persons or entities controlled by any of them . . . ." (Order to Show Cause ¶ 9, Amalgamated Opp. Ex. C.) The court take no position on the final adjudication of the State Court Action before Justice Kornreich; however, the court acknowledges that action insofar as the Amended Complaint in that action further delineates the legal basis for Amalgamated's claim to the Subject Funds and is referenced in this case. (*See generally* Amalgamated Petition ¶ 4.)

The Amended Complaint and various loan documents from Amalgamated related to the State Court Action may properly be considered by the court as part of the instant motion to dismiss because they are specifically referenced by, and therefore incorporated into, the Amalgamated Petition. (*See* Amalgamated Petition ¶¶ 3, 4); *Brass*, 987 F.2d at 150.

to and under the Collateral." (2008 Security Agreement § 2(a),
Amalgamated Opp. Ex. A-F.) The 2008 Security Agreement defines
"Collateral" as including "all personal property of every kind
and nature, wherever located, whether now owned or hereafter
acquired or arising, and all Proceeds and products thereof,
including . . . Accounts Receivable, . . . Deposit Accounts . .
. and . . . other property owned or held by or on behalf of [the
Borrower Subsidiaries] . . . ." (*Id.* § 1(b).) Additionally,
the Amended State Court Action Complaint, which is incorporated
in the Amalgamated Petition by reference, alleges that "[the
Borrower Subsidiaries] gave Amalgamated a duly perfected first-
priority lien on the Collateral." (Amended State Court Action
Compl. ¶ 34.) As further detailed in the following section,
Amalgamated has claimed a specific interest in the Subject Funds
on the basis of the loan agreements and related documents
entered into between the bank and the Borrower Subsidiaries, and
GDC as guarantor.

The court agrees with Amalgamated that the petition
and the documents referenced in the Amalgamated Petition,
sufficiently establish the bank's claim to the specific assets
constituting the Subject Funds. *See Ribadeneira*, 105 F.3d at
836 (distinguishing between parties with general interests in
assets insufficient to confer standing, and parties with a
security interest attached to specific funds sufficient to

confer standing).  Assuming, as the court must, that the facts set forth in the Amalgamated Petition are true, Amalgamated has pleaded an interest in specific assets sufficient to confer standing to pursue a claim to the Subject Funds.  Fed. R. Crim. P. 32.2(c)(1)(A); *Willis Mgmt.*, 652 F.3d at 241.

### B.    Amalgamated's Petition Satisfies the Pleading Requirements of 21 U.S.C. § 853(n)

The Watts Petitioners further argue that the Amalgamated Petition fails to plead any facts showing that it has a lien or other property right or security interest in the Subject Funds, and that Amalgamated therefore does not state a plausible claim of a superior right to the funds pursuant to Section 853(n).  (*See* Watts Mem. at 10.)  Amalgamated counters that it has a security interest in the Subject Funds pursuant to the 2008 Security Agreement between Amalgamated and the Borrower Subsidiaries, whereby the collateral of the Borrower Subsidiaries was pledged to Amalgamated.  (*See* Amalgamated Opp. at 5.)

The court agrees that the Amalgamated Petition adequately pleads a plausible superior claim to the Subject Funds pursuant to Section 853(n), and that the Watts Petitioners' motion to dismiss the Amalgamated Petition must therefore be denied.  On the basis of the loan documents between Amalgamated and the Borrower Subsidiaries and GDC, Amalgamated

argues four possible grounds on which its petition makes a cognizable claim to a superior interest in the Subject Funds: (1) the loan documents create a security interest in the subject funds; (2) Amalgamated holds a security interest as proceeds of collateral; (3) Amalgamated holds a legal interest in the funds pursuant to a constructive trust; and (4) Amalgamated holds an equitable lien on the funds. (*See* Amalgamated Opp. at 14, 16, 21, 23.) The court finds that Amalgamated's first two arguments regarding its petition satisfy the pleading requirements of Section 853(n).[12]

> ### 1. *The Loan Documents Grant Amalgamated a Security Interest in the Subject Funds*

There is no question that USW is not a Borrower Subsidiary, and that it was never directly involved in the making of any loan agreements between Amalgamated, GDC, and the Borrower Subsidiaries. Both parties also agree that the USW Chase Bank accounts comprising the Subject Funds were never the direct recipient of loan proceeds from Amalgamated. (*See* Watts Mem. at 15; Amalgamated Opp. at 17.) The Watts Petitioners therefore argue that Amalgamated "has failed to plead any facts showing that it has a lien or other property right or security

---

[12] Amalgamated's third argument, that it holds a legal interest in the funds pursuant to a constructive trust, and fourth argument, that it holds an equitable lien on the funds, are neither included in nor referenced to in the Amalgamated Petition. The court therefore declines to address these arguments; however, Amalgamated's first two arguments, as reflected in the Amalgamated Petition, are sufficient to satisfy the pleading requirements of Section 853(n).

interest in the [Subject Funds], let alone enough facts to state a plausible claim of a vested or superior right in the [Subject Funds]." (Watts Mem. at 10.)

Pursuant to the 2008 Security Agreement entered into between Amalgamated and the Borrower Entities, the bank obtained "a security interest in, all of the right, title and interest of the [Borrower Subsidiaries] in, to and under the Collateral." (2008 Security Agreement § 1(b).) "Collateral" is defined in the 2008 Security Agreement as "all personal property of every kind and nature, wherever located, whether now owned or hereafter acquired or arising, and all Proceeds and products thereof, including . . . Accounts Receivable, . . . Deposit Accounts . . . and . . . other property owned or held by or on behalf of" the Borrower Subsidiaries. (*Id.* § 2(a).) Further, the incorporated Amended State Court Complaint alleges that "[the Borrower Subsidiaries] gave Amalgamated a duly perfected

first-priority lien on the Collateral."[13]  (Amended State Court
Action Compl. ¶ 34.)

Contrary to the Watts Petitioners' assertion, these
loan documents, when read as part of the Amalgamated Petition,
establish "enough facts to state a claim to relief that is
plausible on its face." *Twombly*, 550 U.S. at 570; *Iqbal*, 556
U.S. at 678.  The broadly worded language of the 2008 Security
Agreement, and the Collateral to which Amalgamated was granted
an interest, plausibly includes some if not all of the Subject
Funds from USW.  Moreover, at trial and during the forfeiture
phase following the jury's guilty verdict against Dupree, the
government presented evidence of the movement of fraudulently
obtained loan proceeds to and from numerous accounts controlled
by Dupree, including USW accounts. (*See, e.g.*, ECF No. 535,
Trial Tr. at 4407, 4441-43.)  Further, as the court stated in
its July 27, 2011 Order Adopting in Part and Modifying in Part
Magistrate Judge Azrack's *Monsanto* Hearing Report and
Recommendation, "[b]y setting up an accounting system in which

---

[13] In their reply memorandum, the Watts Petitioners take issue
with Amalgamated's inclusion in their papers of a U.C.C. Financing Statement,
which notes USW as debtor and Amalgamated as a secured party as to "[a]ll
personal property of the Debtor whether now existing or hereafter acquired,
wherever located, together with all proceeds thereof." (Financing Statement,
Amalgamated Opp. Ex. D; ECF No. 583, Watts Reply Mem. at 7.)  Indeed, a
financing statement "is designed merely to put creditors on notice that
further inquiry is prudent . . . the security agreement embodies the
intentions of the parties." *In re Laminated Veneers Co.*, 471 F.2d 1124, 1125
(2d Cir. 1973) (internal citation omitted).  However, unlike the narrowly
worded security agreement at issue in *In re Laminated Veneers Co.*, *see id.*,
the loan documents here broadly encompass the Borrower Subsidiaries'
collateral, including property, proceeds, and products thereof.

all of the [GDC] subsidiaries contributed to and received funds from a single [account], which was also funded with loan proceeds, USW entangled itself with the allegedly fraudulent loan proceeds." (July 27th Order at 22.) The court further noted that "the group of related subsidiaries, including USW, all shared in the [same account] and benefited from transfers of funds from that account, which included loan proceeds."[14] (*Id.* at 23.) The transfers, commingling, and exchanges of loan proceeds and other assets by and between GDC and its subsidiaries, including USW and the Borrower Subsidiaries, give rise to Amalgamated's claim that, pursuant to the 2008 Security Agreement, it possesses a security interest in the Subject Funds as Collateral of the Borrower Subsidiaries.

The cases extensively cited by the Watts Petitioners which hold that general creditors possess no specific interest in property subject to forfeiture and therefore lack standing to bring a petition in an ancillary proceeding are simply inapplicable to the circumstances giving rise to Amalgamated's claims. *See, e.g.*, *DSI Assocs. LLC v. United States*, 496 F.3d 175, 184 (2d Cir. 2007) (holding that a claimant without an

---

[14] In an attempt to further illustrate the commingling of assets between USW and the Borrower Subsidiaries, Amalgamated included with its opposition memorandum an affidavit by forensic accountant Richard J. Corcoran III. (Amalgamated Opp. Ex. B ("Corcoran Affidavit").) However, because this affidavit was not referenced by or otherwise incorporated into the Amalgamated Petition, the court may not consider it as part of the instant motion to dismiss.

interest in a "particular, specific asset" lacks standing to initiate ancillary proceeding); *Ribadeneira*, 105 F.3d at 834 ([a]s holders of checks, *as opposed to security interests*, petitioners are unable to assert rights to a particular asset or specific funds) (citation omitted) (emphasis added); *United States v. Coluccio*, 51 F.3d 337, 339 (2d Cir. 1995) (holding that general creditors do not have standing to contest forfeitures); *United States v. Schwimmer*, 968 F.2d 1570, 1581 (2d Cir. 1992); *see also United States v. Hu*, No. 08-CR-425, 2011 U.S. Dist. LEXIS 135463, at *14-15 (E.D.N.Y. Nov. 22, 2011); *United States v. Agnello*, 344 F. Supp. 2d 360, 372 (E.D.N.Y. 2003).

By virtue of the loan documents between Amalgamated and the Borrower Subsidiaries, Amalgamated asserts a security interest in the Subject Funds, which raises the bank above the status of a general creditor. *Cf. DSI Assocs.*, 496 F.3d at 184 ([A]s a matter of law, having failed to retain a security interest in the shares, DSI is simply a general creditor . . . .") The fact that Amalgamated's security interest does not arise from a direct security agreement with USW is of no moment in light of the 2008 Security Agreement, which grants the bank an interest in the Subject Funds as assets or proceeds of fraudulently obtained loan monies that were moved and exchanged through a complex network of bank accounts and transactions

involving GDC, USW, and the Borrower Subsidiaries.  (*See* Trial
Tr. at 4407, 4441-43; July 27th Order at 22.)

Importantly, the court notes the following language by
the Supreme Court in *Caplin & Drysdale*:

> The Government's interest in winning
> undiminished forfeiture thus includes the
> objective of returning property, in full, to
> those wrongfully deprived or defrauded of
> it.  Where the Government pursues this
> restitutionary end, the Government's
> interest in forfeiture is virtually
> indistinguishable from its interest in
> returning to a bank the proceeds of a bank
> [fraud]; and a forfeiture-defendant's claim
> of right to use such assets to hire an
> attorney, instead of having them returned to
> their rightful owners, is no more persuasive
> than a bank robber's similar claim.

491 U.S. at 629-630.  In light of Dupree's conviction and the
jury's forfeiture judgment, such are the circumstances here
between the government, Amalgamated, and the Watts Petitioners.

The court therefore concludes that the Amalgamated
Petition sufficiently establishes "the nature and extent of the
petitioner's right, title, or interest in the property, the time
and circumstances of the petitioner's acquisition of the right,
title, or interest in the property, any additional facts
supporting the petitioner's claim, and the relief sought."  21
U.S.C. § 853(n)(3).

> ### 2.  *Amalgamated Holds a Security Interest in the Subject Funds as Proceeds of Collateral*

55

The Amalgamated Petition also sufficiently pleads the existence of a security interest in the Subject Funds as proceeds of the Borrower Subsidiaries' Collateral.  Pursuant to N.Y. U.C.C. § 9-315(a)(2), a security interest attaches to "any identifiable proceeds of collateral."  N.Y. U.C.C. § 9-315(a)(2); *see also General Motors Acceptance Corp. v. Norstar Bank, N.A.*, 141 Misc. 2d 349, 351 (N.Y. Sup. Ct., Erie Cnty. 1988) ("The commingling of proceeds, does not, in and of itself, defeat any security interest plaintiff may have in the proceeds deposited in defendant bank.  Instead, plaintiff's security interest in such proceeds depends solely on whether or not they continue to be 'identifiable', even if commingled . . . .") Furthermore, pursuant to N.Y. U.C.C. § 9-205, a security interest is not invalid by reason of a debtor's ability to "use, commingle, or dispose of all or part of the collateral" or to "use, commingle, or dispose of proceeds . . . ."  N.Y. U.C.C. § 9-205(1).  Amalgamated has established a claim to the Subject Funds under the broad meaning of "Collateral" in the 2008 Security Agreement.

The Watts Petitioners argue, however, that pursuant to N.Y. U.C.C. § 9-315(b)(2), in order for Amalgamated to assert a valid lien or security interest in the Subject Funds, it must now be able to trace the proceeds of the collateral of the

Borrower Subsidiaries to specific funds in the Chase Bank accounts. (*See* Watts Mem. at 16; *see also* N.Y. U.C.C. § 9-315(b)(2).) In support of this argument, the Watts Petitioners cite *Gladstein v. Martorella*, 75 A.D.3d 465 (N.Y. App. Div. 1st Dep't 2010), which held that certain funds were not subject to a creditor's claimed security interest as proceeds of collateral because the proceeds were commingled with other funds and it could not be determined "as a matter of law whether the deposited funds were ultimately derived, in whole or in part, from [the funds at issue]." *Id.* at 467.

*Gladstein*, however, does not support the Watts Petitioners' arguments for two reasons. First, in *Gladstein* the Appellate Division denied the creditor's attempt to intervene in an underlying contract action because there were "no issues of law or fact" the creditor's claim had in common with the underlying action, whereas Amalgamated's claim is central to the criminal action giving rise to the conviction of Watts' alleged co-conspirator, the subsequent forfeiture of the funds, and this ancillary proceeding. *See id.* at 466. Second, the *Gladstein* court did not find *as a matter of fact* that the funds at issue could not possibly be traced by the creditor; rather, the court declined to credit the creditor's prospective tracing methodology. *See id.* at 467. Here, Amalgamated's ability to trace the proceeds of its collateral of the Borrower

Subsidiaries to specific and identifiable funds in the Chase Bank accounts is a question of fact that is not subject to the instant motion to dismiss.  Rather, at this juncture, without considering the Corcoran Affidavit submitted by Amalgamated in opposition to the Watts Petitioners' motion, Amalgamated need only plead enough facts to make a plausible claim to the relief sought, which it has done.  *See Twombly*, 550 U.S. at 570.

The possibility that a third-party petitioner may sufficiently establish standing and satisfy the pleading requirements of Section 853(n), while yet leaving unresolved certain key questions of fact is reflected in Federal Rule of Criminal Procedure 32.2(c)(1)(B), which provides that "[a]fter disposing of any motion filed under Rule 32.2(c)(1)(A) and before conducting a hearing on the petition, the court may permit the parties to conduct discovery in accordance with the Federal Rules of Civil Procedure if the court determines that discovery is necessary or desirable to resolve factual issues." Fed. R. Crim. P. 32.2(c)(1)(B).  If, following discovery, Amalgamated is still unable to trace identifiable assets in the Subject Funds to collateral or other such assets of the Borrower Subsidiaries, its petition may then be vulnerable to a summary judgment motion.  *See id.* ("When discovery ends, a party may move for summary judgment under Federal Rule of Civil Procedure 56."); *cf. Ferris, Baker, Watts v. Stephenson (in Re Mjk*

58

*Clearing)*, 286 B.R. 109, 122-123 (Bankr. D. Minn. 2002)
(granting summary judgment where particular assets could not be
traced pursuant to N.Y. U.C.C. § 9-315), *aff'd*, 371 F.3d 397,
401-403 (8th Cir. 2004).

At this time, however, and assuming, as the court
must, that the facts set forth in the Amalgamated Petition are
true, Amalgamated has sufficiently pleaded an interest in
specific assets pursuant to Section 853(n).  Fed. R. Crim. P.
32.2(c)(1)(A); *Willis Mgmt.*, 652 F.3d at 241.  Amalgamated's
claimed interest, if proven by a preponderance of the evidence,
would establish the bank's superior legal interest in the
Subject Funds on the basis of priority of ownership over the
forfeited property at the time of the offense.  *See* 21 U.S.C. §
853(n)(6)(A).  The Watts Petitioners' motion to dismiss the
Amalgamated Petition must therefore be and is denied.

## IV. <u>Griffin's Request to be Added as an Interested Party</u>

On June 28, 2012, the court received a letter from
former GDC employee and *pro se* party Valerie Griffin seeking
permission to file a third-party claim to some portion of the
Subject Funds.  (*See* Griffin Ltr.)  In her letter, Griffin
alleges that she is owed a total of $17,702.65 in wages,
vacation pay, and payroll deductions arising from past services
that she rendered to GDC.  (*See id.* ¶ 2.)  For the reasons
discussed below, Griffin's request to file a third-party claim

59

to the funds included in the preliminary orders of forfeiture is denied for lack of standing.

## A.    The Timeliness of Griffin's Prospective Petition

Griffin's first June 25, 2012 letter to the court regarding her desire to file a third-party claim to the Subject Funds mistakenly states that her deadline to file a petition expired on June 12, 2012, based upon an order issued by the court on that same date. (*See id.* ¶¶ 1, 3.) However, the filing deadline referenced by the court in its June 12, 2012 order only applied to "parties that were provided direct written notice" of the Preliminary Orders of Forfeiture. (Order, June 12, 2012.) Griffin and the government agree that she was not among those parties provided with direct written notice of the Preliminary Orders of Forfeiture. (*See* Griffin Ltr. ¶ 3; ECF No. 559, Gov't Opp. to Griffin Ltr. ("Gov. Opp.") at 2; *see also* ECF No. 538, Certificate of Service.) Therefore, Griffin's deadline for filing a petition did not expire until thirty-two days after the government's final publication of notice of the Preliminary Orders of Forfeiture on June 7, 2012; that is, on July 9, 2012. *See* 21 U.S.C. § 853(n)(2) (providing for a period of thirty days from the date of final publication for a claimant to file a petition); Local Civ. R. 6.4 (providing that, in computing any period of time, if the last day of a period falls on a weekend or legal holiday, then the period continues to run

until the end of the next business day); (*see also* ECF No. 553, Decl. of Publication.).

As stated previously, courts typically require "strict compliance" with the rules and deadlines governing forfeiture proceedings. *Amiel*, 995 F.2d at 371 (collecting cases applying standard). However, in the context of a motion to dismiss a complaint pursuant to Rule 12(b)(6), the Second Circuit has advised that "[a] pro se complaint should not be dismissed unless 'it appears beyond doubt that the plaintiffs can prove no set of facts in support of [their] claims which would entitle [them] to relief.'" *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 145 (2d Cir. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Additionally, when considering a motion to dismiss a pro se complaint, "courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Id.* at 146 (alterations in original) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)).

In light of the above standard, the court broadly and liberally construes Griffin's June 25, 2012 letter, as well as her reply letters of July 20, 2012, (ECF No. 575.), August 15, 2012, (ECF No. 588.), and August 17, 2012, (ECF No. 590.), as

timely efforts to comply with the requirements for filing a third-party claim to the Subject Funds.[15]

### B.   Griffin Lacks Standing to Assert a Claim

Notwithstanding the timeliness of Griffin's attempt to file a third-party petition, Griffin's prospective petition must be dismissed due to her lack of standing to pursue a claim in the ancillary proceeding.

Griffin claims that she is entitled to $17,702.65 in wages, vacation pay, and payroll deductions arising from past services rendered to GDC.  (*See* Griffin Ltr. ¶ 2.)  Because Griffin cannot claim ownership or a security interest in any specific assets contained in the preliminary orders of forfeiture, Griffin's general claim for monies owed to her would only establish her as a general creditor of GDC with a right to payment.  *See Schwimmer*, 968 F.2d at 1581 (holding that a general creditor "does not have a property interest superior to defendant's in any particular asset or funds until he has obtained some judgment and secures that asset or those funds.").

---

[15] The court also notes that, according to Griffin's reply letter of July 20, 2012, on June 20, 2012, the Pro Se Office of this court informed Griffin that in order to file a third-party petition, she first had to submit a letter to the court explaining why she should be "recognized as a Party of Interest."  (ECF No. 575, Griffin Ltr. of July 20, 2012.)  Griffin timely filed such a letter on June 25, 2012.  Therefore, the court finds that Griffin's failure to file a formal petition prior to July 9, 2012 is excused by the filing of her June 25th letter asking that she be named a party of interest, which is signed by Griffin and establishes, in sum and substance, "the nature and extent of [her] right, title, or interest in the property, the time and circumstances of [her] acquisition of the right, title, or interest in the property, any additional facts supporting [her] claim, and the relief sought."  21 U.S.C. § 853(n)(3).

The Second Circuit has repeatedly held that a general creditor
lacks the property interest required by Section 853(n)(2) in
order to confer standing to pursue a claim in an ancillary
proceeding.  *See, e.g.*, *DSI Assocs. LLC*, 496 F.3d at 184
(holding that a claimant without an interest in a "particular,
specific asset" lacks standing to initiate ancillary
proceeding); *Ribadeneira*, 105 F.3d at 836-37 (holding that
general creditor lacked standing to petition to modify an order
of forfeiture); *Coluccio*, 51 F.3d at 339 (holding that general
creditors do not have standing to contest forfeitures);
*Schwimmer*, 968 F.2d at 1581; *see also Agnello*, 344 F. Supp. 2d
at 372 (holding that party that did not establish ownership in
specific funds was a general creditor that only had a right to
payment).  Accordingly, the court agrees with the government
that Griffin lacks standing to pursue a claim to the funds
subject to the preliminary orders of forfeiture.  (Gov. Opp. at
2-3.)

In her reply letter of August 21, 2012, Griffin
correctly notes that at least two other circuits have found that
certain general creditors have standing to bring claims under
Section 853(n).  (*See* Griffin Ltr. of Aug. 21, 2012 at 2.)  In
*United States v. Reckmeyer*, the Fourth Circuit held that a
general creditor of an estate had standing under Section 853(n)
where essentially the entire estate stood to be forfeited to the

government.  *See* 836 F.2d 200, 206 (4th Cir. 1987) ("Because petitioners' interests necessarily lie within that estate, they meet the threshold qualification for relief by asserting a legal interest in the property subject to forfeiture.").  Similarly, in *United States v. Mageean*, the Ninth Circuit affirmed without opinion a district court decision that general creditors had standing to bring claims under 18 U.S.C. § 1963.[16]  822 F.2d 62 (9th Cir. 1987), *aff'g* 649 F. Supp. 820, 829 (D. Nev. 1986).  On the basis of *Reckmeyer* and *Mageean*, Griffin argues that despite being, as she admits, a general creditor, she should likewise be permitted to pursue a third-party claim to the assets subject to forfeiture.  (*See* Griffin Ltr. at 2-3.)

However, in *Ribadeneira*, the Second Circuit expressly declined to adopt the holding of the Fourth Circuit regarding unsecured creditors in *Reckmeyer*.  105 F.3d at 836 n.4.  The Second Circuit likewise noted but declined to follow the Ninth Circuit's ruling in *Mageean*.  *See id.* at 837.  Therefore, the controlling Second Circuit law in this case is that general, unsecured creditors lack standing to pursue claims in an ancillary proceeding.  *DSI Assocs. LLC*, 496 F.3d at 184; *Ribadeneira*, 105 F.3d at 836; *Schwimmer*, 968 F.2d at 1580-81; *United States v. All Funds on Deposit on or Before November 8*,

---

[16] 18 U.S.C. § 1963(l), which concerns the forfeiture of assets as part of a criminal penalty, and Section 853(n) contain identical procedures for the hearing of third-party claims to assets subject to forfeiture.

955 F. Supp. 23, 26 (E.D.N.Y. 1997). As a general creditor of GDC, Griffin "does not possess a 'legal right, title, or interest in the property' that was forfeited as required for standing under section 853(n)(6)(A), nor can [she] show that [she] was a bona fide purchaser for value of any such right, title or interest, as required for standing under section 853(n)(6)(B)." *DSI Assocs. LLC*, 496 F.3d at 184 (citing *Ribadeneira*, 105 F.3d at 836). Accordingly, Griffin's request to file a third-party claim to the funds included in the preliminary orders of forfeiture is respectfully denied.[17]

## CONCLUSION

For the reasons set forth above, the court: (1) grants the government's motion to dismiss the petition of Rodney Watts and DePetris & Bachrach, LLP (collectively, the "Watts Petitioners"); (2) denies the Watts Petitioners' cross-motion for judgment on the pleadings; (3) denies the Watts Petitioners' motion to dismiss Amalgamated Bank's petition; and (4) denies Valerie A. Griffin's request to be added as an interested party in order to file a third-party petition.

---

[17] The government additionally argues that Griffin's prospective claim would also fail on the merits. (Gov. Opp. at 3.) However, in light of holding that Griffin lacks standing to file a third-party petition, the court need not also address the merits of Griffin's prospective claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109-10 (1998) (holding that courts lack jurisdiction to address merits of a claim where party raising the claim is found to lack standing to maintain suit).

The government shall serve a copy of this Memorandum and Order on Ms. Griffin and file a declaration of service via ECF by January 29, 2013.  The remaining parties shall jointly advise the court via ECF no later than February 4, 2013 as to how they intend to proceed.

**SO ORDERED.**

Dated:     January 28, 2013
           Brooklyn, New York

                              _____/s/_____
                              KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York